**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DONTIE S. MITCHELL,

                                    Plaintiff,

            - v -                                             Civ. No. 9:17-CV-0892
                                                                        (TJM/DJS)

ANDREW M. CUOMO, *Governor*, ANTHONY
ANNUCCI, *Commissioner of Department of*
*Corrections*, JOHN MILLER, *Correction*
*Lieutenant*, R. WOOD, *Corrections Sergeant*,
ROBERT J. MAHUTA, *Correction Officer*,
NAPPER, *Correction Officer,* and WELLS,
*Correction Officer*,

                                    Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

DONTIE S. MITCHELL
Plaintiff, *Pro Se*
98-A-0071
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. LETITIA JAMES                        DAVID A. ROSENBERG, ESQ.
Attorney General of the State of New York  Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

On August 14, 2017, *pro se* Plaintiff Dontie Mitchell commenced this civil rights

action, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1, Compl. The Complaint was later amended. Dkt. No. 23, Am. Compl.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's claims against John Miller ("Miller"), Robert J. Mahuta ("Mahuta"),[1] and Anthony J. Annucci ("Annucci") pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 57, Defs.' Mot. Dismiss. In response, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, a Third Motion for the Appointment of Counsel, and a Fifth Motion for a Preliminary Injunction. Dkt. No. 61. Plaintiff also filed a Sixth Motion for a Preliminary Injunction, Dkt. No. 70, Pl.'s Sixth Mot. for PI, and a Seventh Motion for a Preliminary Injunction, Dkt. No. 74, Pl.'s Seventh Mot. for PI. Defendants oppose the motions to amend and for injunctive relief. Dkt. No. 69, Defs.' Opp. to Mot. to Am.; Dkt. No. 88, Defs.' Opp. to Mot. for PI. Plaintiff has replied in further support of his motions. Dkt. Nos. 89 & 91, Pl.'s Reps.

## I. INTRODUCTION

### A. Procedural Background

Plaintiff initiated this action in August 2017 with the filing of a Complaint. In the Complaint, Plaintiff asserted claims arising out of his confinement at Clinton Correctional Facility ("Clinton C.F."), Upstate Correctional Facility ("Upstate C.F."), Elmira Correctional

---

[1] Richard Mahuta was improperly s/h/a Robert J. Mahuta. Dkt. No. 57-1 at p. 3.

Facility ("Elmira C.F."), Wende Correctional Facility ("Wende C.F."), and Collins Correctional Facility ("Collins C.F."). *See generally*, Compl. With the Complaint, Plaintiff also filed a Motion for Appointment of Counsel, a Motion for Class Certification, a Motion for an Expert, and a Motion for a Preliminary Injunction. Dkt. No. 5. On September 27, 2017, the Honorable Thomas J. McAvoy, Senior United States District Judge, reviewed the Complaint and issued a Decision and Order (the "September 2017 Order"). Dkt. No. 13. At the outset of the September 2017 Order, pursuant to Federal Rule of Civil Procedure 21 and 28 U.S.C. § 1404(a), Judge McAvoy severed and transferred the claims that arose while Plaintiff was incarcerated at Elmira C.F., Wende C.F., and Collins C.F., along with the defendants associated with those claims, to the Western District of New York. *Id*. at p. 15. In accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A, the Court reviewed the sufficiency of the claims that arose, if at all, while Plaintiff was incarcerated at Clinton C.F. and Upstate C.F. *Id*. On the basis of that review, the Court directed: (1) Wood, Napper, and Wells to respond to Eighth Amendment excessive force claims; (2) Mahuta to respond to First Amendment claims related to Plaintiff's mail; (3) Mahuta and Miller to respond to First Amendment claims related to freedom of association; and (4) Cuomo and Annucci to respond to claims for declaratory and injunctive relief related to the constitutionality of the following: (a) DOCCS' "blanket ban" on printed materials from social media, email, and text messages; (b) DOCCS' Directive #4422; and (c) Prison Rule 105.14. *Id*. at pp. 29, 36-37. The Court denied Plaintiff's motions for preliminary injunctive relief, class certification, an expert, and

for appointment of counsel. *Id.* at pp. 29-34.

On October 16, 2017, Plaintiff filed a Motion for Reconsideration of the September 2017 Order. Dkt. No. 16. The Court denied Plaintiff's Motion. Dkt. No. 17.

On November 20, 2017, Plaintiff filed a Motion for Reconsideration, a Second Motion for a Preliminary Injunction, and an Amended Complaint. Dkt. Nos. 19, 22, & 23 ("Am. Compl."). By Decision and Order dated December 6, 2017 (the "December 2017 Order"), the Court denied the Second Motion for a Preliminary Injunction and accepted the Amended Complaint as the operative pleading. Dkt. No. 24. The Amended Complaint included the claims against Wood, Napper, Wells, Mahuta, Miller, Annucci, and Cuomo that previously survived the Court's *sua sponte* review. Therefore, Defendants were directed to respond to Plaintiff's claims in the Amended Complaint. *See generally*, Dkt. No. 24.

