**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DONTIE S. MITCHELL,

                                        Plaintiff,

            - v -                                                    Civ. No. 9:17-CV-0892
                                                                            (TJM/DJS)
ANTHONY ANNUCCI, *Commissioner of*
*Department of Corrections*, JOHN MILLER,
*Correction Lieutenant*, R. WOOD, *Corrections*
*Sergeant*, ROBERT J. MAHUTA, *Correction Officer*,
NAPPER, *Correction Officer,* and WELLS,
*Correction Officer*,

                                        Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

DONTIE S. MITCHELL
Plaintiff, *Pro Se*
98-A-0071
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. LETITIA JAMES                            MELISSA A. LATINO, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Dontie Mitchell brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights while he was in the custody of the Department of Corrections and Community Supervision ("DOCCS"). *See* Dkt. No. 1, Compl.   Following initial review, the Court transferred certain claims in the Complaint to the Western District of New York and dismissed certain defendants and claims.   Dkt. No. 13 at pp. 14-15 & 36-37.   The Court found that an Eighth Amendment claim against Defendants Woods, Napper, and Wells, as well as First Amendment claims against Mahuta, Miller, Cuomo, and Annucci could proceed.   *Id.* at pp. 36-37.   Plaintiff then filed an Amended Complaint.   Dkt. No. 23, Am. Compl.   He also sought reconsideration of the Court's transfer order and dismissal of claims.   Dkt. Nos. 16 & 22.   The Court denied reconsideration, reaffirmed transfer of the claims to the Western District, and accepted the Amended Complaint for filing permitting the same claims identified above to proceed.   Dkt. Nos. 17 & 24.   Defendants subsequently made a Motion to Dismiss which resulted in some claims against Defendant Annucci being dismissed.   Dkt. No. 98.   Plaintiff later voluntarily discontinued his claims against Defendant Cuomo.   Dkt. No. 119.

All of the allegations that remain in this action concern events taking place at Clinton Correctional Facility.   Dkt. No. 13 at pp. 5-6.   Defendants do not seek summary judgment here as to the Eighth Amendment claims, limiting their Motion only to the First Amendment claims asserted against Defendants Mahuta, Miller, and Annucci.   *See*

*generally* Dkt. No. 125-2, Defs.' Mem. of Law.   Plaintiff opposes the Motion.   Dkt. No. 149.[1]   For the reasons that follow, the Court recommends Defendants' Motion for Summary Judgment be **GRANTED**.

## I.  BACKGROUND

The facts underlying the claims at issue in this Motion are not generally disputed. Indeed, Plaintiff largely concedes the accuracy of Defendants' recitation of the specific facts, while in some cases disputing the legal significance of those facts.   *Compare* Dkt. No. 125-1, Defs.' Rule 7.1 Statement *with* Dkt. No. 149, Pl.'s. Resp. to Defs.' Rule 7.1 Statement.   Plaintiff's allegations relate specifically to the First Amendment implications of a particular disciplinary action taken against Plaintiff and then more generally to DOCCS policies that he contends abridge his First Amendment rights.

In April 2014, Defendant Mahuta was employed by DOCCS as a Corrections Officer.   Dkt. No. 125-8, Mahuta Decl. at ¶ 1.   At that time he began an investigation into Plaintiff's alleged violation of prison disciplinary rules.   *Id.* at ¶ 10.   As part of that investigation, Mahuta requested, pursuant to DOCCS Directive 4422, that a mail watch be instituted that would permit prison security staff to review Plaintiff's mail for a specific time.   *Id.* at ¶ 11.   The Superintendent and/or Acting Superintendent approved the initial mail watch and several subsequent extensions.   *Id.* at ¶ 12 & Ex. C.   The mail watches resulted in the confiscation of five pieces of mail that Defendant Mahuta determined

---

[1] As part of Plaintiff's opposition he again seeks appointment of counsel.   Dkt. No. 149-1, Pl.'s Mem. of Law at pp. 5-6.   Plaintiff has repeatedly sought the appointment of counsel which the Court has denied as unwarranted. Dkt. No. 111.   For the reasons set forth in the Court's prior decisions, Plaintiff's submissions here offer no basis for appointment of counsel.