On December 27, 2017, Plaintiff filed a Motion for Reconsideration, a Motion to Supplement the Amended Complaint, and a Third Motion for a Preliminary Injunction. Dkt. Nos. 26, 27, & 28. In a Decision and Order filed on January 19, 2018 (the "January 2018 Order"), the Court denied the Motions. Dkt. No. 48.

On January 31, 2018, Plaintiff filed a Fourth Motion for a Preliminary Injunction and a Second Motion for Counsel. Dkt. No. 49. In a Decision and Order filed on February 28, 2018 (the "February 2018 Order"), the Court denied the motions. Dkt. No. 56.

On March 19, 2018, Napper, Wells, and Wood filed an Answer to the Amended Complaint. Dkt. No. 58.

### B.  Summary of Amended Complaint

The following relevant facts as alleged by Plaintiff in the Amended Complaint are taken as true.[2]  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  In 2012, DOCCS issued Directive #4422 banning all printed materials, including photographs, of all social media websites including Facebook, Instagram, and Twitter deeming such material "third party mail."  Am. Compl. at ¶¶ 128-131.

From July 2014 until September 2014, Mahuta intercepted five pieces of Plaintiff's outgoing mail.  Am. Compl. at ¶ 114.  On September 11, 2014, Mahuta issued a misbehavior report charging Plaintiff with violating prison rules related to soliciting (Rule 103.20), unauthorized organizational activity (Rule 105.14), and correspondence violations (Rule 180.11).  *Id*. at ¶¶ 114-115.  The misbehavior report was issued "based upon an ongoing investigation" into Plaintiff's "attempt to lead and organize a[n] unauthorized organization entitled UFD - Ujamaa Fraternal Dynasty."  Dkt. No. 57-2, Defs.' Mem. of Law, Ex. A at p. 2.  In the misbehavior report, Mahuta noted that "[e]vidence for these rule violations were gathered from an approved facility mail watch on inmate Mitchell."  *Id*.  Plaintiff was promoting the UFD, a non-profit organization, which he founded, as an alternative to gangs. Am. Compl. at ¶¶ 114, 121-127.  Through his correspondence, Plaintiff was attempting to recruit people, outside of the facility, to expand and promote his organization.  *Id*.  Plaintiff paid Inmate Scribes, a company that offers social media management services to prisoners,

---

[2] Only those facts relevant to the Motions presently before the Court are addressed in detail here.

to set up a Facebook account for UFD.  *Id*.  Plaintiff was also corresponding with a potential candidate for the position of "administrative assistant."  *Id*.  UFD is not a business.  *Id.* at ¶ 124.

On September 30, 2014, Miller conducted a disciplinary hearing and found Plaintiff guilty of soliciting (Rule 103.20) and violating correspondence rules (Rule 180.11).  Am. Compl. at ¶¶ 116, 120; Dkt. No. 57-3 at p. 2.  Miller found Plaintiff not guilty of violating Rule 105.14.  Dkt. No. 57-3, Defs.' Mem. of Law, Ex. B at p. 2.

## II.  DEFENDANTS' MOTION TO DISMISS

### A.  Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. at 322.  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008).  Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citation

omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Iqbal*, 556 U.S. at 697 (citing *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 440 U.S. at 555).  Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679-80.

**B.  Consideration of Submissions Outside the Pleadings**

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, . . . matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint.  *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc.*, 949 F.2d at 47).  However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document."  *Id*.

Defendants have attached several documents to the Motion to Dismiss including: (i) a misbehavior report (Defs.' Mem. of Law, Ex. A at pp. 3-4); (ii) correspondence from non-defendants related to a mail watch (*id.* at pp. 5-10); (iii) a disciplinary hearing disposition (Defs.' Mem. of Law, Ex. B at pp. 2-3); (iv) a Declaration from DOCCS' Director of Bureau of Internal Controls Paul Guenette (Dkt. No. 57-5); and (v) DOCCS' Directives #4422 and #4572 (Dkt. Nos. 57-6 & 57-7).  Defendants argue that the misbehavior report and

disciplinary hearing disposition were referenced in the Amended Complaint and thus, should be considered in the context of the within motion. Dkt. No. 57-1, Defs.' Mem. of Law at pp. 7-8, n.8, 9.

Pursuant to the Federal Rules of Civil Procedure, "[i]f, on a motion under Rule 12(b)(6) or 12(c) matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).

> [G]enerally, when contemplating a dismissal pursuant to . . . Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.

*Myers v. Camden Cent. School Dist.*, 2012 WL 2921574, *4 (N.D.N.Y. July 17, 2012); *see also Parisi v. United States*, 2009 WL 1851042, at *3 (N.D.N.Y. June 26, 2009) ("When considering a motion to dismiss a complaint for failure to state a claim, a court 'may consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken.'") (quoting *Hirsch v. Arthur Andersen and Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)).