provided evidence of facility rules violations.  *Id.* at ¶¶ 13-14 & Ex. E.[2]

On September 11, 2014, Mahuta issued an inmate misbehavior report to Plaintiff as a result of information uncovered during this investigation.  *Id.* at ¶ 7 & Ex. A.  The report charged Plaintiff with three rules violations: engaging in activities regarding unauthorized organizations, improper solicitation of goods and services, and violation of facility correspondence rules.  *Id.*  An inmate disciplinary hearing was held regarding this report at which Defendant Miller, then a Lieutenant at Clinton C.F., presided.  *Id.* at ¶ 19; Dkt. No. 125-17, Miller Decl. at ¶¶ 14-16.

At the conclusion of the hearing, Miller found Plaintiff guilty of two of the three charges lodged in the misbehavior report, solicitation and correspondence violations, but not guilty of the unauthorized organizations charge.  Miller Decl. at ¶ 17.  This determination was administratively affirmed on appeal.  Miller Decl. at Ex. E.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact.

---

[2] At Defendants' request the Court initially permitted Exhibits B, D, & E to the Mahuta Declaration to be filed *in camera*.  Dkt. Nos. 120 & 121.  The Court subsequently directed that redacted copies of those exhibits be provided for Plaintiff's review in preparation for responding to the Motion.  Dkt. No. 130.  Insofar as the Court has relied on those exhibits in addressing the merits of this Motion the Court now directs that those exhibits be filed on the docket.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006).  The Clerk of the Court is directed to docket those exhibits with the Motion, but restrict access to court personnel and the parties given the inclusion of personal identifying information for non-parties.

*F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant.   FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).   To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.   *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).   "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.   Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."   *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d

1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

Only Plaintiff's First Amendment claims are at issue in this Motion. Defs.' Mem. of Law at p. 2. There is no question that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "These rights, however, 'must be exercised with due regard for the inordinately difficult undertaking that is modern prison administration.'" *Zimmerman v. Todd*, 2019 WL 4727399, at *3 (N.D.N.Y. Sept. 27, 2019) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). "The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution." *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977).

In the First Amendment context "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (citing *Turner*

*v. Safley*, 482 U.S. 78, 89 (1987)).    The court must consider the four factors set forth in

*Turner* in order to evaluate whether the regulation is "reasonably related to legitimate

penological interests":

> (1) there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it[;]
>
> (2) whether there are alternative means of exercising the right that remain open to prison inmates[;]
>
> (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[; and]
>
> (4) the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*Turner v. Safely*, 482 U.S. at 89-91 (citation omitted).    With these standards in mind,

the Court turns to the merits of Plaintiff's claims.

## A. Claims Regarding Mail Watches[3]

Plaintiff alleges that Defendant Mahuta violated his constitutional rights by

arbitrarily imposing an unlawful mail watch.    *See* Am. Compl. at ¶¶ 132-135; Dkt. No.

149-2, Mitchell Decl. at ¶ 23.    The record establishes that Mahuta requested that

Plaintiff be placed on a facility mail watch as part of an ongoing investigation.    Mahuta

Decl. at ¶ 11.    As Plaintiff concedes Mahuta only had the authority to *request* a mail

watch, not impose one.    Defs.' 7.1 Statement at ¶ 15 (Facility Superintendent has "sole

---

[3] As part of his opposition to the Motion, Plaintiff seeks leave yet again to amend the Complaint in this action, first filed in 2017, to include claims regarding mail watches imposed at Great Meadow.    *See* Pl.'s Mem. of Law at p. 6. Plaintiff previously requested leave to add claims regarding events at Great Meadow and that motion was denied. Dkt. No. 95 at pp. 19-23.    Plaintiff's brief and conclusory arguments here provide no basis for revisiting that decision.

discretion" to impose a mail watch); Pl.'s 7.1 Statement at ¶ 15 (admitting this statement). The mail watches imposed against Plaintiff were authorized by Superintendent Racette or the Acting Superintendent at Clinton Correctional Facility. Defs.' 7.1 Statement at ¶¶ 17 & 19 (discussing authorizations for mail watch); Pl.'s 7.1 Statement at ¶¶ 17 & 19 (admitting those statements).