In light of these authorities, the Court takes judicial notice of Directives 4422 and 4572 without converting the Motion to Dismiss to a Motion for Summary Judgment. *Whitley v. Bowden*, 2018 WL 2170313, at *2 n. 6 (S.D.N.Y. May 10, 2018); *Young v. Corcoran*, 164

F. Supp. 3d 419, 420-21 (W.D.N.Y. 2016).

The Second Circuit has elaborated on the limited circumstances in which extrinsic evidence may be considered "integral":

> A document is integral to the complaint where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotations from the document is not enough. In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.

*Goel v. Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016) (internal quotation marks and citations omitted).

With respect to the copies of the misbehavior report and hearing disposition, while these submissions were not attached as exhibits to the Complaint or Amended Complaint, Plaintiff referred to the misbehavior report and hearing disposition in the Amended Complaint, Am. Compl. at ¶¶ 114, 116, & 120, and they are critical to his substantive allegations. These submissions are therefore appropriately considered by the Court without converting Defendants' Rule 12 Motion to a Rule 56 Motion for Summary Judgment. *See, e.g., Islam v. Fischer*, No. 07 Civ. 3225, 2008 WL 650380, at *2 (S.D.N.Y. Mar. 6, 2008).

A different conclusion is reached however, with respect to the correspondence regarding a mail watch and Guentte's declaration. These documents were not referenced in the Amended Complaint and Defendants have not presented any argument suggesting that

the documents are "integral" to the Amended Complaint.  Accordingly, the Court will exclude these documents and not consider the submissions on this Motion.  *See* FED. R. CIV. P. 12(d).

With these standards in mind, I consider the substance of Defendants' Motion.

## C. Analysis of Defendants' Motion to Dismiss

Miller and Mahuta move to dismiss Plaintiff's Amended Complaint against them based upon qualified immunity.  Defs.' Mem. of Law at pp. 4-9.  Annucci moves for dismissal of the Amended Complaint for failure to state a claim upon which relief may be granted.  *Id* at pp. 11-18.

### 1. Qualified Immunity

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity analysis involves a three step inquiry:

> First, we must determine whether plaintiff has alleged a violation of a constitutional right. Then, we must consider if the violated right was clearly established at the time of the conduct. Finally, if plaintiff had a clearly established, constitutionally protected right that was violated . . . , he or she must demonstrate that defendants' actions were not objectively reasonable.

*Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003) (citations omitted).

Generally, "the defense of qualified immunity cannot support the grant of a . . . 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983); *see also McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (quoting *Green v. Maraio*, 722 F.2d at 1018). An exception to this general rule exists where the complaint itself sets up, on its face, the qualified immunity defense; on such an occasion, dismissal for failure to state a claim would be appropriate. *Roniger v. McCall*, 22 F. Supp. 2d 156, 162 (S.D.N.Y. 1998) (citing *Green v. Maraio*, 722 F.2d at 1019); *see also McKenna v. Wright*, 386 F.3d at 435. Ultimately, qualified immunity is an affirmative defense on which Defendants bear the burden of proof. *Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012).

In the pleadings, Plaintiff alleges that Defendants instituted an invalid mail watch "secretly seizing and withholding [his] incoming and outgoing mail without notice[.]" Am. Compl. at ¶ 188. Plaintiff became aware of the existence of the mail watch because his family and friends sent "letters and photos" that would "disappear." *Id*. at ¶ 134. When Plaintiff complained, he was repeatedly told that his correspondence was "processed in accordance with Directive #4422." *Id*. Plaintiff contends that Directive #4422 is unconstitutional on its face and as applied to him. *Id*. at ¶¶ 128-131, 185, & 186. Plaintiff also claims that Miller and Mahuta, by taking disciplinary action against him, violated his First Amendment rights to the free flow of incoming and outgoing mail and freedom of association. Am. Compl. at ¶¶ 187-188.

*-12-*

"A prison inmate . . . retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (citing *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995)). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The application of a lower reasonableness standard is consistent with the notion that "evaluation of penological objectives is committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.'" *O'Lone v. Estate of Shabazz*, 482 U.S. at 349 (quoting *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)).

The court must consider the four factors set forth in *Turner* in order to evaluate whether the regulation is "reasonably related to legitimate penological interests":

> (1) there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it[;]
>
> (2) whether there are alternative means of exercising the right that remain open to prison inmates[;]
>
> (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[; and]
>
> (4) the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*-13-*

*Turner v. Safely*, 482 U.S. at 89-91 (citation omitted).

In the September 2017 Order, the Court found that Plaintiff sufficiently alleged claims that DOCCS' Directives and Prison Rules are unconstitutional and allowed First Amendment claims against Miller and Mahuta to proceed. Dkt. No. 13 at pp. 19-20.[3] Because this right was clearly established, Defendants' entitlement to qualified immunity turns on whether it was objectively reasonable for them to believe that their actions did not violate Plaintiff's First Amendment rights.