Imposition of the mail watch did not violate the First Amendment. "[U]nder the *Turner* standard, the Second Circuit has already determined that facility instituted mail watches are constitutional as a reasonable measure 'to ensure the good order of the prison and the rehabilitation of prisoners by preventing a prisoner from engaging in illegal activities while incarcerated.'" *Williams v. Fischer*, 2010 WL 3910129, at *8 (N.D.N.Y. Aug. 17, 2010), *report and recommendation adopted*, 2010 WL 3893952 (N.D.N.Y. Sept. 30, 2010) (quoting *Duamutef v. Hollins*, 297 F.3d 108, 112-13 (2d Cir. 2002)); *see also Acevedo v. Fischer*, 2015 WL 7769486, at *6 (S.D.N.Y. Dec. 2, 2015), *report and recommendation adopted*, 2016 WL 884909 (S.D.N.Y. Mar. 2, 2016) (same) (citing cases). Indeed, the Second Circuit has "ruled that the interception of [an inmate's] prison correspondence does not violate that individual's First or Fourth Amendment rights if prison officials had 'good' or 'reasonable' cause to inspect the mail." *United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998).

8

Here, the record establishes that the imposition of the mail watch was reasonable. Mahuta received information that led him to believe that Plaintiff may be violating facility correspondence rules. Mahuta Decl. at ¶¶ 10-11. Specifically Mahuta became aware that Mitchell had attempted to mail letters to other DOCCS inmates through a third party in violation of DOCCS policy. *Id.* at Ex. B. That information also included discussion of drug smuggling in the visiting room at Clinton C.F. *Id.*[4] Mahuta then requested to place a mail watch on Plaintiff. Mahuta Decl. at ¶ 11. That request was granted. *Id.* at ¶ 12.

"A mail watch 'allow[s] a prison superintendent to authorize the inspection of outgoing and incoming mail if there is reason to believe that the correspondence threatens the safety of any person or the good order of the facility.'" *Acevedo v. Fischer*, 2015 WL 7769486, at *6 (quoting *United States v. Felipe*, 148 F.3d at 105). Courts have long recognized that rules barring inmates from different prisons from communicating with each other were constitutionally permitted as "logically connected to [] legitimate security concerns" because "communication with other felons is a potential spur to criminal behavior." *Turner v. Safley*, 482 U.S. at 91. Similarly, the dangers of drug smuggling within a correctional facility are clear. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) ("A detention facility is a unique place fraught with serious

---

[4] Plaintiff later admitted during his deposition to "coordinating" bringing drugs into the visiting room at Clinton. Dkt. No. 125-5 at p. 22.

9

security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence.").

"[T]he Second Circuit has held that 'where good cause is shown, outgoing mail can be read' without violating inmates' First Amendment rights." *Ford v. Fischer*, 2011 WL 856416, at *5 (N.D.N.Y. Jan. 31, 2011), *report and recommendation adopted*, 2011 WL 846860 (N.D.N.Y. Mar. 9, 2011) (quoting *United States v. Workman*, 80 F.3d 688, 698 (2d. Cir. 1996)).   The evidence that Plaintiff was involved in violating facility correspondence rules and had knowledge of smuggling into the facility clearly provide good cause to justify Mahuta's request for a mail watch.   *Jackson v. Portuondo*, 2007 WL 607342, at *13 (N.D.N.Y. Feb. 20, 2007).   Mahuta, therefore, is entitled to summary judgment as to this claim.