"When officials follow an established prison policy . . . their entitlement to qualified immunity depends on whether a reasonable officer might have believed that the challenged order was lawful in light of legitimate penological interests supporting the directive." *Barnes v. Furman*, 629 Fed. Appx. 52, 57 (2d Cir. 2015) (quotation marks omitted).  Defendants argue that they are entitled to qualified immunity because they acted in "good faith" and in accordance with DOCCS' Directives #4422 and 4423 and Prison Rules 105.14, 103.20, and 180.11, when they subjected Plaintiff to disciplinary proceedings.  *See, e.g.*, Defs.' Mem. of Law at pp. 5-8.  This "generalized and conclusory" argument is "insufficient to demonstrate that it was reasonable for defendants to believe that their conduct did not violate [the plaintiff's] constitutional rights and that no rational jury could conclude otherwise." *Gonzalez v. Morris*, 2018 WL 1353101, at *7 (N.D.N.Y. Mar. 15, 2018) (declining to grant summary judgment on qualified immunity based upon the argument that defendants "followed

---

[3] These claims were repeated and realleged in the Amended Complaint and thus, survived review as well.  Dkt. No. 24.

DOCCS['s] constitutional policies and acted reasonably at all times."). Courts in this District have in some cases awarded summary judgment on qualified immunity grounds when officials follow established prison policies. In those cases, however, the courts were presented with a record of competent, admissible evidence establishing that the policy furthered a "legitimate penological interest" and that the defendants had an "objective belief" regarding that interest. *See*, *e.g.*, *Michel v. Manna*, 2017 WL 1381859, at *5 (N.D.N.Y. Jan. 17, 2017) (awarding summary judgment on record that contained declarations from the defendants with admissible facts related to the legitimate penological interest furthered by the Grooming Policy, the defendants' observations of the plaintiff's violation of the Grooming Policy, and the defendants' lack of authority to ignore the plain language of the Grooming Policy).

Here, given that this issue arises in the context of a Motion to Dismiss the resolution of the objective reasonableness of Defendants' actions "depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee*, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004). Even a cursory review of the submissions shows that Defendants' Motion should be not be granted at this stage of the proceedings. Defendants' arguments in support of qualified immunity are based in part on the premise that the Court accept as true facts that are directly contradicted by allegations in the Complaint.

Accordingly, the Court recommends that Defendants' Motion be denied as to

-15-

Plaintiff's claims against Miller and Mahuta.[4]

### 2.   Claims Against Annucci

Defendants move for dismissal of Plaintiff's claims for declaratory and injunctive relief based upon unconstitutional rules and policies, arguing that Plaintiff's allegations are "bald assertions" and conclusory.  Defs.' Mem. of Law at pp. 11-18.

### a.   "Blanket Ban" on Social Media Material

Defendants argue that Plaintiff has failed to adequately plead that DOCCS promulgated a policy with a "blanket ban" on materials printed from social media, emails, and text messages.  Defs.' Mem. of Law at pp. 13-14.  While Plaintiff alleges that Directive 4422 imposes such a blanket ban, *see* Am. Compl. at ¶ 129, a review of the Directive fails to bear out his assertions.  As Defendants' Motion makes clear, the Directive expressly allows inmates to receive printed material with correspondence.  Defs.' Mem. of Law at p. 13 (citing Directive 4422).  The Directive itself does not appear to contain the ban on social media materials alleged by Plaintiff and nothing in his opposition papers refutes Defendants' contention to the contrary or points to anything in the Directive specifically barring complete access to such materials.  *See* Dkt. Nos. 61-1 & 61-2.  Given the information now available, Plaintiff's conclusory allegation regarding this policy is insufficient to withstand the Motion to Dismiss.  *Salgado v. NYS Dep't of Corr. & Cmty. Supervision,* 2016 WL 6311296, at *10

---

[4] In support of the Motion, Defendants cite to a decision by the Honorable Michael A. Telesca, United States District Judge for the Western District of New York, in an action filed by Plaintiff in 2006 entitled *Mitchell v. New York State Dep't of Corr. Servs., et al. ("Mitchell II"),* 2012 WL 6204205 (W.D.N.Y. Dec. 12, 2012).  *See* Dkt. No. 57-1 at 12-13.  Judge Telesca's decision was issued in response to the defendants' motion for summary judgment and thus was based on a more developed record than is present here.

(W.D.N.Y. Sept. 15, 2016), *report and recommendation adopted*, 2016 WL 6298517

(W.D.N.Y. Oct. 27, 2016); *Odom v. Poirier*, 2004 WL 2884409, at *13 (S.D.N.Y. Dec. 10,

2004).

Accordingly, I recommend that the portion of Defendants' motion seeking dismissal

of the claim asserting the existence of a blanket policy barring access to social media material

be granted.