## B. Claims Related to an Inmate Misbehavior Report

Plaintiff also asserts claims against Defendants Mahuta and Miller related to an inmate misbehavior report issued to him on September 11, 2014.   Am. Compl. at ¶ 114. Mahuta authored the misbehavior report.   *Id.*; Mahuta Decl., Ex. A.   Miller presided over the disciplinary hearing regarding the report.   Am. Compl. at ¶ 116; Miller Decl. at ¶¶ 8-9 & Ex. B.   The report charged Plaintiff with violating three rules of inmate conduct.   Mahuta Decl. at Ex. A.   Miller found Plaintiff not guilty of one charge, but guilty of the two remaining charges.   Am. Compl. at ¶ 116; Miller Decl. at ¶ 17.

Plaintiff's First Amendment claim regarding the misbehavior report was permitted to proceed on the theory that the challenged disciplinary action violated his First Amendment associational rights.   Dkt. No. 13 at pp. 13 & 20-21.[5]   As noted above, limitations on associational rights are inherent upon incarceration and can be constitutional.   *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. at 126. The particular facts here are entirely consistent with those limitations and Defendants are entitled to summary judgment.

Plaintiff was found guilty of violating DOCCS' correspondence policy by engaging in business activities.   Miller Decl., Ex. A at p. 3.   It is well established that the "regulations prohibiting plaintiff from conducting business do not prevent plaintiff from exercising his First Amendment rights."   *Jordan v. Garvin*, 2004 WL 302361, at *4 (S.D.N.Y. Feb. 17, 2004).   Defendants have identified a number of penological interests served by prohibiting inmates from engaging in business activities while incarcerated.   These include preventing inmates from shielding money from restitution owed or from other mandatory legal obligations, preventing inmates from committing fraud upon members of the public or fellow inmates, preventing use of funds for any

---

[5]  Plaintiff's due process claims against Miller were previously dismissed, Dkt. No. 13 at pp. 21-23 & Dkt. No. 24 at pp. 10-11, and so no claim regarding the sufficiency of the evidence underlying these charges is presented here. *See generally Harris v. Taylor*, 2010 WL 3021531, at *9 (N.D.N.Y. July 14, 2010), *report and recommendation adopted*, 2010 WL 3021532 (N.D.N.Y. July 29, 2010) (distinguishing between First Amendment and Fourteenth Amendment due process claims).

11

illegal purposes, and reducing record-keeping burdens on facility staff.   Dkt. No. 23, Annucci Decl. at ¶ 25.   The Second Circuit has recognized that "[t]he legitimacy of the state's interest in preventing fraud or profligacy by inmates, and thereby promoting the penological objectives of security, order, and rehabilitation cannot seriously be questioned."   *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir. 1987) (internal quotation and citation omitted).   Accordingly, the limitations on Plaintiff's ability to conduct business while in DOCCS custody do not violate his First Amendment associational rights. *Zimmerman v. Racette*, 2018 WL 3964704, at \*7 (N.D.N.Y. Aug. 13, 2018) (citing cases).

Those penological concerns also defeat Plaintiff's challenge to the guilty disposition regarding solicitation given that "courts in this Circuit have similarly rejected a First Amendment challenge to DOCS Rule 103.20, which prohibits inmates from soliciting goods or services."   *Neree v. O'Hara*, 2011 WL 3841551, at \*8 (N.D.N.Y. July 20, 2011), *report and recommendation adopted*, 2011 WL 3841553 (N.D.N.Y. Aug. 29, 2011) (citing *Jordan v. Garvin*, 2004 WL 302361, at \*3-4).

Courts have consistently and repeatedly upheld the DOCCS policies at issue here against constitutional challenge.   In light of this authority and the record offered by Defendants, Plaintiff offers no basis for departing from established rules.   The Court,

therefore, recommends summary judgment for Defendants as to the claim regarding the misbehavior report.