*b.  Imposition of an Arbitrary Mail Watch*

Defendant Annucci next seeks dismissal of Plaintiff's claims alleging that his First

Amendment rights were violated by the arbitrary imposition of a mail watch.  Defs.' Mem.

of Law at pp. 14-16.  Generally stated, Defendant argues that because Plaintiff's claims "run

counter to written DOCCS policy" Plaintiff's claim must be dismissed.  *Id.* at p. 14.

Defendant's very arguments, however, require denial of this aspect of the Motion.  While

Defendant contends that "the process for instituting a mail watch under DOCCS Directive

4422 is anything but 'arbitrary'", *id.* at. p. 15, Plaintiff specifically alleges that "DOCCS has

created a policy and custom of instituting arbitrary mail watches in violation of its own

written correspondence policy."  Am. Compl. at ¶ 133.  As a result, Plaintiff is plainly

alleging that DOCCS employees are not following the policy set forth in Directive 4422, on

which Defendant relies in support of his Motion.  That allegation is sufficient to withstand

the Motion, which is premised solely on the existence of this policy because at this stage in

the litigation, the Court is bound by the factual allegations in the Amended Complaint, which

must be taken as true.  *See Hall v. Curran*, 818 F.2d 1040, 1046 (2d Cir. 1987) (finding that the issue of whether Directive 4422 was improperly applied to the plaintiff was "a material fact remaining in dispute").   Accordingly, I recommend that this portion of Defendant's Motion be denied.

### c.  Rule 105.14

To invoke the jurisdiction of the federal courts and establish standing a plaintiff must show the following: (1) that he or she has personally suffered some actual or threatened injury; (2) that the injury is fairly traceable to the defendant's allegedly unlawful conduct; and (3) that the injury is likely to be redressed by the requested relief.  *Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc*., 454 U.S. 464, 472 (1982); *Fulani v. Bentsen*, 35 F.3d 49, 51-52 (2d Cir. 1994).  To establish standing in federal court, a litigant must allege an actual case or controversy. *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).  Moreover, "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."  *Peck v. Baldwinsville Cent. Sch. Dist.*, 351 Fed. Appx. 477, 479 (2d Cir. 2009) (summary order) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d at 344); *see also Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969).

Here, Plaintiff was found not guilty of violating Rule 105.14.  *See* Defs.' Mem. of Law, Ex. B at p. 2.  Thus, Plaintiff fails to allege he has suffered an actual injury due to the

application of Rule 105.14 and thus, he lacks standing to challenge it. *See Mitchell v. New York State Dep't of Corr. Servs.*, 2012 WL 6204205, at \*9 (W.D.N.Y. Dec. 12, 2012). Accordingly, it is recommended that Defendants' Motion to Dismiss Plaintiff's claim related to the constitutionality of Rule 105.14 be granted. *Applegate v. Annucci*, 2017 WL 3049555, at \*8 (S.D.N.Y. July 18, 2017), *appeal dismissed*, 2018 WL 816964 (2d Cir. Jan. 9, 2018).

### III.  PLAINTIFF'S MOTION TO AMEND

Plaintiff's Proposed Second Amended Complaint asserts the same general substantive allegations presently pled in the Amended Complaint but includes new claims related to his confinement at Great Meadow C.F.  Dkt. No. 61-3, Prop. Sec. Am. Compl.[5]  Defendants argue that  Plaintiff's motion is procedurally deficient and futile.  Dkt. No. 69.

### A.  Legal Standard

Fed. R. Civ. P. 15(a) states, in pertinent part, that leave to amend a pleading should be "freely given when justice so requires." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). Indeed, leave to amend should be denied only in the face of undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271-72 (2d Cir. 1996)).  "An amendment to a pleading is futile if the

---

[5] Plaintiff mistakenly contends that the Second Amended Complaint is the operative pleading as a matter of right.  Dkt. No. 61-2 at p. 3.  Under Fed. R. Civ. P. 15(a) a party may amend the Complaint as of right once, which Plaintiff has already done.  Dkt. No. 23.  Any further amendment requires leave of this Court.

proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp*., 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).  District courts are vested with broad discretion to grant a party leave to amend the pleadings.  *See Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Federal Rule of Civil Procedure 15(d) states, in part, that "[o]n motion and reasonable notice, the court may, on just terms, permit the party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  *See Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 88 (2d Cir. 2001) ("A motion to plead events that have transpired since the date of the party's most recent pleading 'is technically categorized under [Fed. R. Civ. P.] 15(d) ['Supplemental Pleadings'] as opposed to Rule 15(a) ['Amendments'].'") (emphasis and alterations in original) (quoting *Flaherty v. Lang*, 199 F.3d 607, 613 n.3 (2d Cir. 1999)).  The standard to determine whether to grant leave to file a supplemental pleading is similar to that exercised on a motion for leave to amend.