## C. Qualified Immunity

Qualified immunity provides a "shield[ ] . . . from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct . . . . To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citations omitted). Qualified immunity attaches if "'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In other words, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Although it is not the case that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, Defendants argue that they are entitled to qualified immunity because they acted consistent with DOCCS' Directives #4422 and 4423 and Prison Rules 105.14,

13

103.20, and 180.11, with respect to disciplinary proceedings involving Plaintiff. "When officials follow an established prison policy . . . their entitlement to qualified immunity depends on whether a reasonable officer might have believed that the challenged order was lawful in light of legitimate penological interests supporting the directive." *Barnes v. Furman*, 629 Fed. Appx. 52, 57 (2d Cir. 2015) (quotation marks omitted). The reasonableness of an action depends on "facts and circumstances of each particular case." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

The record establishes that Defendant Mahuta complied with DOCCS policy in requesting the mail watch and based the misbehavior report on evidence obtained during his investigation. In light of the objective evidence in his possession that plaintiff was violating correspondence rules it was reasonable for Mahuta to have sought the mail watch. As discussed above, at the time Mahuta acted the mail watch policy had been repeatedly upheld by courts, as had the DOCCS policies underlying the misbehavior report allegations. The evidence obtained was sufficient to support guilty determinations regarding two of the three charges lodged against Plaintiff. Miller Decl. at ¶ 17. Under the circumstances a reasonable corrections officer in Mahuta's position would not have known that his actions were violating Plaintiff's constitutional rights and Mahuta, therefore, is also entitled to summary judgment based on qualified immunity.

14

Defendant Miller similarly is entitled to qualified immunity on the facts before him. He found Plaintiff guilty of two disciplinary violations. Miller Decl. at ¶ 17. That determination was affirmed on appeal and is not challenged here. A reasonable corrections official in his position could not have known that relying on evidence obtained consistent with DOCCS policies to find an inmate guilty of some, but not all, charges was violating the inmate's First Amendment rights. The disciplinary action was also taken in the context of significant caselaw in the Second Circuit upholding the Directive that Plaintiff was alleged to have violated against challenges similar, if not identical, to those raised by the Plaintiff here. Plaintiff has pointed to no clearly established law to the contrary. Qualified immunity, therefore, is appropriate.

### D. Defendant Annucci

Plaintiff seeks declaratory and injunctive relief against Defendant Annucci in his capacity as Acting Commissioner of DOCCS regarding policies affecting inmate communications. *See* Dkt. No. 13 (describing nature of claims against Annucci).

#### 1. Alleged Policies Regarding Arbitrary Mail Procedures

Plaintiff first claims that "arbitrary mail watches" are a "systemic" problem within DOCCS. Pl.'s Decl. at ¶ 23; *see also* Am. Compl. at ¶¶ 132 & 135. As described above, the mail watch at issue in this case was based on specific evidence supporting its imposition. *See* Point III(A), *supra*. The record is devoid of specific

15

facts to support a claim of systemic abuse.   At best Plaintiff offers that "[s]everal other prisoners" have made him aware of problems with mail.   Am. Compl. at ¶ 135. Defendant Annucci's Declaration denies the existence of a systemic policy of imposing arbitrary mail watches.   Annucci Decl at ¶ 19.   "Plaintiff has simply made the conclusory statement that such a policy exists in his [amended] complaint" which is insufficient to withstand summary judgment.   *Cerulli v. Gailor*, 2009 WL 4891813, at *5 (E.D.N.Y. Dec. 16, 2009); *see also Paris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 364 (SDNY 2013) ("Conclusory, unsupported allegations of . . . the existence of a policy are simply insufficient to establish liability of supervisory prison officials under § 1983").

### 2. Denial of Access to Email and Text Messaging

Plaintiff next alleges that DOCCS' policies prohibiting inmates from accessing email and text messaging services violate the First Amendment.   Am. Compl. at ¶ 186. Consistent with cases decided around the country, the Court recommends that summary judgment be granted as to this claim.   "Although prison inmates retain a right under the First Amendment to send and receive information while incarcerated they do not have a constitutional right to a particular form of communication, including access to the internet or email." *Edwards v. New York State Dep't of Corr. & Cmty. Supervision*, 2019 WL 1978803, at *5 (N.D.N.Y. May 3, 2019) (internal citations omitted) (citing

16

cases); *see also Holt v. Bright*, 2020 WL 224575, at *3 (N.D. Ohio Jan. 15, 2020) ("while prisoners have a First Amendment right to communicate with the outside world, they do not have a constitutional right to a particular form of communication, such as access to email"); *Smith v. Unknown Hall*, 2018 WL 1602633, at *4 (W.D. Mich. Apr. 3, 2018) (noting that courts "have routinely agreed" that inmates "do not have a constitutional right to a particular form of communication, such as access to email.") (citing cases).   Prison officials, therefore, do not violate the First Amendment by declining to make an inmate's preferred method of communication available.