For the reasons set forth below, the Motion for Leave to Amend is **denied**.

### B.  Analysis of Plaintiff's Motion to Amend

The Proposed Second Amended Complaint once again asserts claims related to Plaintiff's confinement at Elmira C.F., Wende C.F., and Collins C.F.  *See generally* Prop.

Sec. Am. Compl.  Judge McAvoy previously severed and transferred those claims to the Western District.  *See* Dkt. No. 13.  Thus, amendment as to these claims is denied as futile.

Additionally, the Proposed Second Amended Complaint includes the following identical allegations previously asserted in the Complaint and Amended Complaint: (1) claims against previously dismissed defendants Hessal, Bishop, Squires, Jane Doe, Racette, Uhler, Barse, Bellnier, Claudio, Maher, and C. Miller; (2) § 1983 claims for monetary damages against defendants in their official capacity; (3) Eighth Amendment claims against Annucci and Cuomo based upon Plaintiff's right to rehabilitation; (4) Fourteenth Amendment due process claims against Miller; and (5) supervisory claims against Annucci.  *Compare* Prop. Sec. Am. Compl. *with* Am. Compl.  Judge McAvoy previously found the aforementioned claims insufficiently pled to withstand a motion under Federal Rule of Civil Procedure 12(b)(6).  *See* Dkt. Nos. 13 & 24.  Accordingly, amendment as to these claims and defendants would be futile.

The Proposed Second Amended Complaint contains new allegations related to Plaintiff's current confinement at Great Meadow Correctional Facility ("Great Meadow C.F.") and his First Amendment right to: (1) wear "cornrows;" (2) promote the UFD; and (3) receive daily mail without excessive delay.  Dkt. No. 61-3.  While Plaintiff has moved to amend pursuant to Federal Rule of Civil Procedure 15(a), these claims are more appropriately categorized as supplemental claims under Rule 15(d).  *See Phillips v. Lavalley*, 2013 WL 1681422, at *4 (N.D.N.Y. Mar. 1, 2013), *report and recommendation adopted*, 2013 WL

1681419 (N.D.N.Y. Apr. 17, 2013) (interpreting submission as a motion to supplement and denying request to allege new events at a new facility perpetrated by individuals not named in the original Complaint).

As discussed in the context of the procedural history of this case, this is not Plaintiff's first attempt to assert First Amendment claims related to his confinement at Great Meadow C.F. On October 6, 2017, Plaintiff filed a Notice indicating that he was transferred to Great Meadow C.F. Dkt. No. 15. On December 27, 2017, Plaintiff filed a Motion to Supplement the Amended Complaint to add unnamed officials at Great Meadow C.F. as new defendants and to assert allegations of wrongdoing at Great Meadow C.F. concerning his First Amendment right to: (1) wear "cornrows;" (2) promote the UFD and possess UFD materials; and (3) receive daily mail without excessive delay. Dkt. No. 28-1. In its January 2018 Order, the Court denied the Motion noting that Plaintiff "is attempting to add new defendants and claims that are completely unrelated to the central issues in the Amended Complaint." Dkt. No. 48 at p. 9. Specifically, the Court held:

> Plaintiff's claims related to alleged violations of his First Amendment rights at Great Meadow C.F. in 2017 are wholly unrelated to the allegations set forth in his Amended Complaint that he was assaulted at Clinton C.F. in 2014, and that his First Amendment rights were violated at Clinton C.F. in 2014. *Compare* Dkt. No. 28-1 with Am. Compl. Thus, the new allegations against the new defendants do not pertain to the operative pleading. Indeed, the proposed new claims involve events which occurred, if at all, years after the alleged wrongdoing set forth in the Amended Complaint, and were allegedly perpetrated by individuals not named in the Amended Complaint.

*-22-*

*Id.*

The allegations in the Proposed Second Amended Complaint do not cure the deficiencies previously identified. Plaintiff does not seek to join any new defendants. Moreover, the new allegations relate to issues involving Great Meadow C.F. that do not involve any named defendants from that facility. While the proposed pleading includes claims against "prison administrators," the "facility administration," and "staff members" at Great Meadow C.F., *see* Dkt. Nos. 89 & 91, Plaintiff did not identify any individual personally involved with the alleged constitutional violations at Great Meadow C.F. or name John/Jane Doe defendants.

For the reasons set forth herein and in the January 2018 Order, Plaintiff's Motion for Leave to Amend is denied. *See Mitchell v. New York State Dep't of Corr. Servs.*, 2011 WL 5326054, at *3 (W.D.N.Y. Nov. 3, 2011) (denying Plaintiff's motion to supplement, holding that "the proposed new claims arising at Auburn in March 2011 are not sufficiently connected to the existing claims in this action to warrant their inclusion in a supplemental pleading in this action.").