Summary judgment is also appropriate as to Plaintiff's claim regarding e-mail as DOCCS now does have a system in place for inmates to utilize e-mail.   Annucci Decl. at ¶ 33; Mitchell Decl. at ¶ 24.   Any claim for declaratory and injunctive relief as to providing e-mail access, therefore, is moot.   *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").[6]

### 3. Directive 4422

Finally, Plaintiff's Amended Complaint makes a broad based attack on the constitutionality of DOCCS Directive 4422.   Am. Compl. at ¶ 186.   That Directive

---

[6] The Court recognizes that Plaintiff claims that he has been "deliberately excluded from participating" in the email program.   Mitchell Decl. at ¶ 25; *see also* Dkt. No. 147.   Such claims, however, would relate to the specific individuals at Great Meadow Correctional Facility allegedly responsible for excluding Plaintiff, none of whom are parties to this action.

17

concerns the Inmate Correspondence Program.    Annucci Decl. at ¶ 8 & Ex. A.    Certain aspects of Plaintiff's attack on the Directive were addressed above with respect to e-mail and others have previously been dismissed.    Dkt. No. 98.    To the extent that Plaintiff alleges the Directive's restrictions on his ability to conduct business or engage in solicitation violate the First Amendment, those claims should be dismissed.

"Courts interpreting Directive No. 4422 have held that the restrictions it places on inmate communication serve a legitimate penological purpose."    *Burroughs v. Cty. of Nassau*, 2015 WL 4257387, at *2 (E.D.N.Y. July 14, 2015) (citing cases); *see also Minigan v. Irvin*, 977 F. Supp. 607, 609 (W.D.N.Y. 1997) ("The constitutionality of this policy has been upheld repeatedly by courts in this circuit.") (citing cases); *Webster v. Mann*, 917 F. Supp. 185, 187 (W.D.N.Y.1996) ("there is no dispute that Directive No. 4422 is reasonably related to legitimate penological interests.").    Here, the record establishes that the Directive serves multiple penological goals including:

> (1) preventing inmates from shielding money from restitution owed or from other mandatory legal obligations; (2) deterring escape by restricting inmates' access to available outside funds; (3) preventing inmates from being able to extort money from other inmates; (4) preventing inmates from committing fraud upon members of the public; (5) preventing use of funds for any illegal purposes; and (6) reducing record-keeping burdens on facility staff.

Annucci Decl. at ¶ 25.    Plaintiff does not dispute the stated penological objectives, contending only that the policy is nonetheless unconstitutional.    Pl.'s Resp. to Defs.'

18

7.1 Statement at ¶¶ 31-32.  "[C]ourts owe 'substantial deference to the professional judgment of prison administrators.'"  *Beard v. Banks*, 548 U.S. 521, 528 (2006) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).   Given this deference and the undisputed penological interests asserted, "[i]t is evident that a valid, rational connection exists between Directive 4422 and the legitimate governmental interests the directive was designed to promote."  *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir.1987).

For these reasons, Defendant Annucci is entitled to summary judgment on Plaintiff's claims.

## IV.   CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 125) be **GRANTED**; and it is further

**RECOMMENDED**, that the Amended Complaint be **DISMISSED** as to Plaintiff's First Amendment claims against Defendants Mahuta, Miller, and Annucci; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[7] days within

---

[7] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and

which to file written objections to the foregoing report.   Such objections shall be filed with the Clerk of the Court.   **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**   *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   September 3, 2020
        Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

file objections.   FED. R. CIV. P. 6(d).   If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

20