## IV. PLAINTIFF'S FIFTH, SIXTH, AND SEVENTH MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiff has previously filed four motions seeking some form of injunctive relief, each of which has been denied. *See* Dkt. Nos. 13, 24, 48, & 56. Presently pending are three additional motions. In his Fifth Motion, Plaintiff seeks an order directing Defendants to

permit Plaintiff to form a prison chapter of UFD at Great Meadow C.F. and enjoining defendants from disciplining Plaintiff for being a member of UFD and possessing UFD literature at Great Meadow C.F.  Dkt. Nos. 61, 62, 66, 76, 78, 81, 82, 83, 86, 87, & 92 (submissions in support).  In the Sixth Motion, Plaintiff seeks an order preventing "Defendants and their employees" from retaliating against him for submitting grievances at Great Meadow. C.F.  Dkt. Nos. 70 & 73 (submission in support).  In the Seventh Motion, Plaintiff seeks an order directing Defendants to take "corrective action" to "ameliorate the excessive delay" in processing mail at Great Meadow C.F. and for an order allowing Plaintiff to wear his hair in "cornrows."  Dkt. Nos. 74 & 90 (submission in support).

The Complaint in this case contains no claims regarding Great Meadow Correctional Facility and no staff at that facility remain as Defendants in this case.  Each of these Motions, however,  seeks relief specific to Great Meadow C.F.  Because the injunctive relief sought does not relate to the claims actually at issue in this case, the Motions should be denied. *Palmer v. Seidman*, 2016 WL 270864, at *2 (N.D.N.Y. Jan. 22, 2016); *Muhammad v. Wright*, 2010 WL 2472759, at *2 (W.D.N.Y. May 25, 2010), *report and recommendation adopted*, 2010 WL 2472758 (W.D.N.Y. June 15, 2010).  Moreover, courts generally cannot order injunctive relief as to non-parties, *see, e.g., Lewis v. Johnston*, 2010 WL 1268024, at *2 (N.D.N.Y. Apr. 1, 2010) (citing cases), which Plaintiff's Great Meadow-specific requests would require here since no Defendant is an employee of that facility.

Accordingly, it is recommended that the pending Motions for Injunctive Relief be

-24-

denied.

## V.  PLAINTIFF'S THIRD MOTION FOR COUNSEL

Plaintiff moves, for the third time, for the appointment of counsel.  Dkt. No. 61-2 at

p. 5.  In the September 2017 Order, the Court denied Plaintiff's previous motion, holding:

> At this preliminary stage, the Court is unable to determine
> whether Plaintiff meets the threshold requirement that at least
> some aspects of his claim are "likely to be of substance."  *Hodge*,
> 802 F.2d at 61.  Plaintiff has not submitted any evidence
> supporting his claims.  *See Terminate Control Corp*, 28 F.3d at
> 1341; *Cooper v. Sargenti Co., Inc*., 877 F.2d 170, 172, 174 (2d
> Cir. 1989).  Even if the Court were to assume, for purposes of this
> motion, that Plaintiff's position seems likely to be of substance,
> the relevant factors weigh decidedly against granting plaintiff's
> motion at this time.  For example: (1) the case does not present
> novel or complex issues; and (2) it appears to the Court as though,
> to date, Plaintiff has been able to effectively litigate this action.
> The Court is unaware of any special reasons why appointment of
> counsel at this time would be more likely to lead to a just
> determination of this litigation.  *See Terminate Control Corp*., 28
> F.3d at 1341; *Hodge,* 802 F.2d at 61.  Thus, Plaintiff's motion for
> the appointment of counsel is denied without prejudice.

Dkt. No. 13 at p. 32.

In the January 2018 Order, the Court denied Plaintiff's renewed motion holding:

> The Court has reviewed Plaintiff's second motion, with
> consideration of the factors outlined in the September Order, and
> finds no change of circumstances that would warrant appointment
> of counsel *pro bono* for Plaintiff at this time.  Plaintiff's second
> request for counsel is not accompanied by documentation that
> substantiates his efforts to obtain counsel from the public and
> private sector.  *See Terminate Control Corp. v. Horowitz*, 28 F.3d
> 1335, 1341 (2d Cir. 1994); *Cooper v. Sargenti Co., Inc*., 877 F.2d
> 170, 172, 174 (2d Cir. 1989).  Even if the Court were to assume
> that Plaintiff's claims are likely to be of substance, the relevant

> factors, as discussed in the September Order, would, and do, weigh against the granting of Plaintiff's motion. At this juncture, it appears that the case does not present issues that are novel or more complex than those raised in most prisoner civil rights actions. *See Marino v. Koenigsmann*, No. 9:12-CV-1170 (GTS/RFT), 2014 WL 1239514, at *1 (N.D.N.Y. Mar. 25, 2014). For all of these reasons, Plaintiff's second request for counsel is denied without prejudice.

Dkt. No. 56 at p. 6.

In his Third Motion for Counsel, Plaintiff argues that appointment of counsel is necessary to assist Plaintiff with "marshaling the evidence" and gathering witness declarations. Dkt. No. 61-2 at p. 6. With consideration of the factors outlined in the prior Orders, the Court finds no change of circumstances that would warrant appointment of counsel *pro bono* for Plaintiff at this time.

For the reasons set forth in the September 2017 Order and January 2018 Order, Plaintiff's Motion for Counsel is denied without prejudice.

## VI.  SERVICE ON CUOMO

Lastly, the Court must address a housekeeping issue regarding service on Defendant Cuomo. Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint on each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 90 days of the filing of the complaint. FED. R. CIV. P. 4(m).[6] Failure to properly serve any defendant in accordance

---

[6] Pursuant to amendments of the Federal Rules of Civil Procedure, effective December 1, 2015, the time frame within which to serve a defendant is no longer 120 days from the filing of the complaint. Furthermore, under the Local
(continued...)

with the Federal Rules will result in the court, upon motion or on its own initiative after notice to the plaintiff, dismissing the case without prejudice as to that defendant. *Id.*

Where, as here, a plaintiff has been authorized by the Court to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, the United States Marshals Service is appointed to effect service of process of the summons and complaint on his behalf. *See* FED. R. CIV. P. 4(c)(2) (Marshals Service must be appointed to serve process when plaintiff is authorized to proceed in forma pauperis); 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [*in forma pauperis*] cases."). Thus, once a plaintiff has identified the defendants, the Marshals Service must undertake to locate them and accomplish the service. The Marshals Service is obligated to effect service of process in accordance with the Federal Rules of Civil Procedure and, if necessary, the Marshals Service must make multiple attempts at service. *See Armstrong v. Sears*, 33 F.3d 182, 188 (2d Cir. 1994) (where defendant refused to acknowledge Marshals Service's request for waiver under Rule 4(d), the Marshals Service must effect personal service under Rule 4(e)); *accord Hurlburt v. Zaunbrecher*, 169 F.R.D. 258, 259 (N.D.N.Y. 1996); *see also* N.D.N.Y. L.R. 5.1(h) (Marshals Service is obligated to make personal service at plaintiff's request if no acknowledgment is filed with the court).

On December 6, 2016, the Clerk of the Court issued a summons to Governor Cuomo.

---

[6](...continued)
Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L.R. 4.1(b)

Dkt. No. 25.  On January 19, 2018, the summons for Governor Cuomo was returned "unexecuted."  Dkt. No. 47-6.  To date, Governor Cuomo has not been served.  "[A]n incarcerated pro se litigant proceeding *in forma pauperis* [is] entitled to rely on service by the U.S. Marshals."  *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986) (citing former FED. R. CIV. P. 4(c)(2)(B)(i)).  It is the Court's view that good cause under Rule 4(m) is established here where no inquiries had been made on Plaintiff's behalf regarding Governor Cuomo.  *Id.*

Under *Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997), a *pro se* litigant is entitled to assistance from the district court in identifying a defendant for service of process.  Although the Amended Complaint provides the name of the defendant, the Marshals Service has been unsuccessful in its attempts to effectuate service.  Accordingly, the Court instructs the New York Attorney General's Office to advise the Court whether it is representing Cuomo and, if so, whether Governor Cuomo waives service of summons.  If the Attorney General's Office is not representing Governor Cuomo or if he declines to waive service, the Court instructs the Attorney General's Office to provide an address where Defendant Cuomo can currently be served.[7]

## VII.  CONCLUSION

For the reasons stated herein, it is hereby

---

[7] Plaintiff should note that although the Court finds that good cause exists, he must nevertheless maintain active participation in and prosecution of this action. Thus, while it is the Marshal's obligation to effect service on Plaintiff's behalf, it is equally Plaintiff's obligation to ensure that this matter is fully prosecuted.

*-28-*

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 57) be **GRANTED in part and DENIED in part** as set forth above; and it is further

**RECOMMENDED**, that Plaintiff's Fifth, Sixth, and Seventh Motions for Preliminary Injunctions (Dkt. Nos. 61, 70, and 74) be **DENIED**; and it is further

**ORDERED**, that Plaintiff's Motion to Amend (Dkt. No. 61) is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Third Motion for Counsel (Dkt. No. 61) is **DENIED**; and it is further

**ORDERED,** that the New York State Attorney General's Office shall, within thirty (30) days of the filing date of this Order, advise the Court of whether it is representing Cuomo and, if so, whether Cuomo consents to waiver of service.  If the Attorney General's Office is not representing Cuomo or if Cuomo does not consent to waiver of service, the Attorney General's Office shall provide the Court with the information specified above, within thirty (30) days of the filing date of this Order.  The information should be sent to the Clerk of the Court for the Northern District of New York along with a copy of this Decision and Order, as well as to Plaintiff at his address of record.  Once this information is provided, the Clerk shall return this file to the Court for further review; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which

to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: January 3, 2019
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge