UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DONTIE S. MITCHELL,

<i>Plaintiff,</i>

-against-

CUOMO, et al

<i>Defendants.</i>

9:17-cv-00892

(TMJ-DJS)

## TRIAL MEMORANDUM OF LAW AND
## MOTIONS *IN LIMINE*

LETITIA JAMES
Attorney General, State of New York
Attorney for Defendants
Albany Litigation Bureau
The Capitol
Albany, NY  12224

Melissa Latino
Assistant Attorney General, Of Counsel
Bar Roll No. 511162
Telephone: (518) 776-2593
Email: Melissa.Latino@ag.ny.gov

Mark G. Mitchell
Assistant Attorney General, of Counsel
Bar Roll No. 516818
Telephone: (518) 776-2583
Email: Mark.Mitchell@ag.ny.gov

Date: June 28, 2021

Table of Contents

Preliminary Statement ……………………………………………………………………2

Summation of Facts ………………………..……………………………………………..3

POINT I …………………………………………………………………………………3

       PLAINTIFF'S EIGHTH AMENDMENT CLAIMS SHOULD BE DISMISSED

POINT II ………………………………………………………………………………..3

       PLAINTIFF SHOULD BE PRECLUDED FROM
       INTRODUCING ANY EVIDENCE RELATING TO A CLAIM
       DISMISSED ON SUMMARY JUDGMENT

POINT III …………………………………………………………………………………5

       EVIDENCE OF PLAINTIFF'S FELONY CONVICTIONS AND
       DISCIPLINARY HISTORY WITH DOCCS SHOULD BE ADMITTED
       AT TRIAL

POINT IV ………………………………………………………………………………..9

       EVIDENCE OF THE INVESTIGATION SURROUNDING DRUG
       SMUGGLING AND THREATS THAT OCCURRED ON SEPTEMBER
       1, 2014 SHOULD BE ADMITTED AT TRIAL

POINT V ……………………………………………………………………………….11

       PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY
       TESTIMONY OR OTHER EVIDENCE AT TRIAL ABOUT INMATES
       BEING HARMED AT CLINTON CORRECTIONAL FACILITY.
       PLAINTIFF SHOULD ALSO BE PRECLUDED FROM OFFERING
       ANY TESTIMONY OR OTHER EVIDENCE AT TRIAL ABOUT ANY
       DEFENDANT HAVING A REPUTATION FOR ENGAGING IN
       EXCESSIVE FORCE, FAILURE TO INTERVENE, OR RETALIATION

POINT VI ………………………………………………………………………………..13

       DEFENDANTS ARE ENTITLED TO A DEFENSE OF QUALIFIED
       IMMUNITY

CONCLUSION …………………………………………………………………………..15

## PRELIMINARY STATEMENT

Plaintiff Inmate Dontie Mitchell ("Inmate Mitchell") commenced this instant proceeding pursuant to 42 U.S.C. §1983, claiming that Defendants Lieutenant Ronald Wood (then "Sergeant Ronald Wood"), Correction Officer Neil Napper, and Correction Officer Nicholas Wells used excessive force on him on September 1, 2014, in violation of the Eighth Amendment of the United States Constitution.  This memorandum of law serves as Defendants' combined trial brief and motions *in limine*.

Defendants seek prior permission from this Court to admit evidence relating to the investigation of Inmate Mitchell for drug smuggling, threats and contraband (money) on September 1, 2014, his placement in keeplock pending the investigation, and the resulting charges made against him for such conduct as these allegations relate directly to his motive for assaulting Defendant Ronald Wood on the date of such incident.  Defendants further assert herein that, consistent with Rules 608 and 609 of the Federal Rules of Evidence, they should be permitted to impeach the Plaintiff on the basis of his prior felony convictions including Robbery: 1st Degree, and his disciplinary history as an inmate in DOCCS including his guilty findings for Smuggling, Threats, Prison Contraband and False Information.

Defendants further seek an order from this Court excluding the introduction of any evidence relating to the escape of inmates at Clinton Correctional Facility in Dannemora, New York, and any facts relating to the issues dismissed on Summary Judgement. For all of these reasons and those facts elicited during the course of this litigation, judgment should be entered in favor of Defendants and against Plaintiff.

## SUMMATION OF FACTS

On September 1, 2014, Plaintiff and another inmate were suspected of smuggling drugs and contraband (money) into Clinton Correctional Facility in Dannemora, New York during a visitors' session. DOCCS officials placed Plaintiff Inmate Mitchell in keeplock pending further investigation into the matter. Specifically, Plaintiff Inmate Mitchell was placed in the D-Block at the facility. At approximately 8:00 p.m. on September 1, 2014, Defendant Ronald Wood interviewed the Plaintiff regarding the incidents earlier that day. He directed Correction Officer Neil Napper to escort the Plaintiff from his cell in the D-Block to the officers' station in the D-Block for the interview. Defendant Nicholas Wells was the Correction Officer on duty in the D-Block that day.

During the interview, Plaintiff swung at Defendant Ronald Wood and hit him in the chin/face. Defendant Ronald Wood used a strike to the Plaintiff's face to regain control and order. Defendant Neil Napper observed the use of force and responded to assist Defendant Ronald Wood. Defendants Wood and Napper restrained the Plaintiff by using body holds and strikes to the back. Once they gained control, they applied mechanical restraints. Plaintiff was then escorted to the facility's infirmary where a punctured lip and bloody nose were noted. He was then taken to the hospital for stiches to his lip. Defendant Nicholas Wells was not involved in the use of force on such date.

## POINT I

### PLAINTIFF'S EIGHTH AMENDMENT CLAIMS MUST BE DISMISSED

To sustain a claim of excessive force, a plaintiff must establish both the objective and subjective elements of an Eighth Amendment claim. *See Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). In order to satisfy the objective element, a defendant's conduct must be

"inconsistent with the contemporary standards of decency." *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (internal quotation marks omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotation marks omitted). "The subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (some internal quotation marks omitted). "When prison officials are accused of using excessive force, the 'wantonness' issue turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Here, the evidence will show that Defendants Ronald Wood and Neil Napper did not use excessive force upon Inmate Mitchell. Defendants used force necessary to regain control of Inmate Mitchell after he assaulted Ronald Wood by hitting him in the face. The use of force was legitimate and used only to regain the safety and security of the facility.

## POINT II

### PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING ANY EVIDENCE RELATING TO A CLAIM DISMISSED ON SUMMARY JUDGEMENT

The issues at trial should be limited to those surviving Defendant's motion to dismiss (Dkt. No. 57) and their summary judgment motion (Dkt. No. 125). By Report-Recommendation of Magistrate Judge Daniel J. Stewart, dated January 3, 2019 (Dkt. No. 95), the Court recommended certain allegations in Plaintiff's Complaint be dismissed. A copy of the Report-

Recommendation is attached hereto as "**Exhibit A**."  By Decision and Order dated March 28, 2019, Senior District Judge Thomas J. McAvoy accepted the Report-Recommendation of Judge Stewart and dismissed various allegations from the Complaint (Dkt. No. 98).  *See* Ex. A.

Defendants then submitted a motion for summary judgment (Dkt. No. 125).  By Report-Recommendation, dated September 3, 2020, Magistrate Judge Daniel J. Stewart recommend the dismissal of Plaintiff's First Amendment claims from the Complaint (Dkt. No. 152).  *See* Ex. A. By Decision and Order, dated October 30, 2020, Senior District Court Judge Thomas J. McAvoy adopted Judge Stewart's Report-Recommendation, dismissing the allegations.  *Id*. As such, Plaintiff Inmate Mitchell should be precluded from introducing any evidence relating to these allegations.

Additionally, "[i]t is well settled that New York State Correction Law Section 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." *See, e.g., Baker v. Coughlin,* 77 F.3d 12, 14-15 (2d Cir.1996).  Therefore, to the extent Inmate Mitchell attempts to raise any state claim at trial, these, too, must be barred.

## POINT III

### DEFENDANTS SHOULD BE PERMITTED TO ADMIT EVIDENCE OF DEFENDANTS' CONVICTIONS AND DISCIPLINARY CHARGES AT TRIAL

Pursuant to Fed. R. Evid. 609(a)(1), the Court has discretion to admit evidence of any witness's prior conviction(s), if the subject crime was punishable by death or imprisonment in excess of one year and the court determines that the probative value of admission outweighs prejudice to the witness.  *See* Fed. R. Evid. 609(a)(1); Fed. R. Evid. 403*; United States v. Pedroza*, 750 F.2d 187, 202 (2d Cir 1984).  Under Fed. R. Evid. 609(a)(2), however, evidence of convictions for crimes involving dishonesty "shall be admitted" as being *per se* probative of

credibility.  *See U.S. v. Estrada*, 430 F.3d 606, 615–616 (2d Cir 2005) (emphasis supplied).

While this Rule may limit admissibility where more than ten years has elapsed from the date of

conviction or release from confinement for that conviction, that limitation is inapplicable where

the convict is still incarcerated for the subject crime, such as here. *See, e.g., Amaker v. Coombe*,

2003 US Dist. LEXIS 8790, at \*16-17 (S.D.N.Y. May 16, 2003, **Appendix**).

Furthermore, all felonies are probative of a witness's propensity to testify truthfully. *See*

*U.S. v. Estrada*, 430 F.3d 606, 617, 621 (2d Cir.2005).  Crimes requiring planning or preparation

implicate veracity, because planning indicates deliberate and injurious violation of basic

standards rather than impulse or anger, and usually it involves some element of deceiving the

victim.  *See Estrada*, 430 F.3d at 621; *see also*, *Gordon v. State*, 383 F.2d 936, 940 (1st Cir

1967) ("[W]e must look to the legitimate purpose of impeachment which is, of course, not to

show that the accused who takes the stand is a 'bad' person but rather to show background facts

which bear directly on whether jurors ought to believe him rather than other and conflicting

witnesses.  In common human experience acts of deceit, fraud, cheating, or <u>stealing</u>, for example,

are universally regarded as conduct which reflects adversely on a man's honesty and integrity."),

*cert. den*., 390 US 1029 (1968); *see also*, *Campbell v. Greer*, 831 F.2d 700, 707 (7th Cir.

1987)(in civil cases, the "[c]rime must be named" or jury cannot properly evaluate credibility).

Of further significance, robbery is often admissible at trial for impeachment purposes*.*

*See, e.g., Thomas v. U.S.,* 2007 US Dist LEXIS 25393 (S.D.N.Y. Apr. 3, 2007, in included

herewith in **Appendix**) (robbery convictions admitted under Fed. R. Evid. 609[a][2]); *U.S. v.*

*Stevens,* 2004 US Dist. LEXIS 17892 (S.D.N.Y., 2004, included in **Appendix**) ("Robberies by

their very nature involve dishonesty and thus have an impact on the integrity and credibility of a

witness. The probative value of admitting any robbery conviction, or attempted robbery

conviction 'outweighs its prejudicial effect to the accused.' Fed. R. Evid. 609[a][1].  All of the robberies … clear the hurdles of FRE 609[a][1] and [2]"); s*ee also, Brundidge v. City of Buffalo*, 79 F.Supp.2d 219, 226 (W.D.N.Y. 1999);  *but see, U.S. v. Hawley*, 554 F.2d 50, 53, n. 7 (2d Cir.1977) (robbery not necessarily a crime involving "dishonesty or false statement" within the meaning of 609[])[2]); *Harvey v. Farber*, 2013 US Dist LEXIS 27373, at *6 (Feb. 28, 2013, included in **Appendix**) (crimes of violence generally held not to arise out of dishonest conduct) (citation omitted).

Overall, under Fed. R. Evid. 609(a)(1), balancing probative value against prejudicial effect requires the Court to examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *See Harvey*, 2013 US Dist. LEXIS 27373, at *4; *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (*citing 4 Weinstein's Federal Evidence* §609.04[2][a], at 609-20 [1997]).

The United States District Court, Northern District of New York, has recently held that for effective impeachment, the statutory name of the offense, date of the conviction, and sentence are permissible.  *Ames v. Stevens*, 201 U.S. Dist. LEXIS 124024, *10 (N.D.N.Y 2015) (D'Agostino, J).

In this case, Defendants should be allowed to impeach Plaintiff Inmate Mitchell with the name of each of his convictions, nature of the offense, and sentence imposed for his crimes of conviction.  According to Inmate Mitchell's Sentence Information, he is currently serving an aggregate sentence of 25 years to 54 years (max) in prison for multiple offenses including: Robbery: 1st Degree; Criminal Use of Firearms: 1st Degree; Grand Larceny of Auto, and Criminal Possession of a Weapon.  A copy of Plaintiff's Crime and Sentence information computerized

print-out from DOCCS is annexed hereto as "**Exhibit B**."  In more detail, Plaintiff was found guilty of stealing money and property from victims at a McDonalds restaurant at gunpoint. Plaintiff was sentenced to these crimes on December 23, 1997.  *Id.*

Of further significance, Plaintiff was convicted of Promoting Prison Contraband: 1st Degree, a D felony, while serving his sentence on the afore-mentioned crimes.  *See* Ex. B.  He was sentenced to four (4) years imprisonment on August 7, 2003.  *Id*.

Despite being sentenced to the afore-said crimes over 10 years ago, Inmate Mitchell is currently serving the sentence imposed upon him for the felony convictions related to the McDonald's incident.  Based on this factor, alone, Defendants should be permitted to admit evidence of these felony crimes at trial under Fed. R. Evid. 609(b).

Notwithstanding, all of Inmate Mitchell's felony convictions reveal that he is an individual with a profound disregard for human life.  He not only stole property and money from victims at gunpoint, but he also promoted prison contraband in his detention facility – bringing dangerous and unlawful items into the facility for his own personal gain.  These convictions demonstrate Inmate Mitchell's disregard for law and order and his propensity for deception.  As his conscience is not constrained by the sanctity of life when pursuing his own agenda, the concept of truth will provide no impediment.

Significantly, it is anticipated that there will be a stark contrast between the two versions of events the jury will hear as to whether Inmate Mitchell struck Defendant Ronald Wood first or whether  Defendant Ronald Wood struck Inmate Mitchell first.  Simply put, the credibility of Inmate Mitchell will play a crucial part in this case.  Therefore, Inmate Mitchell's criminal convictions are essential for impeachment purposes.

Further, as allegations at issue in this case are limited to excessive force claims, the

prejudicial effect of discussing Inmate Mitchell's criminal propensity is limited.  *See, e.g., Guzman v. Kelly*, 1996 U.S. Dist. LEXIS 18666 (W.D.N.Y. Dec. 9, 1996, included in **Appendix**) (permitting defense counsel limited inquiry into the existence and general nature of such convictions), *citing*, *Wilson v. City of Chicago*, 6 F.3d 1233, 1236-1237 (7th Cir. 1993) (plaintiff's murder convictions need not be concealed from the jury; by testifying, the plaintiff exposes himself to cross-examination designed to impeach his credibility by establishing that he is a convicted malefactor but cross-examiner may not elicit the details of the crimes underlying the convictions unless such bear directly upon the witness's credibility), *cert. denied*, 511 US 1088 (1994).  Accordingly, Defendants seek a prior ruling from this Court permitting them to impeach Plaintiff Inmate Mitchell as to the name, nature, and sentence of all his prior felony convictions.

Similarly, Plaintiff's disciplinary findings should be considered.  Among other charges, Inmate Mitchell was found guilty after a Superintendent's Hearing of Smuggling drugs into Clinton Correctional facility and making threats toward civilians to bring drugs into the facility in relation to the September 1, 2014 incident.  A copy of his disciplinary history at DOCCS is attached hereto as part of Exhibit B.  Smuggling drugs into the facility and making threats toward civilians certainly goes to his propensity for dishonesty.  He was also found guilty of providing false information and possessing contraband.  Ex. C.  Therefore, Defendants should be permitted to admit this evidence at trial.

## POINT IV

## DEFENDANTS SHOULD BE PERMITTED TO ADMIT EVIDENCE OF THE SURROUNDING INVESTIGATION OF DRUG SMUGGLING

Under Fed. R. Evid. 402 and 403, relevant evidence is admissible at trial unless its

probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Additionally, although certain evidence about a plaintiff's character may be precluded for prejudice, evidence that relates to motive is otherwise permissible under Fed. R. Eivd. 404.

Defendants should be permitted to admit evidence of the investigation surrounding Inmate Mitchell smuggling drugs into the facility and making threats toward civilians.  First, leading up to the use of force at 8:00 p.m. on September 1, 2014, Plaintiff Inmate Mitchell was suspected of and being investigated for smuggling drugs and contraband in the facility.  Another inmate, along with Inmate Mitchell, was also suspected of smuggling contraband into the facility.  Both inmates were placed in keeplock pending the investigation.  The visitors who smuggled the drugs into the facility were also interviewed regarding the incident.  The contraband found in the facility was tested.  Plaintiff Inmate Mitchell was aware that he was being investigated, that this other inmate was being investigated, and that the visitors were being investigated and potentially arrested.

Following this investigation, Defendant Ronald Wood proceeded to re-interview Plaintiff Inmate Mitchell regarding the allegations.   During the interview, Defendant Ronald Wood asked Inmate Mitchell about the allegations of smuggling drug/contraband and making threats toward civilians.

The events surrounding the investigation of Inmate Mitchell on September 1, 2014 are so closely connected to the use of force later resulting on such date, they cannot be separated.  The probative value of the investigation outweighs any prejudice on the plaintiff.  In any event, the investigation provides Inmate Mitchell with various motives to strike Defendant Ronald Wood

on September 1, 2014.  Therefore, Defendants request permission from the Court to admit into evidence the complete facts and circumstances surrounding the investigation of Inmate Mitchell on September 1, 2014 as they are relevant to the allegations at hand, and in any event, demonstrate Inmate Mitchell's motive for striking Defendant Ronald Wood.  The admission of this evidence at trial is essential to Defendants' defense at trial.

<u>**POINT V**</u>

**PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY TESTIMONY OR OTHER EVIDENCE AT TRIAL ABOUT INMATES BEING HARMED AT CLINTON CORRECTIONAL FACILITY.  PLAINTIFF SHOULD ALSO BE PRECLUDED FROM OFFERING ANY TESTIMONY OR OTHER EVIDENCE AT TRIAL ABOUT ANY DEFENDANT HAVING A REPUTATION FOR ENGAGING IN EXCESSIVE FORCE, FAILURE TO INTERVENE, OR RETALIATION**

Defendants respectfully request an order precluding Plaintiff Inmate Mitchell from offering any testimony or other evidence at trial about other inmates being harmed at Clinton Correctional Facility.  In addition, Defendants request an order precluding Plaintiff from offering any testimony or other evidence at trial about any Defendant having a reputation for engaging in excessive force, failure to intervene, or retaliation against inmates.  Such evidence must be precluded at trial as (1) irrelevant; (2) unduly prejudicial while lacking any probative value; (3) improper evidence of propensity; (4) would result in multiple trials within a trial and; and (5) violative of the rule against hearsay.

First, Plaintiff's purported evidence of other incidents of excessive force, failure to intervene, and retaliation at Clinton Correctional Facility is not relevant to Plaintiff's claims in this action.  *See* Fed. R. Evid. 401.

Second, even if the Court were to glean any conceivable relevance from this evidence, it should remain inadmissible because any limited probative value is "substantially outweighed by the danger of unfair prejudice."  Fed. R. Evid. 403.  Undated, non-specific, hearsay accounts of

incidents of mistreatment at Clinton Correctional Facility will unduly prejudice the jury and distract from its determination of the facts concerning the events involving Plaintiff and Defendants.

Third, Plaintiff's testimony that any of the Defendants have a reputation for harming and retaliating against inmates is nothing more than an improper attempt to show that those Defendants have a propensity to use excessive force and engage in retaliation. Such character and propensity evidence is not permitted. *See* Fed. R. Evid. 404(a)(1), (b)(1); *Berkovich v. Hicks*, 922 F.2d 1018, 1022-1023 (2d Cir. 1991) (determining that the plaintiff's proffer of evidence of prior complaints "amounts to no more than a veiled attempt to do what Rule 404(b) expressly prohibits—introducing evidence of bad acts to show the defendant's propensity to commit such acts.").

Fourth, any testimony regarding alleged other incidents of abuse and retaliation at Clinton Correctional Facility would necessarily result in multiple trials within the trial. If Plaintiff is permitted to testify regarding unspecified, undated incidents of alleged mistreatment at the prison, Defendants would have a right to rebut each incident by submitting evidence regarding the veracity of the claim, the circumstances of the alleged incident (if it occurred), the resolution to any inquiry into the incident, and any other circumstances relevant to each incident. To this end, Defendants would have to submit counter-evidence by way of testimony and records from each incident (to the extent even identifiable as Plaintiff's allegations are unspecified and non-particularized by date, time, or individual). Such trials within a trial are strongly disfavored as causing needless delay and confusion to the jury. *See Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 369, 375-376 (S.D.N.Y. 2014); *see also United States v. Aboumoussallem*, 726 F.2d 906, 912-913 (2d Cir. 1984) (upholding exclusion of testimony to avoid "trial within a

trial"); *United States v. Al Kassar*, 582 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) ("[T]he situations are not, on their face, analogous, and it would require a trial within a trial before the jury could determine whether there was any meaningful analogy at all."), *aff'd*, 660 F.3d 108, 123-124 (2d Cir. 2011); *ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp. 2d 383, 407 (S.D.N.Y. 1999) ("The probative value of such an exercise is vastly outweighed by the confusion and delay that would inevitably result from conducting a trial within a trial.").

Fifth, much of the anticipated testimony would take the form of inadmissible hearsay or double hearsay.  *See* Fed. R. Evid. 802.  Plaintiff's testimony about stories he heard at Clinton Correctional Facility about other uses of force and retaliation would clearly constitute out-of-court statements offered for the truth of the matter asserted—that the alleged incident occurred rendering Clinton Correctional Facility a dangerous prison.  *See* Fed. R. Evid. 801(c).

In sum, the Court should preclude Plaintiff from offering any testimony or other evidence at trial about other inmates being harmed at Clinton Correctional Facility.  Plaintiff should be precluded from offering any testimony or other evidence at trial about any Defendant having a reputation for engaging in excessive force, failure to intervene, or retaliation against inmates.

## POINT VI

### DEFENDANTS ARE ENTITLED
### TO A DEFENSE OF QUALIFIED IMMUNITY

Defendants should be permitted to assert a defense of qualified immunity from civil damages as their conduct did not violate any "clearly-established constitutional right of which reasonable correction staff would have known."   *See e.g. Williams v. Smith* 781 F2d, 322 (2d Cir. 1986), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).

> Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." [citation omitted]. The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." [citation omitted].

The test for qualified immunity is twofold. A qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." [citation omitted]. The Court must consider whether the constitutional right was clear enough so that a reasonable official would understand that her actions would violate that right. [citation omitted].

The doctrine of qualified immunity recognizes that "reasonable mistakes can be made as to the legal constraints on particular ... conduct." [citation omitted]. Qualified immunity applies if the officials' mistake as to what the law requires is reasonable. [citation omitted]. It does not apply if, on an objective basis, it is obvious that no reasonably competent official would have taken the actions of the alleged violation. [citation omitted]. Summary judgment is appropriate when a trier of fact would find that reasonable officials could disagree on the legality of defendants' actions. [citation omitted].

*Finn v. New York State Office of Mental Health-Rockland Psychiatric Center,* 2011 WL 4639827, at *22 -23  (S.D.N.Y. Oct. 6, 2011, **Appendix)**.

There can be no liability where it was objectively reasonable for officials to believe they were not violating clearly established law.  *See Luna v. Pico*, 356 F.3d 481, 490 (2d Cir 2004) (qualified immunity bars the claim if a reasonable officer "objectively and reasonably believed that he was acting lawfully").  "[E]ven if the interest asserted by the plaintiff was clearly of a type generally protected by federal law, the defendant is entitled to immunity as a matter of law if it was not clear at the time of the acts at issue that an exception did not permit those acts." *Danahy v. Buscaglia*, 134 F.3d 1185, 1190 (2nd Cir 1998); *Calhoun v. New York State Division of Parole*, 999 F.2d 647 (2d Cir 1993) (qualified immunity protects defendants even where rights were clearly established if it was objectively reasonable to believe their acts did not violate plaintiff's federal rights); *Benitez v. Wolff*, 985 F.2d 662 (2d Cir. 1993); *Robison v. Via*, 821 F.2d 913, 920-21 (2d Cir. 1987).  If there is a "legitimate question" about the right in question,

qualified immunity attaches. *Mitchell v. Forsyth*, 472 US 511, 535 n. 12 (1985); *Shabazz v. Coughlin*, 852 F.2d 697, 700 (2d Cir 1988); *Snow v. Village of Chatham*, 84 F. Supp.2d 322, 328-29 (N.D.N.Y. 2000).   Defendants respectfully request a prior ruling from the Court that they may assert a defense of qualified immunity and the jury may be charged as to the application of such immunity.

**CONCLUSION**

**THE COURT SHOULD RULE IN FAVOR OF THE DEFENDANTS.**

Date: June 28, 2021

Letitia James
Attorney General, State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

By: ___/ S / Melissa A. Latino___
MELISSA LATINO, A.A.G., Of Counsel
Bar Roll No. 511162
Phone: (518) 776-2593
Email: melissa.latino@ag.ny.gov

TO:    Alex Turnello, Esq.
       *Attorneys for the Plaintiff*

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DONTIE S. MITCHELL,

                          Plaintiff,

        - v -                           Civ. No. 9:17-CV-0892
                                         (TJM/DJS)

ANDREW M. CUOMO, *Governor*, ANTHONY
ANNUCCI, *Commissioner of Department of
Corrections*, JOHN MILLER, *Correction
Lieutenant*, R. WOOD, *Corrections Sergeant*,
ROBERT J. MAHUTA, *Correction Officer*,
NAPPER, *Correction Officer,* and WELLS,
*Correction Officer*,

                         Defendants.

**APPEARANCES:**                **OF COUNSEL:**

DONTIE S. MITCHELL
Plaintiff, *Pro Se*
98-A-0071
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. LETITIA JAMES            DAVID A. ROSENBERG, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

On August 14, 2017, *pro se* Plaintiff Dontie Mitchell commenced this civil rights

action, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  Dkt. No. 1, Compl.  The Complaint was later amended.  Dkt. No. 23, Am. Compl.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's claims against John Miller ("Miller"), Robert J. Mahuta ("Mahuta"),[1] and Anthony J. Annucci ("Annucci") pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 57, Defs.' Mot. Dismiss.  In response, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, a Third Motion for the Appointment of Counsel, and a Fifth Motion for a Preliminary Injunction.  Dkt. No. 61.   Plaintiff also filed a Sixth Motion for a Preliminary Injunction, Dkt. No. 70, Pl.'s Sixth Mot. for PI, and a Seventh Motion for a Preliminary Injunction, Dkt. No. 74, Pl.'s Seventh Mot. for PI.  Defendants oppose the motions to amend and for injunctive relief.  Dkt. No. 69, Defs.' Opp. to Mot. to Am.; Dkt. No. 88, Defs.' Opp. to Mot. for PI.  Plaintiff has replied in further support of his motions.  Dkt. Nos. 89 & 91, Pl.'s Reps.

## I.  INTRODUCTION

### A. Procedural Background

Plaintiff initiated this action in August 2017 with the filing of a Complaint.  In the Complaint, Plaintiff asserted claims arising out of his confinement at Clinton Correctional Facility ("Clinton C.F."), Upstate Correctional Facility ("Upstate C.F."), Elmira Correctional

---

[1] Richard Mahuta was improperly s/h/a Robert J. Mahuta.  Dkt. No. 57-1 at p. 3.

*-2-*

Facility ("Elmira C.F."), Wende Correctional Facility ("Wende C.F."), and Collins Correctional Facility ("Collins C.F."). *See generally*, Compl.  With the Complaint, Plaintiff also filed a Motion for Appointment of Counsel, a Motion for Class Certification, a Motion for an Expert, and a Motion for a Preliminary Injunction.  Dkt. No. 5.  On September 27, 2017, the Honorable Thomas J. McAvoy, Senior United States District Judge, reviewed the Complaint and issued a Decision and Order (the "September 2017 Order").  Dkt. No. 13.  At the outset of the September 2017 Order, pursuant to Federal Rule of Civil Procedure 21 and 28 U.S.C. § 1404(a), Judge McAvoy severed and transferred the claims that arose while Plaintiff was incarcerated at Elmira C.F., Wende C.F., and Collins C.F., along with the defendants associated with those claims, to the Western District of New York.  *Id*. at p. 15.  In accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A, the Court reviewed the sufficiency of the claims that arose, if at all, while Plaintiff was incarcerated at Clinton C.F. and Upstate C.F.  *Id*.  On the basis of that review, the Court directed: (1) Wood, Napper, and Wells to respond to Eighth Amendment excessive force claims; (2) Mahuta to respond to First Amendment claims related to Plaintiff's mail; (3) Mahuta and Miller to respond to First Amendment claims related to freedom of association; and (4) Cuomo and Annucci to respond to claims for declaratory and injunctive relief related to the constitutionality of the following: (a) DOCCS' "blanket ban" on printed materials from social media, email, and text messages; (b) DOCCS' Directive #4422; and (c) Prison Rule 105.14.  *Id*. at pp. 29, 36-37.  The Court denied Plaintiff's motions for preliminary injunctive relief, class certification, an expert, and

for appointment of counsel.  *Id.* at pp. 29-34.

On October 16, 2017, Plaintiff filed a Motion for Reconsideration of the September 2017 Order.  Dkt. No. 16.  The Court denied Plaintiff's Motion.  Dkt. No. 17.

On November 20, 2017, Plaintiff filed a Motion for Reconsideration, a Second Motion for a Preliminary Injunction, and an Amended Complaint.  Dkt. Nos. 19, 22, & 23 ("Am. Compl.").  By Decision and Order dated December 6, 2017 (the "December 2017 Order"), the Court denied the Second Motion for a Preliminary Injunction and accepted the Amended Complaint as the operative pleading.  Dkt. No. 24.  The Amended Complaint included the claims against Wood, Napper, Wells, Mahuta, Miller, Annucci, and Cuomo that previously survived the Court's *sua sponte* review.  Therefore, Defendants were directed to respond to Plaintiff's claims in the Amended Complaint.  *See generally*, Dkt. No. 24.

On December 27, 2017, Plaintiff filed a Motion for Reconsideration, a Motion to Supplement the Amended Complaint, and a Third Motion for a Preliminary Injunction.  Dkt. Nos. 26, 27, & 28.  In a Decision and Order filed on January 19, 2018 (the "January 2018 Order"), the Court denied the Motions.  Dkt. No. 48.

On January 31, 2018, Plaintiff filed a Fourth Motion for a Preliminary Injunction and a Second Motion for Counsel.  Dkt. No. 49.  In a Decision and Order filed on February 28, 2018 (the "February 2018 Order"), the Court denied the motions.  Dkt. No. 56.

On March 19, 2018, Napper, Wells, and Wood filed an Answer to the Amended Complaint.  Dkt. No. 58.

## B. Summary of Amended Complaint

The following relevant facts as alleged by Plaintiff in the Amended Complaint are taken as true.[2]  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  In 2012, DOCCS issued Directive #4422 banning all printed materials, including photographs, of all social media websites including Facebook, Instagram, and Twitter deeming such material "third party mail."  Am. Compl. at ¶¶ 128-131.

From July 2014 until September 2014, Mahuta intercepted five pieces of Plaintiff's outgoing mail.  Am. Compl. at ¶ 114.  On September 11, 2014, Mahuta issued a misbehavior report charging Plaintiff with violating prison rules related to soliciting (Rule 103.20), unauthorized organizational activity (Rule 105.14), and correspondence violations (Rule 180.11).  *Id*. at ¶¶ 114-115.  The misbehavior report was issued "based upon an ongoing investigation" into Plaintiff's "attempt to lead and organize a[n] unauthorized organization entitled UFD - Ujamaa Fraternal Dynasty."  Dkt. No. 57-2, Defs.' Mem. of Law, Ex. A at p. 2.  In the misbehavior report, Mahuta noted that "[e]vidence for these rule violations were gathered from an approved facility mail watch on inmate Mitchell."  *Id*.  Plaintiff was promoting the UFD, a non-profit organization, which he founded, as an alternative to gangs.  Am. Compl. at ¶¶ 114, 121-127.  Through his correspondence, Plaintiff was attempting to recruit people, outside of the facility, to expand and promote his organization.  *Id*.  Plaintiff paid Inmate Scribes, a company that offers social media management services to prisoners,

---

[2] Only those facts relevant to the Motions presently before the Court are addressed in detail here.

to set up a Facebook account for UFD.  *Id*.  Plaintiff was also corresponding with a potential candidate for the position of "administrative assistant."  *Id*.  UFD is not a business.  *Id.* at ¶ 124.

On September 30, 2014, Miller conducted a disciplinary hearing and found Plaintiff guilty of soliciting (Rule 103.20) and violating correspondence rules (Rule 180.11).  Am. Compl. at ¶¶ 116, 120; Dkt. No. 57-3 at p. 2.  Miller found Plaintiff not guilty of violating Rule 105.14.  Dkt. No. 57-3, Defs.' Mem. of Law, Ex. B at p. 2.

## II.  DEFENDANTS' MOTION TO DISMISS

### A.  Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. at 322.  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008).  Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citation

omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679-80.

## B. Consideration of Submissions Outside the Pleadings

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, . . . matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc.*, 949 F.2d at 47). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Id*.

Defendants have attached several documents to the Motion to Dismiss including: (i) a misbehavior report (Defs.' Mem. of Law, Ex. A at pp. 3-4); (ii) correspondence from non-defendants related to a mail watch (*id.* at pp. 5-10); (iii) a disciplinary hearing disposition (Defs.' Mem. of Law, Ex. B at pp. 2-3); (iv) a Declaration from DOCCS' Director of Bureau of Internal Controls Paul Guenette (Dkt. No. 57-5); and (v) DOCCS' Directives #4422 and #4572 (Dkt. Nos. 57-6 & 57-7). Defendants argue that the misbehavior report and

disciplinary hearing disposition were referenced in the Amended Complaint and thus, should be considered in the context of the within motion.  Dkt. No. 57-1, Defs.' Mem. of Law at pp. 7-8, n.8, 9.

Pursuant to the Federal Rules of Civil Procedure, "[i]f, on a motion under Rule 12(b)(6) or 12(c) matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).

> [G]enerally, when contemplating a dismissal pursuant to . . . Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.

*Myers v. Camden Cent. School Dist.*, 2012 WL 2921574, *4 (N.D.N.Y. July 17, 2012); *see also Parisi v. United States*, 2009 WL 1851042, at *3 (N.D.N.Y. June 26, 2009) ("When considering a motion to dismiss a complaint for failure to state a claim, a court 'may consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken.'") (quoting *Hirsch v. Arthur Andersen and Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)).

In light of these authorities, the Court takes judicial notice of Directives 4422 and 4572 without converting the Motion to Dismiss to a Motion for Summary Judgment. *Whitley v. Bowden*, 2018 WL 2170313, at *2 n. 6 (S.D.N.Y. May 10, 2018); *Young v. Corcoran*, 164

F. Supp. 3d 419, 420-21 (W.D.N.Y. 2016).

The Second Circuit has elaborated on the limited circumstances in which extrinsic

evidence may be considered "integral":

> A document is integral to the complaint where the complaint relies
> heavily upon its terms and effect. Merely mentioning a document
> in the complaint will not satisfy this standard; indeed, even
> offering limited quotations from the document is not enough. In
> most instances where this exception is recognized, the
> incorporated material is a contract or other legal document
> containing obligations upon which the plaintiff's complaint stands
> or falls but which for some reason—usually because the
> document, read in its entirety, would undermine the legitimacy of
> the plaintiff's claim—was not attached to the complaint.

*Goel v. Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016) (internal quotation marks and

citations omitted).

With respect to the copies of the misbehavior report and hearing disposition, while

these submissions were not attached as exhibits to the Complaint or Amended Complaint,

Plaintiff referred to the misbehavior report and hearing disposition in the Amended

Complaint,  Am. Compl. at ¶¶ 114, 116, & 120, and they are critical to his substantive

allegations.  These submissions are therefore appropriately considered by the Court without

converting Defendants' Rule 12 Motion to a Rule 56 Motion for Summary Judgment.  *See,*

*e.g., Islam v. Fischer*, No. 07 Civ. 3225, 2008 WL 650380, at *2 (S.D.N.Y. Mar. 6, 2008).

A different conclusion is reached however, with respect to the correspondence

regarding a mail watch and Guentte's declaration.  These documents were not referenced in

the Amended Complaint and Defendants have not presented any argument suggesting that

the documents are "integral" to the Amended Complaint. Accordingly, the Court will exclude these documents and not consider the submissions on this Motion. *See* FED. R. CIV. P. 12(d).

With these standards in mind, I consider the substance of Defendants' Motion.

## C. Analysis of Defendants' Motion to Dismiss

Miller and Mahuta move to dismiss Plaintiff's Amended Complaint against them based upon qualified immunity. Defs.' Mem. of Law at pp. 4-9. Annucci moves for dismissal of the Amended Complaint for failure to state a claim upon which relief may be granted. *Id* at pp. 11-18.

### 1. *Qualified Immunity*

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity analysis involves a three step inquiry:

> First, we must determine whether plaintiff has alleged a violation of a constitutional right. Then, we must consider if the violated right was clearly established at the time of the conduct. Finally, if plaintiff had a clearly established, constitutionally protected right that was violated . . . , he or she must demonstrate that defendants' actions were not objectively reasonable.

*Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003) (citations omitted).

*-11-*

Generally, "the defense of qualified immunity cannot support the grant of a . . . 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983); *see also McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (quoting *Green v. Maraio*, 722 F.2d at 1018). An exception to this general rule exists where the complaint itself sets up, on its face, the qualified immunity defense; on such an occasion, dismissal for failure to state a claim would be appropriate. *Roniger v. McCall*, 22 F. Supp. 2d 156, 162 (S.D.N.Y. 1998) (citing *Green v. Maraio*, 722 F.2d at 1019); *see also McKenna v. Wright*, 386 F.3d at 435. Ultimately, qualified immunity is an affirmative defense on which Defendants bear the burden of proof. *Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012).

In the pleadings, Plaintiff alleges that Defendants instituted an invalid mail watch "secretly seizing and withholding [his] incoming and outgoing mail without notice[.]" Am. Compl. at ¶ 188. Plaintiff became aware of the existence of the mail watch because his family and friends sent "letters and photos" that would "disappear." *Id*. at ¶ 134. When Plaintiff complained, he was repeatedly told that his correspondence was "processed in accordance with Directive #4422." *Id*. Plaintiff contends that Directive #4422 is unconstitutional on its face and as applied to him. *Id*. at ¶¶ 128-131, 185, & 186. Plaintiff also claims that Miller and Mahuta, by taking disciplinary action against him, violated his First Amendment rights to the free flow of incoming and outgoing mail and freedom of association. Am. Compl. at ¶¶ 187-188.

*-12-*

"A prison inmate . . . retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (citing *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995)). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id*. (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The application of a lower reasonableness standard is consistent with the notion that "evaluation of penological objectives is committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.'" *O'Lone v. Estate of Shabazz*, 482 U.S. at 349 (quoting *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)).

The court must consider the four factors set forth in *Turner* in order to evaluate whether the regulation is "reasonably related to legitimate penological interests":

> (1) there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it[;]

> (2) whether there are alternative means of exercising the right that remain open to prison inmates[;]

> (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[; and]

> (4) the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*-13-*

*Turner v. Safely*, 482 U.S. at 89-91 (citation omitted).

In the September 2017 Order, the Court found that Plaintiff sufficiently alleged claims that DOCCS' Directives and Prison Rules are unconstitutional and allowed First Amendment claims against Miller and Mahuta to proceed. Dkt. No. 13 at pp. 19-20.[3] Because this right was clearly established, Defendants' entitlement to qualified immunity turns on whether it was objectively reasonable for them to believe that their actions did not violate Plaintiff's First Amendment rights.

"When officials follow an established prison policy . . . their entitlement to qualified immunity depends on whether a reasonable officer might have believed that the challenged order was lawful in light of legitimate penological interests supporting the directive." *Barnes v. Furman*, 629 Fed. Appx. 52, 57 (2d Cir. 2015) (quotation marks omitted). Defendants argue that they are entitled to qualified immunity because they acted in "good faith" and in accordance with DOCCS' Directives #4422 and 4423 and Prison Rules 105.14, 103.20, and 180.11, when they subjected Plaintiff to disciplinary proceedings. *See, e.g.*, Defs.' Mem. of Law at pp. 5-8. This "generalized and conclusory" argument is "insufficient to demonstrate that it was reasonable for defendants to believe that their conduct did not violate [the plaintiff's] constitutional rights and that no rational jury could conclude otherwise." *Gonzalez v. Morris*, 2018 WL 1353101, at *7 (N.D.N.Y. Mar. 15, 2018) (declining to grant summary judgment on qualified immunity based upon the argument that defendants "followed

---

[3] These claims were repeated and realleged in the Amended Complaint and thus, survived review as well. Dkt. No. 24.

DOCCS['s] constitutional policies and acted reasonably at all times."). Courts in this District have in some cases awarded summary judgment on qualified immunity grounds when officials follow established prison policies. In those cases, however, the courts were presented with a record of competent, admissible evidence establishing that the policy furthered a "legitimate penological interest" and that the defendants had an "objective belief" regarding that interest. *See*, *e.g.*, *Michel v. Manna*, 2017 WL 1381859, at *5 (N.D.N.Y. Jan. 17, 2017) (awarding summary judgment on record that contained declarations from the defendants with admissible facts related to the legitimate penological interest furthered by the Grooming Policy, the defendants' observations of the plaintiff's violation of the Grooming Policy, and the defendants' lack of authority to ignore the plain language of the Grooming Policy).

Here, given that this issue arises in the context of a Motion to Dismiss the resolution of the objective reasonableness of Defendants' actions "depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee*, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004). Even a cursory review of the submissions shows that Defendants' Motion should be not be granted at this stage of the proceedings. Defendants' arguments in support of qualified immunity are based in part on the premise that the Court accept as true facts that are directly contradicted by allegations in the Complaint.

Accordingly, the Court recommends that Defendants' Motion be denied as to

Plaintiff's claims against Miller and Mahuta.[4]

### 2. *Claims Against Annucci*

Defendants move for dismissal of Plaintiff's claims for declaratory and injunctive relief based upon unconstitutional rules and policies, arguing that Plaintiff's allegations are "bald assertions" and conclusory. Defs.' Mem. of Law at pp. 11-18.

### a. *"Blanket Ban" on Social Media Material*

Defendants argue that Plaintiff has failed to adequately plead that DOCCS promulgated a policy with a "blanket ban" on materials printed from social media, emails, and text messages. Defs.' Mem. of Law at pp. 13-14. While Plaintiff alleges that Directive 4422 imposes such a blanket ban, *see* Am. Compl. at ¶ 129, a review of the Directive fails to bear out his assertions. As Defendants' Motion makes clear, the Directive expressly allows inmates to receive printed material with correspondence. Defs.' Mem. of Law at p. 13 (citing Directive 4422). The Directive itself does not appear to contain the ban on social media materials alleged by Plaintiff and nothing in his opposition papers refutes Defendants' contention to the contrary or points to anything in the Directive specifically barring complete access to such materials. *See* Dkt. Nos. 61-1 & 61-2. Given the information now available, Plaintiff's conclusory allegation regarding this policy is insufficient to withstand the Motion to Dismiss. *Salgado v. NYS Dep't of Corr. & Cmty. Supervision,* 2016 WL 6311296, at *10

---

[4] In support of the Motion, Defendants cite to a decision by the Honorable Michael A. Telesca, United States District Judge for the Western District of New York, in an action filed by Plaintiff in 2006 entitled *Mitchell v. New York State Dep't of Corr. Servs., et al. ("Mitchell II")*, 2012 WL 6204205 (W.D.N.Y. Dec. 12, 2012). *See* Dkt. No. 57-1 at 12-13. Judge Telesca's decision was issued in response to the defendants' motion for summary judgment and thus was based on a more developed record than is present here.

(W.D.N.Y. Sept. 15, 2016), *report and recommendation adopted*, 2016 WL 6298517 (W.D.N.Y. Oct. 27, 2016); *Odom v. Poirier*, 2004 WL 2884409, at *13 (S.D.N.Y. Dec. 10, 2004).

Accordingly, I recommend that the portion of Defendants' motion seeking dismissal of the claim asserting the existence of a blanket policy barring access to social media material be granted.

### b. Imposition of an Arbitrary Mail Watch

Defendant Annucci next seeks dismissal of Plaintiff's claims alleging that his First Amendment rights were violated by the arbitrary imposition of a mail watch. Defs.' Mem. of Law at pp. 14-16. Generally stated, Defendant argues that because Plaintiff's claims "run counter to written DOCCS policy" Plaintiff's claim must be dismissed. *Id.* at p. 14. Defendant's very arguments, however, require denial of this aspect of the Motion. While Defendant contends that "the process for instituting a mail watch under DOCCS Directive 4422 is anything but 'arbitrary'", *id.* at p. 15, Plaintiff specifically alleges that "DOCCS has created a policy and custom of instituting arbitrary mail watches in violation of its own written correspondence policy." Am. Compl. at ¶ 133. As a result, Plaintiff is plainly alleging that DOCCS employees are not following the policy set forth in Directive 4422, on which Defendant relies in support of his Motion. That allegation is sufficient to withstand the Motion, which is premised solely on the existence of this policy because at this stage in the litigation, the Court is bound by the factual allegations in the Amended Complaint, which

must be taken as true.  *See Hall v. Curran*, 818 F.2d 1040, 1046 (2d Cir. 1987) (finding that the issue of whether Directive 4422 was improperly applied to the plaintiff was "a material fact remaining in dispute").  Accordingly, I recommend that this portion of Defendant's Motion be denied.

### c. Rule 105.14

To invoke the jurisdiction of the federal courts and establish standing a plaintiff must show the following: (1) that he or she has personally suffered some actual or threatened injury; (2) that the injury is fairly traceable to the defendant's allegedly unlawful conduct; and (3) that the injury is likely to be redressed by the requested relief.  *Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc*., 454 U.S. 464, 472 (1982); *Fulani v. Bentsen*, 35 F.3d 49, 51-52 (2d Cir. 1994).  To establish standing in federal court, a litigant must allege an actual case or controversy. *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).  Moreover, "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."  *Peck v. Baldwinsville Cent. Sch. Dist*., 351 Fed. Appx. 477, 479 (2d Cir. 2009) (summary order) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d at 344); *see also Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969).

Here, Plaintiff was found not guilty of violating Rule 105.14.  *See* Defs.' Mem. of Law, Ex. B at p. 2.  Thus, Plaintiff fails to allege he has suffered an actual injury due to the

application of Rule 105.14 and thus, he lacks standing to challenge it.  *See Mitchell v. New York State Dep't of Corr. Servs.*, 2012 WL 6204205, at *9 (W.D.N.Y. Dec. 12, 2012). Accordingly, it is recommended that Defendants' Motion to Dismiss Plaintiff's claim related to the constitutionality of Rule 105.14 be granted.  *Applegate v. Annucci*, 2017 WL 3049555, at *8 (S.D.N.Y. July 18, 2017), *appeal dismissed*, 2018 WL 816964 (2d Cir. Jan. 9, 2018).

### III.  PLAINTIFF'S MOTION TO AMEND

Plaintiff's Proposed Second Amended Complaint asserts the same general substantive allegations presently pled in the Amended Complaint but includes new claims related to his confinement at Great Meadow C.F.  Dkt. No. 61-3, Prop. Sec. Am. Compl.[5]  Defendants argue that  Plaintiff's motion is procedurally deficient and futile.  Dkt. No. 69.

### A.  Legal Standard

Fed. R. Civ. P. 15(a) states, in pertinent part, that leave to amend a pleading should be "freely given when justice so requires."  *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). Indeed, leave to amend should be denied only in the face of undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271-72 (2d Cir. 1996)).  "An amendment to a pleading is futile if the

---

[5] Plaintiff mistakenly contends that the Second Amended Complaint is the operative pleading as a matter of right.  Dkt. No. 61-2 at p. 3.  Under Fed. R. Civ. P. 15(a) a party may amend the Complaint as of right once, which Plaintiff has already done.  Dkt. No. 23.  Any further amendment requires leave of this Court.

proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).  District courts are vested with broad discretion to grant a party leave to amend the pleadings.  *See Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Federal Rule of Civil Procedure 15(d) states, in part, that "[o]n motion and reasonable notice, the court may, on just terms, permit the party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  *See Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 88 (2d Cir. 2001) ("A motion to plead events that have transpired since the date of the party's most recent pleading 'is technically categorized under [Fed. R. Civ. P.] 15(d) ['Supplemental Pleadings'] as opposed to Rule 15(a) ['Amendments'].'") (emphasis and alterations in original) (quoting *Flaherty v. Lang*, 199 F.3d 607, 613 n.3 (2d Cir. 1999)).  The standard to determine whether to grant leave to file a supplemental pleading is similar to that exercised on a motion for leave to amend.

For the reasons set forth below, the Motion for Leave to Amend is **denied**.

### B.  Analysis of Plaintiff's Motion to Amend

The Proposed Second Amended Complaint once again asserts claims related to Plaintiff's confinement at Elmira C.F., Wende C.F., and Collins C.F.  *See generally* Prop.

Sec. Am. Compl.  Judge McAvoy previously severed and transferred those claims to the Western District.  *See* Dkt. No. 13.  Thus, amendment as to these claims is denied as futile.

Additionally, the Proposed Second Amended Complaint includes the following identical allegations previously asserted in the Complaint and Amended Complaint: (1) claims against previously dismissed defendants Hessal, Bishop, Squires, Jane Doe, Racette, Uhler, Barse, Bellnier, Claudio, Maher, and C. Miller; (2) § 1983 claims for monetary damages against defendants in their official capacity; (3) Eighth Amendment claims against Annucci and Cuomo based upon Plaintiff's right to rehabilitation; (4) Fourteenth Amendment due process claims against Miller; and (5) supervisory claims against Annucci.  *Compare* Prop. Sec. Am. Compl. *with* Am. Compl.  Judge McAvoy previously found the aforementioned claims insufficiently pled to withstand a motion under Federal Rule of Civil Procedure 12(b)(6).  *See* Dkt. Nos. 13 & 24.  Accordingly, amendment as to these claims and defendants would be futile.

The Proposed Second Amended Complaint contains new allegations related to Plaintiff's current confinement at Great Meadow Correctional Facility ("Great Meadow C.F.") and his First Amendment right to: (1) wear "cornrows;" (2) promote the UFD; and (3) receive daily mail without excessive delay.  Dkt. No. 61-3.  While Plaintiff has moved to amend pursuant to Federal Rule of Civil Procedure 15(a), these claims are more appropriately categorized as supplemental claims under Rule 15(d).  *See Phillips v. Lavalley*, 2013 WL 1681422, at *4 (N.D.N.Y. Mar. 1, 2013), *report and recommendation adopted*, 2013 WL

*-21-*

1681419 (N.D.N.Y. Apr. 17, 2013) (interpreting submission as a motion to supplement and denying request to allege new events at a new facility perpetrated by individuals not named in the original Complaint).

As discussed in the context of the procedural history of this case, this is not Plaintiff's first attempt to assert First Amendment claims related to his confinement at Great Meadow C.F. On October 6, 2017, Plaintiff filed a Notice indicating that he was transferred to Great Meadow C.F. Dkt. No. 15. On December 27, 2017, Plaintiff filed a Motion to Supplement the Amended Complaint to add unnamed officials at Great Meadow C.F. as new defendants and to assert allegations of wrongdoing at Great Meadow C.F. concerning his First Amendment right to: (1) wear "cornrows;" (2) promote the UFD and possess UFD materials; and (3) receive daily mail without excessive delay. Dkt. No. 28-1. In its January 2018 Order, the Court denied the Motion noting that Plaintiff "is attempting to add new defendants and claims that are completely unrelated to the central issues in the Amended Complaint." Dkt. No. 48 at p. 9. Specifically, the Court held:

> Plaintiff's claims related to alleged violations of his First Amendment rights at Great Meadow C.F. in 2017 are wholly unrelated to the allegations set forth in his Amended Complaint that he was assaulted at Clinton C.F. in 2014, and that his First Amendment rights were violated at Clinton C.F. in 2014. *Compare* Dkt. No. 28-1 with Am. Compl. Thus, the new allegations against the new defendants do not pertain to the operative pleading. Indeed, the proposed new claims involve events which occurred, if at all, years after the alleged wrongdoing set forth in the Amended Complaint, and were allegedly perpetrated by individuals not named in the Amended Complaint.

*-22-*

*Id.*

The allegations in the Proposed Second Amended Complaint do not cure the deficiencies previously identified. Plaintiff does not seek to join any new defendants. Moreover, the new allegations relate to issues involving Great Meadow C.F. that do not involve any named defendants from that facility. While the proposed pleading includes claims against "prison administrators," the "facility administration," and "staff members" at Great Meadow C.F., *see* Dkt. Nos. 89 & 91, Plaintiff did not identify any individual personally involved with the alleged constitutional violations at Great Meadow C.F. or name John/Jane Doe defendants.

For the reasons set forth herein and in the January 2018 Order, Plaintiff's Motion for Leave to Amend is denied. *See Mitchell v. New York State Dep't of Corr. Servs.*, 2011 WL 5326054, at *3 (W.D.N.Y. Nov. 3, 2011) (denying Plaintiff's motion to supplement, holding that "the proposed new claims arising at Auburn in March 2011 are not sufficiently connected to the existing claims in this action to warrant their inclusion in a supplemental pleading in this action.").

## IV. PLAINTIFF'S FIFTH, SIXTH, AND SEVENTH MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiff has previously filed four motions seeking some form of injunctive relief, each of which has been denied. *See* Dkt. Nos. 13, 24, 48, & 56. Presently pending are three additional motions. In his Fifth Motion, Plaintiff seeks an order directing Defendants to

permit Plaintiff to form a prison chapter of UFD at Great Meadow C.F. and enjoining defendants from disciplining Plaintiff for being a member of UFD and possessing UFD literature at Great Meadow C.F.  Dkt. Nos. 61, 62, 66, 76, 78, 81, 82, 83, 86, 87, & 92 (submissions in support).  In the Sixth Motion, Plaintiff seeks an order preventing "Defendants and their employees" from retaliating against him for submitting grievances at Great Meadow. C.F.  Dkt. Nos. 70 & 73 (submission in support).  In the Seventh Motion, Plaintiff seeks an order directing Defendants to take "corrective action" to "ameliorate the excessive delay" in processing mail at Great Meadow C.F. and for an order allowing Plaintiff to wear his hair in "cornrows."  Dkt. Nos. 74 & 90 (submission in support).

The Complaint in this case contains no claims regarding Great Meadow Correctional Facility and no staff at that facility remain as Defendants in this case.  Each of these Motions, however,  seeks relief specific to Great Meadow C.F.  Because the injunctive relief sought does not relate to the claims actually at issue in this case, the Motions should be denied. *Palmer v. Seidman*, 2016 WL 270864, at *2 (N.D.N.Y. Jan. 22, 2016); *Muhammad v. Wright*, 2010 WL 2472759, at *2 (W.D.N.Y. May 25, 2010), *report and recommendation adopted*, 2010 WL 2472758 (W.D.N.Y. June 15, 2010).  Moreover, courts generally cannot order injunctive relief as to non-parties, *see, e.g., Lewis v. Johnston*, 2010 WL 1268024, at *2 (N.D.N.Y. Apr. 1, 2010) (citing cases), which Plaintiff's Great Meadow-specific requests would require here since no Defendant is an employee of that facility.

Accordingly, it is recommended that the pending Motions for Injunctive Relief be

*-24-*

denied.

## V.  PLAINTIFF'S THIRD MOTION FOR COUNSEL

Plaintiff moves, for the third time, for the appointment of counsel.  Dkt. No. 61-2 at

p. 5.  In the September 2017 Order, the Court denied Plaintiff's previous motion, holding:

> At this preliminary stage, the Court is unable to determine
> whether Plaintiff meets the threshold requirement that at least
> some aspects of his claim are "likely to be of substance."  *Hodge*,
> 802 F.2d at 61.  Plaintiff has not submitted any evidence
> supporting his claims.  *See Terminate Control Corp*, 28 F.3d at
> 1341; *Cooper v. Sargenti Co., Inc*., 877 F.2d 170, 172, 174 (2d
> Cir. 1989).  Even if the Court were to assume, for purposes of this
> motion, that Plaintiff's position seems likely to be of substance,
> the relevant factors weigh decidedly against granting plaintiff's
> motion at this time.  For example: (1) the case does not present
> novel or complex issues; and (2) it appears to the Court as though,
> to date, Plaintiff has been able to effectively litigate this action.
> The Court is unaware of any special reasons why appointment of
> counsel at this time would be more likely to lead to a just
> determination of this litigation.  *See Terminate Control Corp*., 28
> F.3d at 1341; *Hodge,* 802 F.2d at 61.  Thus, Plaintiff's motion for
> the appointment of counsel is denied without prejudice.

Dkt. No. 13 at p. 32.

In the January 2018 Order, the Court denied Plaintiff's renewed motion holding:

> The Court has reviewed Plaintiff's second motion, with
> consideration of the factors outlined in the September Order, and
> finds no change of circumstances that would warrant appointment
> of counsel *pro bono* for Plaintiff at this time.  Plaintiff's second
> request for counsel is not accompanied by documentation that
> substantiates his efforts to obtain counsel from the public and
> private sector.  *See Terminate Control Corp. v. Horowitz*, 28 F.3d
> 1335, 1341 (2d Cir. 1994); *Cooper v. Sargenti Co., Inc*., 877 F.2d
> 170, 172, 174 (2d Cir. 1989).  Even if the Court were to assume
> that Plaintiff's claims are likely to be of substance, the relevant

Case 9:17-cv-00892-TJM-DJS   Document 95   Filed 06/03/19   Page 26 of 38

> factors, as discussed in the September Order, would, and do, weigh against the granting of Plaintiff's motion. At this juncture, it appears that the case does not present issues that are novel or more complex than those raised in most prisoner civil rights actions. *See Marino v. Koenigsmann*, No. 9:12-CV-1170 (GTS/RFT), 2014 WL 1239514, at *1 (N.D.N.Y. Mar. 25, 2014). For all of these reasons, Plaintiff's second request for counsel is denied without prejudice.

Dkt. No. 56 at p. 6.

In his Third Motion for Counsel, Plaintiff argues that appointment of counsel is necessary to assist Plaintiff with "marshaling the evidence" and gathering witness declarations. Dkt. No. 61-2 at p. 6. With consideration of the factors outlined in the prior Orders, the Court finds no change of circumstances that would warrant appointment of counsel *pro bono* for Plaintiff at this time.

For the reasons set forth in the September 2017 Order and January 2018 Order, Plaintiff's Motion for Counsel is denied without prejudice.

## VI. SERVICE ON CUOMO

Lastly, the Court must address a housekeeping issue regarding service on Defendant Cuomo. Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint on each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 90 days of the filing of the complaint. FED. R. CIV. P. 4(m).[6] Failure to properly serve any defendant in accordance

---

[6] Pursuant to amendments of the Federal Rules of Civil Procedure, effective December 1, 2015, the time frame within which to serve a defendant is no longer 120 days from the filing of the complaint. Furthermore, under the Local
(continued...)

with the Federal Rules will result in the court, upon motion or on its own initiative after notice to the plaintiff, dismissing the case without prejudice as to that defendant. *Id.*

Where, as here, a plaintiff has been authorized by the Court to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, the United States Marshals Service is appointed to effect service of process of the summons and complaint on his behalf. *See* FED. R. CIV. P. 4(c)(2) (Marshals Service must be appointed to serve process when plaintiff is authorized to proceed in forma pauperis); 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [*in forma pauperis*] cases."). Thus, once a plaintiff has identified the defendants, the Marshals Service must undertake to locate them and accomplish the service. The Marshals Service is obligated to effect service of process in accordance with the Federal Rules of Civil Procedure and, if necessary, the Marshals Service must make multiple attempts at service. *See Armstrong v. Sears*, 33 F.3d 182, 188 (2d Cir. 1994) (where defendant refused to acknowledge Marshals Service's request for waiver under Rule 4(d), the Marshals Service must effect personal service under Rule 4(e)); *accord Hurlburt v. Zaunbrecher*, 169 F.R.D. 258, 259 (N.D.N.Y. 1996); *see also* N.D.N.Y. L.R. 5.1(h) (Marshals Service is obligated to make personal service at plaintiff's request if no acknowledgment is filed with the court).

On December 6, 2016, the Clerk of the Court issued a summons to Governor Cuomo.

---

[6](...continued)
Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L.R. 4.1(b)

*-27-*

Dkt. No. 25.  On January 19, 2018, the summons for Governor Cuomo was returned "unexecuted."  Dkt. No. 47-6.  To date, Governor Cuomo has not been served.  "[A]n incarcerated pro se litigant proceeding *in forma pauperis* [is] entitled to rely on service by the U.S. Marshals."  *Romandette v. Weetabix Co., Inc*., 807 F.2d 309, 311 (2d Cir. 1986) (citing former FED. R. CIV. P. 4(c)(2)(B)(i)).  It is the Court's view that good cause under Rule 4(m) is established here where no inquiries had been made on Plaintiff's behalf regarding Governor Cuomo.  *Id.*

Under *Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997), a *pro se* litigant is entitled to assistance from the district court in identifying a defendant for service of process. Although the Amended Complaint provides the name of the defendant, the Marshals Service has been unsuccessful in its attempts to effectuate service.  Accordingly, the Court instructs the New York Attorney General's Office to advise the Court whether it is representing Cuomo and, if so, whether Governor Cuomo waives service of summons.  If the Attorney General's Office is not representing Governor Cuomo or if he declines to waive service, the Court instructs the Attorney General's Office to provide an address where Defendant Cuomo can currently be served.[7]

## VII.  CONCLUSION

For the reasons stated herein, it is hereby

---

[7] Plaintiff should note that although the Court finds that good cause exists, he must nevertheless maintain active participation in and prosecution of this action. Thus, while it is the Marshal's obligation to effect service on Plaintiff's behalf, it is equally Plaintiff's obligation to ensure that this matter is fully prosecuted.

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 57) be **GRANTED in part and DENIED in part** as set forth above; and it is further

**RECOMMENDED**, that Plaintiff's Fifth, Sixth, and Seventh Motions for Preliminary Injunctions (Dkt. Nos. 61, 70, and 74) be **DENIED**; and it is further

**ORDERED**, that Plaintiff's Motion to Amend (Dkt. No. 61) is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Third Motion for Counsel (Dkt. No. 61) is **DENIED**; and it is further

**ORDERED,** that the New York State Attorney General's Office shall, within thirty (30) days of the filing date of this Order, advise the Court of whether it is representing Cuomo and, if so, whether Cuomo consents to waiver of service. If the Attorney General's Office is not representing Cuomo or if Cuomo does not consent to waiver of service, the Attorney General's Office shall provide the Court with the information specified above, within thirty (30) days of the filing date of this Order. The information should be sent to the Clerk of the Court for the Northern District of New York along with a copy of this Decision and Order, as well as to Plaintiff at his address of record. Once this information is provided, the Clerk shall return this file to the Court for further review; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which

to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: January 3, 2019
          Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DONTIE S. MITCHELL,**

                              **Plaintiff,**

        **- v -**                                                    **9:17-CV-0892**
                                                                     **(TJM/DJS)**

**ANDREW M. CUOMO, Governor, ANTHONY**
**ANNUCCI, Commissioner of Department of**
**Corrections, JOHN MILLER, Correction**
**Lieutenant, R. WOOD, Corrections Sergeant,**
**ROBERT J. MAHUTA, Correction Officer,**
**NAPPER, Correction Officer, and WELLS,**
**Correction Officer,**

                              **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.    INTRODUCTION**

        This _pro se_ action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon.

Daniel J. Stewart, United States Magistrate Judge, for a report and recommendation

pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). In his Report-Recommendation and

Order (Dkt. No. 95) ("Rep. Rec. & Ord."), Magistrate Judge Stewart recommends that

Defendants' Motion to Dismiss (Dkt. No. 57) be granted in part and denied in part, and that

Plaintiff's Fifth, Sixth, and Seventh Motions for Preliminary Injunctions (Dkt. Nos. 61, 70 ,

and 74) be denied.  In addition, Magistrate Judge Stewart ordered, _inter alia_, that Plaintiff's

1

Motion to Amend (Dkt. No. 61), and Plaintiff's Third Motion for Counsel (Dkt. No. 61 ), be

denied. Plaintiff objects to Magistrate Judge Stewart's orders denying amendment and the

appointment of counsel, and to various recommendations as addressed below.

## II.    STANDARDS OF REVIEW

### a. Objection to Magistrate Judge Non-Dispositive Order

A district court judge reviewing an objection to a magistrate judge's non-dispositive

pretrial order, as is in issue with Magistrate Judge Stewart's orders denying amendment and

the appointment of counsel,[1] may not modify or set aside any part of that order unless it is

clearly erroneous or contrary to law. *See* FED. R. CIV. P. 72(a)*;* 28 U.S.C. § 636(b)(1)(A);

*Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) ("[T]he district court to whom the

case is assigned shall consider ... objections and shall modify or set aside any portion of the

magistrate judge's order found to be clearly erroneous or contrary to law." )(quoting Fed. R.

Civ. P. 72(a)).  An order is clearly erroneous if, based on all the evidence, a reviewing court

"is left with the definite and firm conviction that a mistake has been committed." *In re*

*Gordon*, 780 F.3d 156, 158 (2d Cir. 2015) (internal quotation marks omitted) (quoting *United*

*States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)).  "An order is contrary to law when it

fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Lifeguard*

---

[1]*See* 28 U.S.C. § 636(b)(1)(A)(enumerating dispositive matters subject to *de novo* review and not including motions to amend)*; Franke v. ARUP Laboratories, Inc.*, 390 Fed. App'x 822, 828 (10th Cir. 2010) ("Mr. Franke's motion to amend was a nondispositive pretrial matter that the magistrate judge was authorized to decide pursuant to 28 U.S.C. § 636(b)(1)(A)."); *Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006) ("The district judge correctly held that the magistrate judge's denial of Hall's motion to amend his complaint [to add a defendant] was nondispositive, subject only to review for clear error."); *Pagano v. Frank*, 983 F.2d 343, 346 (1st Cir.1993) ("Under ordinary circumstances a motion to amend a complaint is 'a pretrial matter not dispositive of a claim or defense of a party' within the purview of Fed. R .Civ. P. 72(a)."); *Palacio v. City of New York*, 489 F. Supp. 2d 335, 344 (S.D.N.Y. 2007)(reviewing magistrate judge's denial of the appointment of *pro bono* counsel under the clearly erroneous standard used for non-dispositive pre-trial orders)

2

*Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15-CV-8459, 2017 WL 3142072, at *1 (S.D.N.Y. July 24, 2017)(citation and internal quotation marks omitted).

### b. Objection to Magistrate Judge Recommendation

When objections to a magistrate judge's recommendation on a dispositive matter are made, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings.). When no objection is made to a report and recommendation, or to a portion thereof, the Court subjects the report and recommendation, or the portion to which no objection is made, to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. In performing such a review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*

After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b).

### III.    DISCUSSION

### a. Motion to Amend

Magistrate Judge Stewart's decision to deny Plaintiff's motion to file a Second Amended Complaint, *see* Rep-Rec. & Ord., at 19-23, is not clearly erroneous or contrary to law. Proposed claims related to Plaintiff's confinement at Elmira C.F., Wende C.F., and

Collins C.F. were already pled in this matter, severed from the action, and transferred to the Western District of New York. *See* Dkt. No. 13. It would be futile to amend to add these claims again. "[I]t is well established that leave to amend a [pleading] need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

It would also be futile to reassert claims identical to those in the Complaint and Amended Complaint that the Court previously found to have been insufficiently pled to withstand a motion under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. Nos. 13 & 24. "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Ramos v. Dep't of Correction*, No. 3:15-CV-1444 (VAB), 2017 WL 855897, at *3 (D. Conn. Mar. 3, 2017)(citing *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).

Regarding Plaintiff's proposed claims related to his confinement at Great Meadow C.F. asserting his First Amendment right to (1) wear "cornrows;" (2) promote the Ujamaa Fraternal Dynasty ("UFD"), a non-profit organization which he founded as an alternative to gangs; and (3) receive daily mail without excessive delay, the Court previously denied Plaintiff's motion to amend to add these claims because Plaintiff was "attempting to add new defendants and claims that are completely unrelated to the central issues in the Amended Complaint." 01/29/18 Dec. & Ord., Dkt. No. 48, at 9. As the Court stated in its January 29, 2018 Decision and Order,

> Plaintiff's claims related to alleged violations of his First Amendment rights at Great Meadow C.F. in 2017 are wholly unrelated to the allegations set forth in his Amended Complaint that he was assaulted at Clinton C.F. in 2014, and that his First Amendment rights were violated at Clinton C.F. in 2014. *Compare* Dkt. No. 28-1 *with* Am. Compl. Thus, the new allegations against the new defendants do not pertain to the operative pleading. Indeed, the proposed

4

new claims involve events which occurred, if at all, years after the alleged
wrongdoing set forth in the Amended Complaint, and were allegedly
perpetrated by individuals not named in the Amended Complaint.

*Id.*  Magistrate Judge Stewart correctly concluded at  "[t]he allegations in the Proposed

Second Amended Complaint do not cure the deficiencies previously identified."  Rep-Rec. &

Ord. at 23.[2]

Magistrate Judge Stewart's decision to rely on the Court's previous Decision, and on

Fed. R. Civ. P. 15(d),[3] to deny Plaintiff's motion to amend to add First Amendment claims

allegedly occurring at Great Meadow C.F. is not clearly erroneous or contrary to law.  The

proposed First Amendment claims are neither related to nor pertain to the allegations in the

operative pleading, thus providing a basis to deny amendment under Rule 15(d).  *See*

*Girard v. Hickey*, No. 9:15-CV-0187, 2016 WL 915253, at *5 (N.D.N.Y. Mar. 4,

2016)("'Courts regularly deny motions to amend where the moving party seeks to add

claims involving collateral matters, based on different factual allegations and distinct legal

theories, from the claims already at issue in a case.'")(quoting *Amusement Indus., Inc. v.*

*Stern*, No. 07 Civ. 11586, 2014 WL 4460393, at *13 (S.D.N.Y. Sept. 11, 2014)(collecting

cases)); *McKenzie v. Obertean*, No. 17-CV-441W, 2019 WL 441593, at *1 (W.D.N.Y. Feb.

5, 2019)("'A supplemental pleading is designed to cover matters that occur subsequent to

---

[2]For the reasons discussed in the text, Plaintiff's attempt to cure a deficiency in his proposed Second
Amended Complaint through his objections, *see* Obj. at 2 ("Although I do not specifically state in my
Proposed Second Amended Complaint that Superintendent Miller was personally involved in the denial of my
request to form a prison chapter of UFD, I declare under penalty of perjury that he was."), is insufficient to
reverse the decision to deny the motion to amend.

[3]Rule 15(d) provides:  "On motion and reasonable notice, the court may, on just terms, permit a party
to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the
date of the pleading to be supplemented. The court may permit supplementation even though the original
pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the
supplemental pleading within a specified time."  Fed. R. Civ. P. 15(d).

the filing of the complaint, but pertain to the original pleadings. Thus, under Rule 15(d), a party may supplement the original pleading to include subsequent occurrences which are related to the claim presented in the original complaint, absent prejudice to the nonmoving party.'")(quoting *Albrecht v. Long Island R.R.*, 134 F.R.D. 40, 41 (E.D.N.Y. 1991)(citations omitted)); *Stepney v. Rochester Hous. Auth.*, No. 16-CV-6173-FPG, 2018 WL 3110225, at *6 (W.D.N.Y. June 25, 2018)("[C]ourts may ... decline to permit supplemental pleadings if the new claims are not adequately 'related to the originally stated claims.'")(quoting *Webster v. Himmelbach*, 271 F. Supp. 3d 458, 472 (W.D.N.Y. 2017), and citing Wright *et al.*, 6 Fed. Prac. & Proc. Civ. §§ 1510 and 1506 (3d ed.)(explaining that courts have denied supplemental pleadings when "the claim or defense asserted in the supplemental pleading bore little or no relationship to the original pleading" and that "refusal to allow the supplemental pleading is entirely justified when" the new "matters alleged have no relation to the" original claim)); *Beckett v. Inc. Vill. of Freeport*, No. CV 11-2163 LDW AKT, 2014 WL 1330557, at *6 (E.D.N.Y. Mar. 31, 2014)("Supplemental pleadings are 'limited to subsequent events related to the claim or defense presented in the original pleading.'")(quoting 3 Moore Federal Practice § 15.30 (3d ed. 2010)); *see also Webster*, 271 F. Supp. 3d at 472–73 (W.D.N.Y. 2017)(Denying amendment under Rule 15(d) because "Plaintiff does not seek to bolster, amplify, or clarify the two claims alleged in his amended complaint; rather, he seeks to raise an entirely new constitutional claim under the First Amendment.").

Furthermore, denial of the motion to amend to add the First Amendment claims was proper because the addition of the claims would not promote the economic and speedy

disposition of the controversy between the parties as framed in the operative pleading.  *See Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000) (Leave to amend is properly denied "where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery.")(internal citation omitted); *Girard*, 2016 WL 915253, at *6 ("In considering plaintiff's motion [to amend], the Court is mindful of the fact that discovery has not been completed.  However, because this case presently includes multiple causes of action asserted against multiple defendants, the Court finds that the addition of numerous other defendants and unrelated claims arising at entirely distinct locations will necessarily prolong this action and impose additional expense on defendants. Moreover, the Court finds that adding these new claims would not aid in the efficient resolution of this action.");  *Andino v. Fischer*, 698 F. Supp. 2d 362, 374 (S.D.N.Y. 2010) (denying motion to supplement because "such a supplementation does not aid in the efficient resolution of the instant action" and would prejudice the existing defendants); *Stepney*, 2018 WL 3110225, at *6  ("[C]ourts may deny supplemental pleadings that would not 'promote the economic and speedy disposition of the entire controversy between the parties.'")(quoting Wright et al., 6 Fed. Prac. & Proc. Civ. § 1504 and citing *Sai v. Transp. Sec. Admin.*, 155 F. Supp. 3d 1 (D.D.C. 2016)).  Magistrate Judge Stewart did not abuse his discretion in denying Plaintiff's motion to amend to add proposed First Amendment claims (including Plaintiff's proposed First Amendment claim against Gov. Cuomo). *See Girard*, 2016 WL 915253, at *2 (N.D.N.Y. Mar. 4, 2016)("The decision to grant or deny a motion to amend or supplement is committed to the sound discretion of the trial court, and the court's decision is not subject to review on appeal except for abuse of discretion.")(citing *Fielding v. Tollaksen*, 510 F.3d 175,

179 (2d Cir. 2007)).  Because the statute of limitations does not appear to have run on

Plaintiff's proposed First Amendment claims, Plaintiff is free to assert these claims in a

separate action.   For the reasons set forth above, Plaintiff's objection to Magistrate Judge

Stewart's decision to deny Plaintiff's motion to amend is overruled.

### b.  Motion for Appointment of Counsel.

For the reasons discussed by Magistrate Judge Stewart at pages 25-26 of the

Report-Recommendation and Order, his decision to deny without prejudice Plaintiff's third

motion for the appointment of counsel is not clearly erroneous or contrary to law.  Plaintiff's

objection on this issue is overruled.

### c.  Plaintiff's Fifth, Sixth, and Seventh Motions for Preliminary Injunctions

Plaintiff's objection to Magistrate Judge Stewart's recommendation to deny Plaintiff's

Fifth, Sixth, and Seventh motions for preliminary injunctions is that "[his] current motions for

preliminary injunctive relief are inextricably intertwined with and predicated upon [the]

motion for leave to amend [the] Amended Complaint. . . . [The] motion to amend should

have been granted, thereby establishing a basis for [the] current motions for preliminary

injunctive relief." Obj., at p. 4.  However, because the Court finds that Magistrate Judge

Stewart properly denied the motion to amend, Plaintiff presents no meritorious reason to

reject Magistrate Judge Stewart's recommendation to deny Plaintiff's Fifth, Sixth, and

Seventh motions for preliminary injunctions.  Furthermore, upon conducting a *de novo*

review of these motions, the Court adopts Magistrate Judge Stewart's conclusions for the

reason stated in the Report-Recommendation and Order at pages 23-25.  Plaintiff's

objection on this issue is overruled.

### d.  Recommendation on "Blanket Ban" to Social Media Printed Content

Magistrate Judge Stewart recommends dismissal of Plaintiff's claim that DOCCS

promulgated a policy with a "blanket ban" on printed materials from social media, emails,

and text messages. In this regard, Magistrate Judge Stewart wrote:

> While Plaintiff alleges that Directive 4422 imposes such a blanket ban, *see* Am.
> Compl. at ¶ 129, a review of the Directive fails to bear out his assertions. As
> Defendants' Motion makes clear, the Directive expressly allows inmates to receive
> printed material with correspondence. Defs.' Mem. of Law at p. 13 (citing Directive
> 4422).  The Directive itself does not appear to contain the ban on social media
> materials alleged by Plaintiff and nothing in his opposition papers refutes Defendants'
> contention to the contrary or points to anything in the Directive specifically barring
> complete access to such materials. *See* Dkt. Nos. 61-1 & 61-2. Given the information
> now available, Plaintiff's conclusory allegation regarding this policy is insufficient to
> withstand the Motion to Dismiss. *Salgado v. NYS Dep't of Corr. & Cmty. Supervision*,
> 2016 WL 6311296, at *10 (W.D.N.Y. Sept. 15, 2016), report and recommendation
> adopted, 2016 WL 6298517 (W.D.N.Y. Oct. 27, 2016); *Odom v. Poirier*, 2004 WL
> 2884409, at *13 (S.D.N.Y. Dec. 10, 2004).

Rep.-Rec. & Ord., at 15-16.

In objecting to this recommendation, Plaintiff points to an allegation in the Amended

Complaint that he did not receive social media materials sent to him "because they were

third-party mail in violation of Directive #4422," Am. Compl. ¶ 140, and asserts in his

objections that "in truth, the 'blanket ban' on social media materials, emails, and text

messages is an unwritten policy and how directive #4422  is being applied state-wide." Obj.

at 3.  Plaintiff's allegation in the Amended Complaint that he did not receive social media

materials sent to him by a third-party does not establish that Directive 4422 imposes a

blanket ban on social media printed content.  Furthermore, his allegation in his objections of

a unwritten policy in applying Directive 4422 is insufficient to modify the allegations

contained in the Amended Complaint.  Plaintiff is free to move to amend the Amended

Complaint to include this allegation of an unwritten policy, but the absence of this allegation

in the Amended Complaint provides a sufficient basis to adopt Magistrate Judge Stewart's

recommendation on this issue.  Accordingly, Plaintiff's objection in this regard is overruled.

### e.  Recommendation on constitutionality of Rule 105.14

Magistrate Judge Stewart concluded that Plaintiff lacks standing to challenge the

constitutionality of Rule 105.14 because Plaintiff fails to allege that he suffered any actual

injury due to the application of this rule.  *See* Rep. Rec. & Ord., at 18-19.  While Magistrate

Judge Stewart noted that Plaintiff was previously found not guilty of violating this rule, he

concluded that Plaintiff lacked standing because ""[a] plaintiff seeking injunctive or

declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a

likelihood that he or she will be injured in the future.'" Rep. Rec. & Ord., at 18 (quoting *Peck*

*v. Baldwinsville Cent. Sch. Dist*., 351 Fed. Appx. 477, 479 (2d Cir. 2009) (summary order)

(in turn quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d at 344)). Plaintiff argues in his

objections that "[b]ecause DOCCS denied my request to form a prison chapter of UFD, I

can be disciplined for violating Prison Rule 105.14 and placed in solitary confinement for

nine months if I continue to promote and organize UFD. Hence, I have standing to

challenge the constitutionality of Prison Rule 105.14 as applied here." Obj., at 3.  Plaintiff's

allegation of possible future injury is insufficient to confer standing.  As the Supreme Court

has held:

> To establish Article III standing, an injury must be "concrete, particularized,
> and actual or imminent; fairly traceable to the challenged action; and
> redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*,
> 561 U.S. 139, ——, 130 S.Ct. 2743, 2752, 177 L.Ed.2d 461 (2010); *see also*
> [*Summers v. Earth Island Institute*, 555 U.S. 488, 493, 129 S. Ct. 1142, 173 L.
> Ed.2d 1 (2009)]; [*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.

10

Ct. 2130, 119 L.Ed.2d 351 (1992)]. "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Id.*, at 565, n. 2, 112 S. Ct. 2130 (internal quotation marks omitted). Thus, we have repeatedly reiterated that "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of *possible* future injury" are not sufficient. *Whitmore*, 495 U.S., at 158, 110 S. Ct. 1717 (emphasis added; internal quotation marks omitted); *see also Defenders of Wildlife, supra*, at 565, n. 2, 567, n. 3, 112 S. Ct. 2130; *see* [*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)];  *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190, 120 S. Ct. 693, 145 L.Ed.2d 610 (2000); *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed.2d 895 (1979).

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138, 1147, 185 L. Ed. 2d 264 (2013)(emphases added in *Clapper*).

Plaintiff's possible future injury from the application of Rule 105.14 is not "*certainly* impending," and therefore insufficient to confer standing.  Accordingly, Plaintiff's objection on this issue is overruled.

### f.  Recommendations without Objections.

The Court has reviewed Magistrate Judge Stewart's recommendation to which no objections have been filed, and finds no clear error on the face of the record in relation thereto.

## IV.  CONCLUSION

For the reasons discussed above, Plaintiff's objections to Magistrate Judge Stewart's orders denying Plaintiff's motion to amend [Dkt. No. 61], and for the appointment of counsel [Dkt. No. 61], are **OVERRULED**, and Magistrate  Judge Stewart's orders in the regard are **AFFIRMED**.

Also for the reasons discussed above, the Court **ACCEPTS and ADOPTS** the

recommendations in the Report-Recommendation and Order, Dkt. No. 95, for the reasons stated therein. Thus, it is hereby

**ORDERED** that Defendants' Motion to Dismiss (Dkt. No. 57) is **GRANTED** in part and **DENIED** in part.

The motion is **GRANTED** (1) Insofar as it seeks dismissal of the claim asserting the existence of a blanket policy barring access to social media material, and (2) Insofar as it seeks dismissal of Plaintiff's claim related to the constitutionality of Rule 105.14, and these claims are **DISMISSED without prejudice**.

The motion is **DENIED** (1) Insofar as Defendants Miller and Mahuta move to dismiss Plaintiff's Amended Complaint against them based upon qualified immunity; and (2) Insofar as Defendant Annucci seeks dismissal of Plaintiff's claims alleging that his First Amendment rights were violated by the arbitrary imposition of a mail watch,

and it is further,

**ORDERED** that Plaintiff's Fifth, Sixth, and Seventh Motions for Preliminary Injunctions (Dkt. Nos. 61, 70, and 74) are **DENIED**.

**IT IS SO ORDERED.**

Dated:March 28, 2019

Thomas J. McAvoy
Senior, U.S. District Judge

12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DONTIE S. MITCHELL,

                              Plaintiff,

            - v -                                          Civ. No. 9:17-CV-0892
                                                                  (TJM/DJS)
ANTHONY ANNUCCI, *Commissioner of*
*Department of Corrections*, JOHN MILLER,
*Correction Lieutenant*, R. WOOD, *Corrections*
*Sergeant*, ROBERT J. MAHUTA, *Correction Officer*,
NAPPER, *Correction Officer,* and WELLS,
*Correction Officer*,

                              Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

DONTIE S. MITCHELL
Plaintiff, *Pro Se*
98-A-0071
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. LETITIA JAMES                            MELISSA A. LATINO, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Dontie Mitchell brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights while he was in the custody of the Department of Corrections and Community Supervision ("DOCCS"). *See* Dkt. No. 1, Compl.   Following initial review, the Court transferred certain claims in the Complaint to the Western District of New York and dismissed certain defendants and claims.   Dkt. No. 13 at pp. 14-15 & 36-37.   The Court found that an Eighth Amendment claim against Defendants Woods, Napper, and Wells, as well as First Amendment claims against Mahuta, Miller, Cuomo, and Annucci could proceed.   *Id.* at pp. 36-37.   Plaintiff then filed an Amended Complaint.   Dkt. No. 23, Am. Compl.   He also sought reconsideration of the Court's transfer order and dismissal of claims.   Dkt. Nos. 16 & 22. The Court denied reconsideration, reaffirmed transfer of the claims to the Western District, and accepted the Amended Complaint for filing permitting the same claims identified above to proceed.   Dkt. Nos. 17 & 24.   Defendants subsequently made a Motion to Dismiss which resulted in some claims against Defendant Annucci being dismissed.   Dkt. No. 98.   Plaintiff later voluntarily discontinued his claims against Defendant Cuomo.   Dkt. No. 119.

All of the allegations that remain in this action concern events taking place at Clinton Correctional Facility.   Dkt. No. 13 at pp. 5-6.   Defendants do not seek summary judgment here as to the Eighth Amendment claims, limiting their Motion only to the First Amendment claims asserted against Defendants Mahuta, Miller, and Annucci.   *See*

*generally* Dkt. No. 125-2, Defs.' Mem. of Law.   Plaintiff opposes the Motion.   Dkt. No. 149.[1]   For the reasons that follow, the Court recommends Defendants' Motion for Summary Judgment be **GRANTED**.

## I.   BACKGROUND

The facts underlying the claims at issue in this Motion are not generally disputed. Indeed, Plaintiff largely concedes the accuracy of Defendants' recitation of the specific facts, while in some cases disputing the legal significance of those facts.   *Compare* Dkt. No. 125-1, Defs.' Rule 7.1 Statement *with* Dkt. No. 149, Pl.'s. Resp. to Defs.' Rule 7.1 Statement.   Plaintiff's allegations relate specifically to the First Amendment implications of a particular disciplinary action taken against Plaintiff and then more generally to DOCCS policies that he contends abridge his First Amendment rights.

In April 2014, Defendant Mahuta was employed by DOCCS as a Corrections Officer.   Dkt. No. 125-8, Mahuta Decl. at ¶ 1.   At that time he began an investigation into Plaintiff's alleged violation of prison disciplinary rules.   *Id.* at ¶ 10.   As part of that investigation, Mahuta requested, pursuant to DOCCS Directive 4422, that a mail watch be instituted that would permit prison security staff to review Plaintiff's mail for a specific time.   *Id.* at ¶ 11.   The Superintendent and/or Acting Superintendent approved the initial mail watch and several subsequent extensions.   *Id.* at ¶ 12 & Ex. C.   The mail watches resulted in the confiscation of five pieces of mail that Defendant Mahuta determined

---

[1] As part of Plaintiff's opposition he again seeks appointment of counsel.   Dkt. No. 149-1, Pl.'s Mem. of Law at pp. 5-6.   Plaintiff has repeatedly sought the appointment of counsel which the Court has denied as unwarranted. Dkt. No. 111.   For the reasons set forth in the Court's prior decisions, Plaintiff's submissions here offer no basis for appointment of counsel.

provided evidence of facility rules violations.   *Id.* at ¶¶ 13-14 & Ex. E.[2]

On September 11, 2014, Mahuta issued an inmate misbehavior report to Plaintiff as a result of information uncovered during this investigation.   *Id.* at ¶ 7 & Ex. A.   The report charged Plaintiff with three rules violations: engaging in activities regarding unauthorized organizations, improper solicitation of goods and services, and violation of facility correspondence rules.   *Id.*   An inmate disciplinary hearing was held regarding this report at which Defendant Miller, then a Lieutenant at Clinton C.F., presided.   *Id.* at ¶ 19; Dkt. No. 125-17, Miller Decl. at ¶¶ 14-16.

At the conclusion of the hearing, Miller found Plaintiff guilty of two of the three charges lodged in the misbehavior report, solicitation and correspondence violations, but not guilty of the unauthorized organizations charge.   Miller Decl. at ¶ 17.   This determination was administratively affirmed on appeal.   Miller Decl. at Ex. E.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact.

---

[2] At Defendants' request the Court initially permitted Exhibits B, D, & E to the Mahuta Declaration to be filed *in camera*.   Dkt. Nos. 120 & 121.   The Court subsequently directed that redacted copies of those exhibits be provided for Plaintiff's review in preparation for responding to the Motion.   Dkt. No. 130.   Insofar as the Court has relied on those exhibits in addressing the merits of this Motion the Court now directs that those exhibits be filed on the docket.   *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006).   The Clerk of the Court is directed to docket those exhibits with the Motion, but restrict access to court personnel and the parties given the inclusion of personal identifying information for non-parties.

*F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant.   FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).   To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.   *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).   "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.   Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."   *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d

1219, 1224 (2d Cir. 1994).   Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest."   *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).   Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

Only Plaintiff's First Amendment claims are at issue in this Motion.   Defs.' Mem. of Law at p. 2.   There is no question that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."   *Pell v. Procunier*, 417 U.S. 817, 822 (1974).   "These rights, however, 'must be exercised with due regard for the inordinately difficult undertaking that is modern prison administration.'"   *Zimmerman v. Todd*, 2019 WL 4727399, at *3 (N.D.N.Y. Sept. 27, 2019) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).   "The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution."   *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977).

In the First Amendment context "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."   *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (citing *Turner*

*v. Safley*, 482 U.S. 78, 89 (1987)).   The court must consider the four factors set forth in

*Turner* in order to evaluate whether the regulation is "reasonably related to legitimate

penological interests":

> (1) there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it[;]
>
> (2) whether there are alternative means of exercising the right that remain open to prison inmates[;]
>
> (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[; and]
>
> (4) the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*Turner v. Safely*, 482 U.S. at 89-91 (citation omitted).   With these standards in mind,

the Court turns to the merits of Plaintiff's claims.

## A. Claims Regarding Mail Watches[3]

Plaintiff alleges that Defendant Mahuta violated his constitutional rights by

arbitrarily imposing an unlawful mail watch.   *See* Am. Compl. at ¶¶ 132-135; Dkt. No.

149-2, Mitchell Decl. at ¶ 23.   The record establishes that Mahuta requested that

Plaintiff be placed on a facility mail watch as part of an ongoing investigation.   Mahuta

Decl. at ¶ 11.   As Plaintiff concedes Mahuta only had the authority to *request* a mail

watch, not impose one.   Defs.' 7.1 Statement at ¶ 15 (Facility Superintendent has "sole

---

[3] As part of his opposition to the Motion, Plaintiff seeks leave yet again to amend the Complaint in this action, first filed in 2017, to include claims regarding mail watches imposed at Great Meadow.   *See* Pl.'s Mem. of Law at p. 6. Plaintiff previously requested leave to add claims regarding events at Great Meadow and that motion was denied. Dkt. No. 95 at pp. 19-23.   Plaintiff's brief and conclusory arguments here provide no basis for revisiting that decision.

discretion" to impose a mail watch); Pl.'s 7.1 Statement at ¶ 15 (admitting this statement). The mail watches imposed against Plaintiff were authorized by Superintendent Racette or the Acting Superintendent at Clinton Correctional Facility. Defs.' 7.1 Statement at ¶¶ 17 & 19 (discussing authorizations for mail watch); Pl.'s 7.1 Statement at ¶¶ 17 & 19 (admitting those statements).

Imposition of the mail watch did not violate the First Amendment. "[U]nder the *Turner* standard, the Second Circuit has already determined that facility instituted mail watches are constitutional as a reasonable measure 'to ensure the good order of the prison and the rehabilitation of prisoners by preventing a prisoner from engaging in illegal activities while incarcerated.'" *Williams v. Fischer*, 2010 WL 3910129, at *8 (N.D.N.Y. Aug. 17, 2010), *report and recommendation adopted*, 2010 WL 3893952 (N.D.N.Y. Sept. 30, 2010) (quoting *Duamutef v. Hollins*, 297 F.3d 108, 112-13 (2d Cir. 2002)); *see also Acevedo v. Fischer*, 2015 WL 7769486, at *6 (S.D.N.Y. Dec. 2, 2015), *report and recommendation adopted*, 2016 WL 884909 (S.D.N.Y. Mar. 2, 2016) (same) (citing cases). Indeed, the Second Circuit has "ruled that the interception of [an inmate's] prison correspondence does not violate that individual's First or Fourth Amendment rights if prison officials had 'good' or 'reasonable' cause to inspect the mail." *United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998).

8

Here, the record establishes that the imposition of the mail watch was reasonable. Mahuta received information that led him to believe that Plaintiff may be violating facility correspondence rules. Mahuta Decl. at ¶¶ 10-11. Specifically Mahuta became aware that Mitchell had attempted to mail letters to other DOCCS inmates through a third party in violation of DOCCS policy. *Id.* at Ex. B. That information also included discussion of drug smuggling in the visiting room at Clinton C.F. *Id.*[4] Mahuta then requested to place a mail watch on Plaintiff. Mahuta Decl. at ¶ 11. That request was granted. *Id.* at ¶ 12.

"A mail watch 'allow[s] a prison superintendent to authorize the inspection of outgoing and incoming mail if there is reason to believe that the correspondence threatens the safety of any person or the good order of the facility.'" *Acevedo v. Fischer*, 2015 WL 7769486, at *6 (quoting *United States v. Felipe*, 148 F.3d at 105). Courts have long recognized that rules barring inmates from different prisons from communicating with each other were constitutionally permitted as "logically connected to [] legitimate security concerns" because "communication with other felons is a potential spur to criminal behavior." *Turner v. Safley*, 482 U.S. at 91. Similarly, the dangers of drug smuggling within a correctional facility are clear. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) ("A detention facility is a unique place fraught with serious

---

[4] Plaintiff later admitted during his deposition to "coordinating" bringing drugs into the visiting room at Clinton. Dkt. No. 125-5 at p. 22.

security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence.").

"[T]he Second Circuit has held that 'where good cause is shown, outgoing mail can be read' without violating inmates' First Amendment rights." *Ford v. Fischer*, 2011 WL 856416, at *5 (N.D.N.Y. Jan. 31, 2011), *report and recommendation adopted*, 2011 WL 846860 (N.D.N.Y. Mar. 9, 2011) (quoting *United States v. Workman*, 80 F.3d 688, 698 (2d. Cir. 1996)).   The evidence that Plaintiff was involved in violating facility correspondence rules and had knowledge of smuggling into the facility clearly provide good cause to justify Mahuta's request for a mail watch.   *Jackson v. Portuondo*, 2007 WL 607342, at *13 (N.D.N.Y. Feb. 20, 2007).   Mahuta, therefore, is entitled to summary judgment as to this claim.

## B. Claims Related to an Inmate Misbehavior Report

Plaintiff also asserts claims against Defendants Mahuta and Miller related to an inmate misbehavior report issued to him on September 11, 2014.   Am. Compl. at ¶ 114. Mahuta authored the misbehavior report.   *Id.*; Mahuta Decl., Ex. A.   Miller presided over the disciplinary hearing regarding the report.   Am. Compl. at ¶ 116; Miller Decl. at ¶¶ 8-9 & Ex. B.   The report charged Plaintiff with violating three rules of inmate conduct.   Mahuta Decl. at Ex. A.   Miller found Plaintiff not guilty of one charge, but guilty of the two remaining charges.   Am. Compl. at ¶ 116; Miller Decl. at ¶ 17.

10

Plaintiff's First Amendment claim regarding the misbehavior report was permitted to proceed on the theory that the challenged disciplinary action violated his First Amendment associational rights.  Dkt. No. 13 at pp. 13 & 20-21.[5]  As noted above, limitations on associational rights are inherent upon incarceration and can be constitutional.  *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. at 126.  The particular facts here are entirely consistent with those limitations and Defendants are entitled to summary judgment.

Plaintiff was found guilty of violating DOCCS' correspondence policy by engaging in business activities.  Miller Decl., Ex. A at p. 3.  It is well established that the "regulations prohibiting plaintiff from conducting business do not prevent plaintiff from exercising his First Amendment rights."  *Jordan v. Garvin*, 2004 WL 302361, at *4 (S.D.N.Y. Feb. 17, 2004).  Defendants have identified a number of penological interests served by prohibiting inmates from engaging in business activities while incarcerated.   These include preventing inmates from shielding money from restitution owed or from other mandatory legal obligations, preventing inmates from committing fraud upon members of the public or fellow inmates, preventing use of funds for any

---

[5]  Plaintiff's due process claims against Miller were previously dismissed, Dkt. No. 13 at pp. 21-23 & Dkt. No. 24 at pp. 10-11, and so no claim regarding the sufficiency of the evidence underlying these charges is presented here. *See generally Harris v. Taylor*, 2010 WL 3021531, at *9 (N.D.N.Y. July 14, 2010), *report and recommendation adopted*, 2010 WL 3021532 (N.D.N.Y. July 29, 2010) (distinguishing between First Amendment and Fourteenth Amendment due process claims).

illegal purposes, and reducing record-keeping burdens on facility staff.   Dkt. No. 23, Annucci Decl. at ¶ 25.   The Second Circuit has recognized that "[t]he legitimacy of the state's interest in preventing fraud or profligacy by inmates, and thereby promoting the penological objectives of security, order, and rehabilitation cannot seriously be questioned."   *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir. 1987) (internal quotation and citation omitted).   Accordingly, the limitations on Plaintiff's ability to conduct business while in DOCCS custody do not violate his First Amendment associational rights. *Zimmerman v. Racette*, 2018 WL 3964704, at *7 (N.D.N.Y. Aug. 13, 2018) (citing cases).

Those penological concerns also defeat Plaintiff's challenge to the guilty disposition regarding solicitation given that "courts in this Circuit have similarly rejected a First Amendment challenge to DOCS Rule 103.20, which prohibits inmates from soliciting goods or services."   *Neree v. O'Hara*, 2011 WL 3841551, at *8 (N.D.N.Y. July 20, 2011), *report and recommendation adopted*, 2011 WL 3841553 (N.D.N.Y. Aug. 29, 2011) (citing *Jordan v. Garvin*, 2004 WL 302361, at *3-4).

Courts have consistently and repeatedly upheld the DOCCS policies at issue here against constitutional challenge.   In light of this authority and the record offered by Defendants, Plaintiff offers no basis for departing from established rules.   The Court,

12

therefore, recommends summary judgment for Defendants as to the claim regarding the misbehavior report.

## C. Qualified Immunity

Qualified immunity provides a "shield[ ] . . . from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct . . . . To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citations omitted). Qualified immunity attaches if "'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In other words, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Although it is not the case that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, Defendants argue that they are entitled to qualified immunity because they acted consistent with DOCCS' Directives #4422 and 4423 and Prison Rules 105.14,

13

103.20, and 180.11, with respect to disciplinary proceedings involving Plaintiff. "When officials follow an established prison policy . . . their entitlement to qualified immunity depends on whether a reasonable officer might have believed that the challenged order was lawful in light of legitimate penological interests supporting the directive." *Barnes v. Furman*, 629 Fed. Appx. 52, 57 (2d Cir. 2015) (quotation marks omitted). The reasonableness of an action depends on "facts and circumstances of each particular case." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

The record establishes that Defendant Mahuta complied with DOCCS policy in requesting the mail watch and based the misbehavior report on evidence obtained during his investigation. In light of the objective evidence in his possession that plaintiff was violating correspondence rules it was reasonable for Mahuta to have sought the mail watch. As discussed above, at the time Mahuta acted the mail watch policy had been repeatedly upheld by courts, as had the DOCCS policies underlying the misbehavior report allegations. The evidence obtained was sufficient to support guilty determinations regarding two of the three charges lodged against Plaintiff. Miller Decl. at ¶ 17. Under the circumstances a reasonable corrections officer in Mahuta's position would not have known that his actions were violating Plaintiff's constitutional rights and Mahuta, therefore, is also entitled to summary judgment based on qualified immunity.

14

Defendant Miller similarly is entitled to qualified immunity on the facts before him.   He found Plaintiff guilty of two disciplinary violations.   Miller Decl. at ¶ 17. That determination was affirmed on appeal and is not challenged here.   A reasonable corrections official in his position could not have known that relying on evidence obtained consistent with DOCCS policies to find an inmate guilty of some, but not all, charges was violating the inmate's First Amendment rights.   The disciplinary action was also taken in the context of significant caselaw in the Second Circuit upholding the Directive that Plaintiff was alleged to have violated against challenges similar, if not identical, to those raised by the Plaintiff here.   Plaintiff has pointed to no clearly established law to the contrary.   Qualified immunity, therefore, is appropriate.

### D. Defendant Annucci

Plaintiff seeks declaratory and injunctive relief against Defendant Annucci in his capacity as Acting Commissioner of DOCCS regarding policies affecting inmate communications.   *See* Dkt. No. 13 (describing nature of claims against Annucci).

#### 1. Alleged Policies Regarding Arbitrary Mail Procedures

Plaintiff first claims that "arbitrary mail watches" are a "systemic" problem within DOCCS.   Pl.'s Decl. at ¶ 23; *see also* Am. Compl. at ¶¶ 132 & 135.   As described above, the mail watch at issue in this case was based on specific evidence supporting its imposition.   *See* Point III(A), *supra*.   The record is devoid of specific

15

facts to support a claim of systemic abuse.   At best Plaintiff offers that "[s]everal other prisoners" have made him aware of problems with mail.   Am. Compl. at ¶ 135. Defendant Annucci's Declaration denies the existence of a systemic policy of imposing arbitrary mail watches.   Annucci Decl at ¶ 19.   "Plaintiff has simply made the conclusory statement that such a policy exists in his [amended] complaint" which is insufficient to withstand summary judgment.   *Cerulli v. Gailor*, 2009 WL 4891813, at *5 (E.D.N.Y. Dec. 16, 2009); *see also Paris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 364 (SDNY 2013) ("Conclusory, unsupported allegations of . . . the existence of a policy are simply insufficient to establish liability of supervisory prison officials under § 1983").

### 2. Denial of Access to Email and Text Messaging

Plaintiff next alleges that DOCCS' policies prohibiting inmates from accessing email and text messaging services violate the First Amendment.   Am. Compl. at ¶ 186. Consistent with cases decided around the country, the Court recommends that summary judgment be granted as to this claim.   "Although prison inmates retain a right under the First Amendment to send and receive information while incarcerated they do not have a constitutional right to a particular form of communication, including access to the internet or email."   *Edwards v. New York State Dep't of Corr. & Cmty. Supervision*, 2019 WL 1978803, at *5 (N.D.N.Y. May 3, 2019) (internal citations omitted) (citing

16

cases); *see also Holt v. Bright*, 2020 WL 224575, at *3 (N.D. Ohio Jan. 15, 2020) ("while prisoners have a First Amendment right to communicate with the outside world, they do not have a constitutional right to a particular form of communication, such as access to email"); *Smith v. Unknown Hall*, 2018 WL 1602633, at *4 (W.D. Mich. Apr. 3, 2018) (noting that courts "have routinely agreed" that inmates "do not have a constitutional right to a particular form of communication, such as access to email.") (citing cases).   Prison officials, therefore, do not violate the First Amendment by declining to make an inmate's preferred method of communication available.

Summary judgment is also appropriate as to Plaintiff's claim regarding e-mail as DOCCS now does have a system in place for inmates to utilize e-mail.   Annucci Decl. at ¶ 33; Mitchell Decl. at ¶ 24.   Any claim for declaratory and injunctive relief as to providing e-mail access, therefore, is moot.   *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").[6]

### 3. Directive 4422

Finally, Plaintiff's Amended Complaint makes a broad based attack on the constitutionality of DOCCS Directive 4422.   Am. Compl. at ¶ 186.   That Directive

---

[6]  The Court recognizes that Plaintiff claims that he has been "deliberately excluded from participating" in the email program.   Mitchell Decl. at ¶ 25; *see also* Dkt. No. 147.   Such claims, however, would relate to the specific individuals at Great Meadow Correctional Facility allegedly responsible for excluding Plaintiff, none of whom are parties to this action.

17

concerns the Inmate Correspondence Program.   Annucci Decl. at ¶ 8 & Ex. A.   Certain aspects of Plaintiff's attack on the Directive were addressed above with respect to e-mail and others have previously been dismissed.   Dkt. No. 98.   To the extent that Plaintiff alleges the Directive's restrictions on his ability to conduct business or engage in solicitation violate the First Amendment, those claims should be dismissed.

"Courts interpreting Directive No. 4422 have held that the restrictions it places on inmate communication serve a legitimate penological purpose."   *Burroughs v. Cty. of Nassau*, 2015 WL 4257387, at *2 (E.D.N.Y. July 14, 2015) (citing cases); *see also Minigan v. Irvin*, 977 F. Supp. 607, 609 (W.D.N.Y. 1997) ("The constitutionality of this policy has been upheld repeatedly by courts in this circuit.") (citing cases); *Webster v. Mann*, 917 F. Supp. 185, 187 (W.D.N.Y.1996) ("there is no dispute that Directive No. 4422 is reasonably related to legitimate penological interests.").   Here, the record establishes that the Directive serves multiple penological goals including:

> (1) preventing inmates from shielding money from restitution owed or from other mandatory legal obligations; (2) deterring escape by restricting inmates' access to available outside funds; (3) preventing inmates from being able to extort money from other inmates; (4) preventing inmates from committing fraud upon members of the public; (5) preventing use of funds for any illegal purposes; and (6) reducing record-keeping burdens on facility staff.

Annucci Decl. at ¶ 25.   Plaintiff does not dispute the stated penological objectives, contending only that the policy is nonetheless unconstitutional.   Pl.'s Resp. to Defs.'

18

7.1 Statement at ¶¶ 31-32.  "[C]ourts owe 'substantial deference to the professional judgment of prison administrators.'"  *Beard v. Banks*, 548 U.S. 521, 528 (2006) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).  Given this deference and the undisputed penological interests asserted, "[i]t is evident that a valid, rational connection exists between Directive 4422 and the legitimate governmental interests the directive was designed to promote."  *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir.1987).

For these reasons, Defendant Annucci is entitled to summary judgment on Plaintiff's claims.

## IV.  CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 125) be **GRANTED**; and it is further

**RECOMMENDED**, that the Amended Complaint be **DISMISSED** as to Plaintiff's First Amendment claims against Defendants Mahuta, Miller, and Annucci; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[7] days within

---

[7] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and

19

which to file written objections to the foregoing report.   Such objections shall be filed with the Clerk of the Court.   **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**   *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   September 3, 2020
        Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

file objections.   FED. R. CIV. P. 6(d).   If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DONTIE S. MITCHELL,**

                                        **Plaintiff,**

        **v.**                                                          **9:17-CV-892**
                                                                        **(TJM/DJS)**

**ANTHONY ANNUCCI, Commissioner of**
**Department of Corrections, JOHN MILLER,**
**Corrections Lieutenant, R. WOOD, Corrections**
**Sergeant, ROBERT J. MAHUTA, Corrections**
**Officer, NAPPER, Corrections Officer, and**
**WELLS, Corrections Officer,**

                                        **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

**DECISION & ORDER**

        Plaintiff filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his

constitutional rights while held in prison by the State of New York.  The Court referred the

Complaint to the Hon. Daniel J. Stewart, United States Magistrate Judge, for an initial

review pursuant to 28 U.S.C. § 1915(e) and a Report-Recommendation pursuant to 28

U.S.C. § 636(b) and Local Rule 72.3(c).

        The Report-Recommendation, dated September 3, 2020, recommends that the

Court grant the motion brought by Defendants Robert J. Mahuta, John Miller, and Anthony

Annucci for summary judgment on Plaintiff's First Amendment claims.  See dkt. # 152.

Magistrate Judge Stewart finds that no evidence supports Plaintiff's claims that

1

Defendants violated his First Amendment rights by reading his mail and disciplining him in relation to certain communications he had with persons outside the facility holding him. Magistrate Judge Stewart also concludes that, even if Defendants Mahuta and Miller had violated Plaintiff's First Amendment rights, they would be entitled to qualified immunity. Finally, Magistrate Judge Stewart finds that Defendant Annucci is entitled to judgment on Plaintiff's requests for declaratory and injunctive relief on policies related to mail, email, and text messaging.

The Plaintiff filed objections to the Report-Recommendation.  See dkt. # 153. When a party objects to a magistrate judge's Report-Recommendation, the Court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  See 28 U.S.C. § 636(b)(1).  After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."  Id.

Having reviewed the record *de novo* and having considered the other issues raised in the Plaintiff's objections, this Court has determined to accept and adopt the recommendation of Magistrate Judge Stewart for the reasons stated in the Report-Recommendation.

The Court notes that a portion of Plaintiff's objections is devoted to a complaint that he was unable to answer Defendant's motion effectively because the Court had denied his motion for appointment of counsel.  He writes: "[f]or a pro se prisoner to survive summary judgment against qualified immunity defenses; and to rebut the professional judgment of prison officials justifying their rules, regulations, and decisions, to which courts [owe]

2

substantial deference, is exceedingly difficult without he assistance of counsel.  Judge

[Stewart's] Report-Recommendation makes this so painfully obvious."

    The Court has already denied the Plaintiff's appeal of Magistrate Judge Stewart's

decision denying Plaintiff's request for appointed counsel.  See dkt. # 129.  The Court

treats this portion of Plaintiffs' objections as a motion for reconsideration of that earlier

decision.  When a party files a motion for reconsideration, "[t]he standard for granting such

a motion is strict, and reconsideration will generally be denied unless the moving party can

point to controlling decisions or data that the court overlooked–matters, in other words,

that might reasonably be expected to alter the conclusion reached by the court."  Shrader

v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995).  Such a motion is "not a vehicle for

relitigating old issues, presenting the case under new theories, securing a rehearing on the

merits, or otherwise taking 'a second bite at the apple[.]'"  Analytical Surveys, Inc. v. Tonga

Partners, L.P., 684 F.3d 36, 41 (2d Cir. 2012) (quoting Sequa Corp. v. GBJ Corp., 156

F.3d 136, 144 (2d Cir. 1998)).

    Plaintiff has not pointed to any new controlling decisions governing the appointment

of counsel since the Court denied his appeal. He does argue that his inability to point to

evidence to support his First Amendment claims or to challenge the Defendants'

arguments on qualified immunity demonstrates that he should be appointed counsel.  The

Court is not persuaded that the outcome of the summary judgment motion is evidence to

support reconsideration of the earlier order.  Having examined the parties' briefing on this

motion and the record related to the motion, the Court finds that appointment of counsel

was not necessary for Plaintiff to argue his claims adequately.  Plaintiff has successfully

argued various claims pro se to this point, and the presence of counsel would not have

changed the outcome here.  Indeed, Defendants conceded that they were not entitled to summary judgment on some of the claims Plaintiff raised in this action.  Plaintiff may of course seek appointed counsel for the next stage of the proceeding regarding those claims.

Without offering any argument as to why, Plaintiff also argues that the Court should grant him leave to amend his complaint.  In a footnote to his report-recommendation, Magistrate Judge Stewart noted that "[a]s part of his opposition to the Motion, Plaintiff seeks leave yet again to amend the Complaint in this action, first filed in 2017, to include claims regarding mail watches imposed at Great Meadow.  Plaintiff previously requested leave to add claims regarding events at Great Meadow and that motion was denied.  Plaintiff's brief and conclusory arguments here provide no basis for revisiting that decision."

The Court treats this request as an appeal of the non-dipositive decision of the Magistrate Judge not to permit him to amend his complaint.  A district court judge reviewing a magistrate judge's non-dispositive pretrial order may not modify or set aside any part of that order unless it is clearly erroneous or contrary to law.  Labarge v. Chase Manhattan Bank, N.A., 1997 U.S. Dist. LEXIS 13803, 1997 WL 5853122, at *1 (N.D.N.Y. Sept. 3, 1997) (citing 28 U.S.C. § 636(b)(1)); FED. R. CIV. P. 72(a); Mathias v. Jacobs, 167 F.Supp.2d 606, 621-23 (S.D.N.Y. 2001); Dubnoff v. Goldstein, 385 F.2d 717, 721 (2d Cir. 1967) (court's decision "not to disqualify himself is ordinarily reviewable only upon appeal from a final decision on the cause in which the application . . . was filed.").  Findings are clearly erroneous when the reviewing court is firmly convinced the lower court decided an issue in error.  Lanzo v. City of New York, 1999 U.S. Dist. LEXIS 16569, 1999 WL

4

1007346, *2-3 (E.D.N.Y. Sept. 21, 1999). This standard imposes a heavy burden on the objecting party, and only permits reversal where the district court determines the magistrate judge "abused his broad discretion over resolution of discovery matters." Labarge, 1997 U.S. Dist. LEXIS 13803, 1997 WL 583122 at *1. Plaintiff has offered no more than conclusory reasons as to why he should be permitted to amend his complaint and no argument as to why the Magistrate Judge erred in not permitting him leave to do so. The Court is not persuaded that the Magistrate Judge's decision to deny amendment at this late stage in the proceedings was clearly erroneous. To the extent that the Magistrate Judge treated the Plaintiff's request as a motion for reconsideration, the Court also finds that decision was not clearly erroneous. Plaintiff had offered no substantial argument for reconsideration, and Magistrate Judge Stewart clearly denied that motion.

It is therefore **ORDERED** that Plaintiff's objections to the Report-Recommendation of Magistrate Judge Stewart, dkt. # 153, are hereby OVERRULED. The Report-Recommendation, dkt. # 152, is hereby ACCEPTED and ADOPTED. The Plaintiff's Amended Complaint is hereby DISMISSED as to Plaintiff's First Amendment claims against Defendants Mahuta, Miller, and Annucci. To the extent that Plaintiff's objections can be read as an appeal of the Magistrate Judge's decision denying him leave to file an amended complaint, that appeal is hereby DISMISSED. To the extent that Plaintiff's objections can be read as a motion for reconsideration of the Court's order dismissing his appeal of the Magistrate Judge's order denying his request for appointed counsel, that motion is hereby DENIED.

5

**IT IS SO ORDERED.**

Dated: October 30, 2020

Thomas J. McAvoy
Senior, U.S. District Judge

6

# EXHIBIT B



**NEW YORK STATE** | **Corrections and Community Supervision**

ANDREW M. CUOMO
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

# **CERTIFICATION**

I, Hilary Hawksby, being employed by the New York State Department of Corrections and Community Supervision in the position of Office Assistant II, have reviewed the attached documents and hereby state and certify pursuant to New York CPLR 2307, 4518(c) and 4540, and FRE Rule 902, that they are the complete, true and exact copies of the enclosed records regarding inmates **Dontie Mitchell – 98A0071.** The attached records are maintained in the regular course of business of DOCCS and with regard to the attached records that were created by employees of DOCCS; that it was in the regular course of business of DOCCS to make then at the time of the condition, act, transaction, occurrence or event documented in such records, or within a reasonable time thereafter; and that the employees who created the records had a duty to truthfully record such condition, act, transaction, occurrence or event.

Hilary Hawksby – Office Assistant

Witness my signature this 24th day of
January, 2018

Sworn to before me this
24 day of January, 2018

NOTARY PUBLIC

WENDY KING
Notary Public, State of New York
Clinton County 01KI6100945
Commission Expires  11-3-9

```
01/16/18   SRCL008   CRIME AND SENTENCE INFORMATION   *FPMS*        PAGE 001
NAME MITCHELL, DONTIE                  PAGE   1 OF   4  DATE RECEIVED 01/08/1998
DOB      /1979       DIN 98A0071          NYSID 08273669L        FBI 411107CB2

SEX OFFENDER: IO 0 NO          REG N LVL    EXP DT
PRIOR                   OTHER              REG N LVL    EXP DT
DNA Y ELIG   DOCS ACTION 1 SAMPLE TAKEN  08/28/01 NYSP SAMPLE CRIME    08/29/01

MERIT DATE PH DATE/TYPE TENT RLSE DT PE DATE  TAC DTE/TYPE  CR DATE     ME DATE
  /  /    10/2023 INIT   /  /    02/08/2024 10/2032 INIT 02/08/2033 02/08/2051
                             LCTA DATE: 08/08/2032    PRSME DATE:   /  /
```

```
01/16/18  SRCL008   CRIME AND SENTENCE INFORMATION    *FPMS*        PAGE 002
NAME MITCHELL, DONTIE                  PAGE  2 OF  4  DATE RECEIVED 01/08/1998
DOB     /1979      DIN 98A0071       NYSID 08273669L      FBI 411107CB2


************************** CRIME    1 ********************************
COURT: COUNTY          COUNTY: 01 ALBANY       JUDGE: T BRESLIN
INDICTMENT NUMBER: 12-5181  CJ TRACKING NUMBER: 18885683P
OFFENSE DATE: 01 03 97    CONVICTION: P PLEA                         VFO
ATT: Y CRIME: 0501 ROBBERY 1ST              CRIME CLASS: C  COUNTS: 002
HATE:                   TERROR:             SEX MOTV FEL:
MIN TERM: 07 06 00      MAX TERM: 15 00 00   PRS:
CCCS: CS               TYPE: N FIRST
SENTENCING DATE: 12 23 97   SENTENCING MINUTES: N NO          02/11/09
ARRESTING AGENCY: BETHLEHEM TN             ARREST DATE: 02 13 97
CRIME LOCATION: BETHLEHEM                   JAIL TIME: 0329
DA PKT RECVD:                     PRIOR CCCS: NA  NOTAPPLCBLE
************************** CRIME    2 ********************************
COURT: COUNTY          COUNTY: 01 ALBANY       JUDGE: T BRESLIN
INDICTMENT NUMBER: 12-5181  CJ TRACKING NUMBER: 18885683P
OFFENSE DATE: 01 30 97    CONVICTION: P PLEA                         VFO
ATT: N CRIME: 2121 CRIM USE OF FIREARMS 1ST    CRIME CLASS: B  COUNTS: 001
HATE:                   TERROR:             SEX MOTV FEL:
MIN TERM: 12 06 00      MAX TERM: 25 00 00   PRS:
CCCS: CC               TYPE: N FIRST
SENTENCING DATE: 12 23 97   SENTENCING MINUTES: N NO          02/11/09
ARRESTING AGENCY: BETHLEHEM PD             ARREST DATE: 02 13 97
CRIME LOCATION: BETHLEHEM                   JAIL TIME: 0329
DA PKT RECVD:                     PRIOR CCCS: NA  NOTAPPLCBLE
************************** CRIME    3 ********************************
COURT: COUNTY          COUNTY: 01 ALBANY       JUDGE: T BRESLIN
INDICTMENT NUMBER: 12-5181  CJ TRACKING NUMBER: 18885683P
OFFENSE DATE: 01 30 97    CONVICTION: P PLEA
ATT: N CRIME: 1310 GRAND LARCENY - AUTO 4TH    CRIME CLASS: E  COUNTS: 001
HATE:                   TERROR:             SEX MOTV FEL:
MIN TERM: 01 04 00      MAX TERM: 04 00 00   PRS:
CCCS: CC               TYPE: N FIRST
SENTENCING DATE: 12 23 97   SENTENCING MINUTES: N NO          02/11/09
ARRESTING AGENCY: BETHLEHEM PD             ARREST DATE: 02 13 97
CRIME LOCATION: BETHLEHEM                   JAIL TIME: 0329
DA PKT RECVD:                     PRIOR CCCS:
```

```
 01/16/18   SRCL008   CRIME AND SENTENCE INFORMATION    *FPMS*         PAGE 003
 NAME MITCHELL, DONTIE                     PAGE   3 OF   4  DATE RECEIVED 01/08/1998
 DOB          '1979      DIN 98A0071       NYSID 08273669L      FBI 411107CB2

**************************    CRIME    4 *********************************
COURT: COUNTY            COUNTY: 01 ALBANY       JUDGE: T BRESLIN
INDICTMENT NUMBER: 12-5181  CJ TRACKING NUMBER: 18885683P
OFFENSE DATE: 01 30 97    CONVICTION: P PLEA                          VFO
ATT: N CRIME: 2108 CRIM POSS WEAP 2ND          CRIME CLASS: C  COUNTS: 002
HATE:                     TERROR:              SEX MOTV FEL:
MIN TERM: 07 06 00        MAX TERM: 15 00 00    PRS:
CCCS: CSCC                TYPE: N FIRST
SENTENCING DATE: 12 23 97   SENTENCING MINUTES: N NO             02/11/09
ARRESTING AGENCY: BETHLEHEM PD                 ARREST DATE: 02 13 97
CRIME LOCATION: BETHLEHEM                       JAIL TIME: 0329
DA PKT RECVD:                       PRIOR CCCS:
**************************    CRIME    5 *********************************
COURT: COUNTY            COUNTY: 60 WYOMING     JUDGE: MARK H DADD
INDICTMENT NUMBER: 5025   CJ TRACKING NUMBER:
OFFENSE DATE: 07 03 02    CONVICTION:
ATT: Y CRIME: 3907 PROM PRISON CONTRABAND 1ST  CRIME CLASS: E  COUNTS: 001
HATE:                     TERROR:              SEX MOTV FEL:
MIN TERM: 02 00 00        MAX TERM: 04 00 00    PRS:
CCCS: CS                  TYPE: 2 SECOND
SENTENCING DATE: 08 07 03   SENTENCING MINUTES: Y YES            02/11/09
ARRESTING AGENCY:                              ARREST DATE:
CRIME LOCATION:                                 JAIL TIME: 0000
DA PKT RECVD:                       PRIOR CCCS:
JAIL TIME USED IN DATE COMP: 0329    IID:CRIME-N COURT-N OTHER-N
```



**NEW YORK STATE**

# Corrections and Community Supervision

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

# <u>CERTIFICATION</u>

I, Hilary Hawksby, being employed by the New York State Department of Corrections and Community Supervision in the position of Office Assistant II, have reviewed the attached documents and hereby state and certify pursuant to New York CPLR 2307, 4518(c) and 4540, and FRE Rule 902, that they are the complete, true and exact copies of the enclosed records regarding inmates **Dontie Mitchell – 98A0071.** The attached records are maintained in the regular course of business of DOCCS and with regard to the attached records that were created by employees of DOCCS; that it was in the regular course of business of DOCCS to make then at the time of the condition, act, transaction, occurrence or event documented in such records, or within a reasonable time thereafter; and that the employees who created the records had a duty to truthfully record such condition, act, transaction, occurrence or event.

Hilary Hawksby – Office Assistant

Witness my signature this 24th day of
January, 2018

Sworn to before me this
24 day of January, 2018

**NOTARY PUBLIC**

WENDY KING
Notary Public, State of New York
Clinton County 01KI6100945
Commission Expires 11-3-9

INMATE ID#: 98A0071 MITCHELL, DONTIE                          LOCATION: GRT MEAD GEN

--------------------------------------------------------------------------------
TIER 3  INCIDENT: 07/13/17 12:00 PM  SORC WILKINS, C K         WENDE
        HEARING : 07/24/17 11:01 AM  SORC SZABLEWSKI, L A      WENDE
        APPEAL  : 08/04/17 MODIFIED  ADIR RODRIGUEZ            CENTRAL OFF
        DIS.REV : 08/11/17           AUTO                      COLLS SHU200
105.14 UA ORGANIZATIONS
        38 D SHU                                 SERVICE DTES 07/13/17 08/20/17
        45 D RECREATION   PACKAGE     COMMISSARY SERVICE DTES 07/13/17 08/27/17
        45 D PHONE        PERSONAL TV            SERVICE DTES 07/13/17 08/27/17
--------------------------------------------------------------------------------
TIER 3  INCIDENT: 07/10/17 10:00 AM  OTHR RICHARDSON, B A      WENDE
        REPORTED: 07/13/17
        HEARING : 07/25/17 01:42 PM  ADSP FRANCLEMONT, T       WENDE
        APPEAL  : 08/04/17 MODIFIED  ADIR RODRIGUEZ            CENTRAL OFF
103.20 SOLICITING        180.11 FACIL CORRESPOND
        45 D KEEPLOCK    :AFTER LCRED    30D    SERVICE DTES 08/20/17 09/19/17
        45 D RECREATION   PACKAGE     COMMISSARY SERVICE DTES 08/27/17 10/11/17
        45 D PHONE                               SERVICE DTES 08/27/17 10/11/17
        45 D KEEPLOCK    RECREATION   PACKAGE    COMMISSARY  SUSPD TO 11/02/17
        45 D PHONE                                           SUSPD TO 11/02/17
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 06/29/17 01:00 PM  DSP  GABEL, B J           WENDE
        REPORTED: 07/13/17
        HEARING : 07/25/17 11:00 AM  LT   LABEDZ, R N          WENDE
        APPEAL  : 07/28/17 AFFIRMED  DSS  BROWN               WENDE
103.20 SOLICITING
        13 D KEEPLOCK    :AFTER LCRED    10D    SERVICE DTES 09/19/17 09/29/17
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 05/05/16 08:45 AM  CO   MIELE, M P           ELMIRA GENER
        HEARING : 05/10/16 09:30 AM  LT   GOODLIFF, R J        ELMIRA GENER
        APPEAL  : 05/18/16 AFFIRMED  CAPT KELLER              ELMIRA GENER
107.20 FALSE INFO.     109.10 OUT OF PLACE      109.12 MOVEMENT VIO.
        21 D KEEPLOCK     PACKAGE     COMMISSARY SERVICE DTES 05/05/16 05/26/16
        21 D PHONE                               SERVICE DTES 05/05/16 05/26/16
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 08/25/15 10:20 AM  CO   ALOI, J E            ELMIRA GENER
        HEARING : 08/31/15 10:15 AM  LT   LORD, R C            ELMIRA GENER
        APPEAL  : 09/08/15 AFFIRMED  CAPT KELLER              ELMIRA GENER
113.23 CONTRABAND        114.10 SMUGGLING        116.10 LOSS/DAMAGE PROP
        16 D KEEPLOCK                             SERVICE DTES 08/25/15 09/10/15
        16 D PACKAGE      COMMISSARY   PHONE      SERVICE DTES 10/17/15 11/02/15
        14 D KEEPLOCK     PACKAGE      COMMISSARY PHONE        SUSPD TO 11/29/15
        $10.32   RESTITUTION
--------------------------------------------------------------------------------
TIER 3  INCIDENT: 09/11/14 12:00 PM  CO   R.MAHUTTA            CLINTON GEN
        HEARING : 09/30/14 11:50 AM  LT   MILLER               CLINTON GEN
        APPEAL  : 12/11/14 AFFIRMED  ADIR VENETTOZZI           CENTRAL OFF
        DIS.REV : 03/12/15           SHMC REVIEW               UPSTATE SHU
103.20 SOLICITING        180.11 FACIL CORRESPOND
        60 D PACKAGE      COMMISSARY   PHONE      SERVICE DTES 09/11/14 11/10/14
        60 D KEEPLOCK                                         SUSPD TO 03/13/15
--------------------------------------------------------------------------------
TIER 3  INCIDENT: 09/01/14 06:00 PM  SGT  R WOOD               CLINTON GEN
        ADDITIONAL OFFICERS: SGT  R WOOD              CO   R MAHUTA
        REPORTED: 09/01/14
        HEARING : 11/06/14 03:55 PM  CHO  S BULLIS             CLINTON GEN
        APPEAL  : 01/14/15 AFFIRMED  ADIR VENETTOZZI           CENTRAL OFF
        DIS.REV : 03/12/15           SHMC REVIEW               UPSTATE SHU

NOTE: ONLY COMPLETED HEARINGS ARE SHOWN

INMATE ID#: 98A0071 MITCHELL, DONTIE                    LOCATION: GRT MEAD GEN

```
-------------------------------------------------------------------------------
113.25 DRUG POSSESSION    114.10 SMUGGLING         180.11 FACIL CORRESPOND
104.11 VIOLENT CONDUCT    100.11 ASSAULT ON STAFF  113.22 PROP UNAUTH LOC
114.10 SMUGGLING          102.10 THREATS           180.10 FACIL VISITING
 11 M   7 D SHU                                     SERVICE DTES 09/01/14 08/08/15
 11 M   7 D PACKAGE    COMMISSARY   PHONE           SERVICE DTES 11/10/14 10/17/15
  6 M     VISITATION                                SERVICE DTES 11/06/14 05/06/15
          (NO VISITS)       ALL VISITORS
 12 M     GOOD TIME
          CONFISCATE  /
-------------------------------------------------------------------------------
TIER 3  INCIDENT: 10/04/13 05:50 PM  CO   J.MARKWICK         GRN HAVN GEN
        HEARING : 11/01/13 10:26 AM  SORC L GONZALEZ         GRN HAVN GEN
        APPEAL  : 01/02/14 AFFIRMED  ADIR VENETTOZZI         CENTRAL OFF
        DIS.REV : 12/19/13           SHMC REVIEW             UPSTATE SC
113.10 WEAPON            113.14 UNAUTH MEDIC
  3 M  17 D SHU                                    SERVICE DTES 10/04/13 01/21/14
  3 M  17 D PACKAGE                                SERVICE DTES 10/04/13 01/21/14
  3 M  17 D COMMISSARY                             SERVICE DTES 10/04/13 01/21/14
  3 M  17 D PHONE                                  SERVICE DTES 10/04/13 01/21/14
  2 M     SHU        PACKAGE     COMMISSARY  PHONE      SUSPD TO 04/30/14
  3 M     GOOD TIME
-------------------------------------------------------------------------------
TIER 2  INCIDENT: 05/16/13 10:15 PM  CO   B. THOMPSON        UPSTATE SC
        HEARING : 05/28/13 12:04 PM  LT   SPINNER            UPSTATE SC
106.10 DIRECT ORDER      112.22 OBSTRUCT VISIB
     30 D KEEPLOCK     PACKAGE     COMMISSARY  PHONE      SUSPD TO 08/26/13
-------------------------------------------------------------------------------
TIER 3  INCIDENT: 09/27/12 08:45 AM  CO   OLLES              ATTICA GEN
        HEARING : 10/23/12 12:00 PM  CAPT COVENY             ATTICA GEN
        APPEAL  : 01/02/13 AFFIRMED  ADIR VENETTOZZI         CENTRAL OFF
105.14 UA ORGANIZATIONS
  4 M     SHU        PACKAGE     COMMISSARY  SERVICE DTES 09/27/12 01/27/13
  4 M     PHONE                              SERVICE DTES 11/08/12 03/08/13
  2 M     SHU        PACKAGE     COMMISSARY  PHONE     SUSPENDED/INVOKED
          CONFISCATE  /
-------------------------------------------------------------------------------
TIER 3  INCIDENT: 08/10/12 06:02 PM  CO   J KANALLA          AUBURN GENER
        HEARING : 08/15/12 02:55 PM  CAPT CHUTTEY            AUBURN GENER
        APPEAL  : 10/19/12 AFFIRMED  DIR  PRACK              CENTRAL OFF
        DIS.REV : 04/18/13           DSP  DRC                UPSTATE SC
104.11 VIOLENT CONDUCT    104.13 CREATE DISTURB   100.13 FIGHTING
     26 D PACKAGE    COMMISSARY                    SERVICE DTES 08/10/12 09/05/12
     90 D PHONE                                    SERVICE DTES 08/10/12 11/08/12
     90 D KEEPLOCK                                     SUSPD TO 04/19/13
     64 D PACKAGE    COMMISSARY                        SUSPD TO 09/05/12
     90 D GOOD TIME
-------------------------------------------------------------------------------
TIER 3  INCIDENT: 12/23/11 10:50 PM  CO   PATCH              GRT MEAD GEN
        HEARING : 01/20/12 03:31 PM  DSP  LAPOLT             GRT MEAD GEN
        APPEAL  : 03/16/12 AFFIRMED  DIR  PRACK              CENTRAL OFF
        DIS.REV : 04/04/12           SCC  DRC                SOUTHPORT
113.10 WEAPON            113.23 CONTRABAND
  4 M  22 D SHU        PACKAGE     COMMISSARY  SERVICE DTES 12/23/11 05/15/12
  4 M  22 D PACKAGE                            SERVICE DTES 12/23/11 05/15/12
  5 M     GOOD TIME
-------------------------------------------------------------------------------
TIER 3  INCIDENT: 05/20/11 02:42 PM  CO   J. LITTLE          SOUTHPORT
```

NOTE: ONLY COMPLETED HEARINGS ARE SHOWN

```
01/16/18   SDCP008      INMATE DISCIPLINARY HISTORY    *FPMS*      PAGE 036

INMATE ID#: 98A0071 MITCHELL, DONTIE                    LOCATION: GRT MEAD GEN


-------------------------------------------------------------------------------
       HEARING : 05/25/11 09:05 AM  CAPT SIGNOR              SOUTHPORT
       APPEAL  : 07/25/11 AFFIRMED  DIR PRACK                CENTRAL OFF
113.16 UNAUTH VALUABLE   113.22 PROP UNAUTH LOC    114.10 SMUGGLING
 3 M     SHU                                    SERVICE DTES 05/20/11 08/20/11
 3 M     SHU                                               SUSPD TO 11/21/11
 6 M     GOOD TIME
-------------------------------------------------------------------------------
TIER 3  INCIDENT: 03/20/11 09:20 PM  CO   A MASCIOLI        AUBURN GENER
       REPORTED: 03/22/11
       HEARING : 04/07/11 11:24 AM  LT   VASILE A/CAPT      AUBURN GENER
       APPEAL  : 05/31/11 MODIFIED  ADIR VENETTOZZI         CENTRAL OFF
       DIS.REV : 04/15/11           SUPT GRAHAM             AUBURN GENER
113.23 CONTRABAND         116.10 LOSS/DAMAGE PROP
   45 D SHU        RECREATION  PACKAGE     SERVICE DTES 03/20/11 05/04/11
   45 D COMMISSARY  PHONE                  SERVICE DTES 03/20/11 05/04/11
       CONFISCATE  /
-------------------------------------------------------------------------------
TIER 3  INCIDENT: 08/27/10 09:00 AM  CC   MCCARTHY          SOUTHPORT
       HEARING : 09/09/10 08:03 AM  LT   SIROIS             SOUTHPORT
       APPEAL  : 11/26/10 AFFIRMED  DIR  PRACK              CENTRAL OFF
104.11 VIOLENT CONDUCT   114.10 SMUGGLING
   14 D KEEPLOCK                             SERVICE DTES 09/16/10 09/30/10
 2 M     SHU                                           SUSPD TO 01/07/11
-------------------------------------------------------------------------------
TIER 3  INCIDENT: 03/16/10 04:45 PM  CO   BURNS             WENDE
       ADDITIONAL OFFICERS: SGT  TSCHANTRE
       HEARING : 04/07/10 05:06 PM  CAPT CASACELI           WENDE
       APPEAL  : 05/17/10 AFFIRMED  ADIR PRACK              CENTRAL OFF
104.11 VIOLENT CONDUCT   104.13 CREATE DISTURB   100.13 FIGHTING
106.10 DIRECT ORDER      104.11 VIOLENT CONDUCT   100.11 ASSAULT ON STAFF
107.10 INTERFERENCE
 6 M     SHU        PACKAGE    COMMISSARY  SERVICE DTES 03/16/10 09/16/10
 6 M     PHONE      PERSONAL TV            SERVICE DTES 03/16/10 09/16/10
 6 M     GOOD TIME
-------------------------------------------------------------------------------
TIER 3  INCIDENT: 02/16/10 12:27 PM  CO   C. SOLOMON        WENDE
       HEARING : 02/22/10 10:58 AM  STWD BLAKE              WENDE
104.11 VIOLENT CONDUCT   100.13 FIGHTING
   15 D KEEPLOCK                             SERVICE DTES 02/16/10 03/03/10
   30 D RECREATION  PACKAGE    COMMISSARY  SERVICE DTES 02/22/10 03/24/10
   30 D PHONE      PERSONAL TV            SERVICE DTES 02/22/10 03/24/10
   15 D KEEPLOCK                                       SUSPD TO 08/21/10
-------------------------------------------------------------------------------
TIER 2  INCIDENT: 01/26/10 08:00 AM  CO   J. MORAN          WENDE
       HEARING : 01/29/10 09:27 AM  LT   KEENAN             WENDE
104.11 VIOLENT CONDUCT   104.13 CREATE DISTURB   100.13 FIGHTING
   20 D KEEPLOCK   RECREATION  PACKAGE     SERVICE DTES 01/26/10 02/15/10
   20 D COMMISSARY  PHONE                  SERVICE DTES 01/26/10 02/15/10
   20 D PERSONAL TV                        SERVICE DTES 01/29/10 02/18/10
   10 D KEEPLOCK   RECREATION  PACKAGE   COMMISSARY  SUSPD TO 04/29/10
   10 D PHONE      PERSONAL TV                       SUSPD TO 04/29/10
-------------------------------------------------------------------------------
TIER 3  INCIDENT: 06/16/09 12:35 PM  CO   W. WALLACE        WENDE
       HEARING : 06/22/09 03:23 PM  DSS  STICHT             WENDE
       APPEAL  : 07/22/09 AFFIRMED  DIR  BEZIO              CENTRAL OFF
113.23 CONTRABAND         105.14 UA ORGANIZATIONS
    7 D KEEPLOCK                             SERVICE DTES 06/16/09 06/23/09


NOTE: ONLY COMPLETED HEARINGS ARE SHOWN
```

INMATE ID#: 98A0071 MITCHELL, DONTIE                      LOCATION: GRT MEAD GEN

--------------------------------------------------------------------------------
        COUNSEL    /
--------------------------------------------------------------------------------
TIER 3  INCIDENT: 01/11/09 06:30 PM  CO   N. BROWN        ELMIRA GENER
        HEARING : 01/16/09 02:15 PM  CHO  ESGROW          ELMIRA GENER
        APPEAL  : 02/18/09 AFFIRMED  DIR  BEZIO           CENTRAL OFF
        DIS.REV : 02/27/09           DSP  DRC             UPSTATE SC
104.12 DEMONSTRATION      104.13 CREATE DISTURB    106.10 DIRECT ORDER
109.10 OUT OF PLACE
 2 M  10 D SHU                                    SERVICE DTES 01/11/09 03/21/09
 2 M  10 D PACKAGE                                SERVICE DTES 01/11/09 03/21/09
 2 M  10 D COMMISSARY                             SERVICE DTES 01/11/09 03/21/09
 2 M  10 D PHONE                                  SERVICE DTES 01/11/09 03/21/09
 3 M     SHU         PACKAGE      COMMISSARY  PHONE       SUSPD TO 07/15/09
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 01/11/09 06:25 PM  CO   OTTO            ELMIRA GENER
        HEARING : 01/19/09 08:21 AM  LT   WILLIS          ELMIRA GENER
106.10 DIRECT ORDER       109.11 ASSIGNED AREA
        30 D KEEPLOCK    PACKAGE     COMMISSARY  PHONE      SUSPD TO 04/19/09
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 12/09/08 04:45 PM  CO   KNUTH           ELMIRA GENER
        HEARING : 12/15/08 09:26 AM  LT   WILLIS          ELMIRA GENER
106.10 DIRECT ORDER       109.10 OUT OF PLACE
        6 D KEEPLOCK    COMMISSARY   PHONE    SERVICE DTES 12/09/08 12/15/08
        9 D KEEPLOCK    COMMISSARY   PHONE               SUSPD TO 03/15/09
--------------------------------------------------------------------------------
TIER 3  INCIDENT: 01/13/08 07:20 PM  CO   J.ABRAHAM       GRT MEAD GEN
        HEARING : 01/17/08 10:30 AM  CAPT EASTMAN         GRT MEAD GEN
        APPEAL  : 03/07/08 AFFIRMED  DIR  BEZIO           CENTRAL OFF
        DIS.REV : 08/06/08           SCC  DRC             SOUTHPORT
113.10 WEAPON
 8 M  17 D SHU       PACKAGE      COMMISSARY  SERVICE DTES 01/13/08 09/30/08
 8 M  17 D PHONE                              SERVICE DTES 01/13/08 09/30/08
12 M     GOOD TIME
--------------------------------------------------------------------------------
TIER 3  INCIDENT: 03/08/07 09:00 AM  CO   MAHUTA          UPSTATE SC
        HEARING : 03/19/07 03:15 PM  CHO  BULLIS          UPSTATE SC
        APPEAL  : 05/10/07 AFFIRMED  ADIR DUBRAY          CENTRAL OFF
        DIS.REV : 05/30/07           DSS  BEZIO           UPSTATE SC
180.11 FACIL CORRESPOND
 2 M  11 D SHU                                SERVICE DTES 03/20/07 05/31/07
 3 M     PACKAGE     COMMISSARY   PHONE    SERVICE DTES 03/20/07 06/20/07
 3 M     GOOD TIME
--------------------------------------------------------------------------------
TIER 3  INCIDENT: 12/27/06 10:00 AM  CO   R.MAHUTA        CLINTON GEN
        HEARING : 01/02/07 10:48 AM  ISPT SMITH           CLINTON GEN
        APPEAL  : 02/13/07 AFFIRMED  DIR  SELSKY          CENTRAL OFF
        DIS.REV : 02/14/07           DSP  DRC             UPSTATE SC
180.11 FACIL CORRESPOND   180.17 UNAUTH LEGAL
 1 M  21 D SHU                                SERVICE DTES 01/27/07 03/20/07
 1 M  21 D RECREATION                         SERVICE DTES 01/27/07 03/20/07
 1 M  21 D PACKAGE                            SERVICE DTES 01/27/07 03/20/07
 1 M  21 D COMMISSARY                         SERVICE DTES 01/27/07 03/20/07
 1 M  21 D PHONE                              SERVICE DTES 01/27/07 03/20/07
        9 D SHU       RECREATION   PACKAGE   COMMISSARY   SUSPD TO 08/13/07
        9 D PHONE                                         SUSPD TO 08/13/07
 3 M     GOOD TIME
--------------------------------------------------------------------------------

NOTE: ONLY COMPLETED HEARINGS ARE SHOWN

INMATE ID#: 98A0071 MITCHELL, DONTIE                    LOCATION: GRT MEAD GEN

--------------------------------------------------------------------------------
TIER 3  INCIDENT: 11/08/06 03:15 PM  CO   R.J.MAHUTA         CLINTON GEN
        REPORTED: 11/09/06
        HEARING : 11/17/06 09:15 AM  CHO  DROWN              CLINTON GEN
        APPEAL  : 01/05/07 AFFIRMED  DIR  SELSKY             CENTRAL OFF
105.12 UA ORG PR 5/28/08
      80 D SHU         PACKAGE     COMMISSARY  SERVICE DTES 11/08/06 01/27/07
      80 D PHONE                               SERVICE DTES 11/08/06 01/27/07
  2 M     GOOD TIME
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 10/11/06 02:40 PM  CO   M. MARTIN          CLINTON GEN
        HEARING : 10/17/06 01:45 PM  LT   BOYLE              CLINTON GEN
104.13 CREATE DISTURB
       6 D KEEPLOCK    PACKAGE     COMMISSARY  SERVICE DTES 10/11/06 10/17/06
       6 D PHONE                               SERVICE DTES 10/11/06 10/17/06
--------------------------------------------------------------------------------
TIER 3  INCIDENT: 12/22/04 04:00 PM  CO   BANKS              AUBURN GENER
        HEARING : 01/04/05 11:16 AM  CHO  WOLCZYK            AUBURN GENER
        APPEAL  : 03/04/05 AFFIRMED  DIR  SELSKY             CENTRAL OFF
        DIS.REV : 03/10/05           SCC  DRC                SOUTHPORT
105.12 UA ORG PR 5/28/08
  3 M  17 D SHU         PACKAGE     COMMISSARY  SERVICE DTES 12/22/04 04/08/05
  3 M  17 D PHONE                              SERVICE DTES 12/22/04 04/08/05
  5 M     GOOD TIME
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 11/16/04 03:45 PM  CO   HONEYWELL          AUBURN GENER
        ADDITIONAL OFFICERS: CO   MURPHY
        HEARING : 11/19/04 03:58 PM  LT   OUIMETTE           AUBURN GENER
        APPEAL  : 11/30/04 AFFIRMED  SUPT BURGE              AUBURN GENER
106.10 DIRECT ORDER       109.12 MOVEMENT VIO.   109.10 OUT OF PLACE
      10 D KEEPLOCK    RECREATION  PACKAGE   SERVICE DTES 11/16/04 11/26/04
      10 D COMMISSARY  PHONE                 SERVICE DTES 11/16/04 11/26/04
      20 D KEEPLOCK    RECREATION  PACKAGE   COMMISSARY  SUSPD TO 02/17/05
      20 D PHONE                                         SUSPD TO 02/17/05
         COUNSEL      /
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 03/24/04 01:37 PM  CO   K.O'GRADY          AUBURN GENER
        HEARING : 03/27/04 11:37 AM  LT   HEAD               AUBURN GENER
        APPEAL  : 03/30/04 AFFIRMED  SUPT BURGE              AUBURN GENER
109.10 OUT OF PLACE
      16 D KEEPLOCK    RECREATION  PACKAGE   SERVICE DTES 03/24/04 04/09/04
      16 D COMMISSARY  PHONE                 SERVICE DTES 03/24/04 04/09/04
         REFERRALS    /
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 02/04/04 06:40 PM  CO   F.CALESCIBETTA     AUBURN GENER
        HEARING : 02/08/04 10:43 AM  LT   HEAD               AUBURN GENER
109.10 OUT OF PLACE
       7 D KEEPLOCK    RECREATION  PACKAGE   SERVICE DTES 02/04/04 02/11/04
       7 D COMMISSARY  PHONE                 SERVICE DTES 02/04/04 02/11/04
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 09/30/03 07:55 AM  CO   DIEGO              AUBURN GENER
        HEARING : 10/03/03 10:56 AM  LT   HEAD               AUBURN GENER
107.20 FALSE INFO.     109.10 OUT OF PLACE     109.12 MOVEMENT VIO.
      10 D KEEPLOCK    RECREATION  PACKAGE   SERVICE DTES 09/30/03 10/10/03
      10 D COMMISSARY  PHONE                 SERVICE DTES 09/30/03 10/10/03
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 09/27/01 04:55 PM  CO   STREETER           UPSTATE SHU
        REPORTED: 09/28/01

NOTE: ONLY COMPLETED HEARINGS ARE SHOWN

INMATE ID#: 98A0071 MITCHELL, DONTIE                    LOCATION: GRT MEAD GEN

```
--------------------------------------------------------------------------------
       HEARING : 10/08/01 02:48 PM  LT   BYNO               UPSTATE SHU
106.10 DIRECT ORDER      124.16 MESSHALL VIOL
       30 D KEEPLOCK                               SERVICE DTES 12/12/01 01/11/02
       30 D PACKAGE     COMMISSARY   PHONE         SERVICE DTES 01/27/02 02/26/02
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 09/16/01 06:25 PM  CO   PRICE             UPSTATE SHU
       HEARING : 09/30/01 09:25 PM  LT   K. VANN            UPSTATE SHU
       APPEAL  : 10/10/01 AFFIRMED  CAPT RACETTE            UPSTATE SHU
104.13 CREATE DISTURB
       30 D KEEPLOCK                               SERVICE DTES 11/12/01 12/12/01
       30 D PACKAGE     COMMISSARY   PHONE         SERVICE DTES 12/28/01 01/27/02
--------------------------------------------------------------------------------
TIER 3  INCIDENT: 06/10/01 03:00 PM  SGT  J.MCNAMARA        SING SING GN
       HEARING : 06/21/01 01:59 PM  SCC  K. COLAO           SING SING GN
       APPEAL  : 09/13/01 AFFIRMED  DIR  SELSKY             CENTRAL OFF
       DIS.REV : 09/14/01           DSP  DRC                UPSTATE SHU
105.12 UA ORG PR 5/28/08
 2 M   2 D KEEPLOCK     RECREATION                SERVICE DTES 09/10/01 11/12/01
 2 M   2 D PACKAGE     COMMISSARY   PHONE         SERVICE DTES 10/26/01 12/28/01
 3 M     GOOD TIME
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 05/30/01 11:45 AM  CO   L GUERIN          SING SING GN
       HEARING : 06/11/01 01:29 PM  LT   T. FITZGERALD      SING SING GN
107.10 INTERFERENCE      106.10 DIRECT ORDER      115.10 SEARCH/FRISK
       30 D KEEPLOCK                               SERVICE DTES 08/11/01 09/10/01
 2 M   KEEP-INV                                    SERVICE DTES 06/11/01 08/11/01
       30 D PACKAGE     COMMISSARY   PHONE         SERVICE DTES 09/26/01 10/26/01
--------------------------------------------------------------------------------
TIER 3  INCIDENT: 04/12/01 12:00 PM  CO   R. ESCOBAR        SING SING GN
       HEARING : 04/26/01 02:04 PM  HO   A. E. CALERO       SING SING GN
       APPEAL  : 06/28/01 AFFIRMED  ADIR MURPHY             CENTRAL OFF
100.11 ASSAULT ON STAFF   106.10 DIRECT ORDER
       34 D KEEPLOCK                               SERVICE DTES 04/12/01 05/16/01
        5 D KEEP-INTRMIT                           SERVICE DTES 05/16/01 05/21/01
        1 D KEEP-INTRMIT                           SERVICE DTES 05/22/01 05/23/01
 3 M     KEEP-INTRMIT                              SERVICE DTES 05/26/01 08/26/01
        1 D NPRGHR-INTRM                           SERVICE DTES 05/15/01 05/16/01
        1 D NPRGHR-INTRM                           SERVICE DTES 05/21/01 05/22/01
        3 D NPRGHR-INTRM                           SERVICE DTES 05/23/01 05/26/01
 5 M     PACKAGE      COMMISSARY   PHONE           SERVICE DTES 04/26/01 09/26/01
 2 M     KEEP-INTRMIT                                        SUSPD TO 10/23/01
         COUNSEL     /
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 01/17/01 02:30 PM  CO   N. CAGER          SING SING GN
       HEARING : 01/30/01 03:05 PM  LT   R. PATTERSON       SING SING GN
       APPEAL  : 02/05/01 AFFIRMED  CAPT J. NEUWIRTH        SING SING GN
107.20 FALSE INFO.
       20 D KEEPLOCK    PACKAGE     COMMISSARY  SERVICE DTES 01/17/01 02/06/01
       20 D PHONE                               SERVICE DTES 01/17/01 02/06/01
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 06/04/00 04:40 PM  CO   S. WRIGHT         SING SING GN
       HEARING : 06/10/00 12:05 PM  LT   FARRELL            SING SING GN
       APPEAL  : 06/15/00 AFFIRMED  CAPT R. MINOGUE         SING SING GN
106.10 DIRECT ORDER      109.12 MOVEMENT VIO.
       20 D KEEPLOCK    PACKAGE     COMMISSARY  SERVICE DTES 06/04/00 06/24/00
       20 D PHONE                               SERVICE DTES 06/04/00 06/24/00
--------------------------------------------------------------------------------
```

NOTE: ONLY COMPLETED HEARINGS ARE SHOWN

INMATE ID#: 98A0071 MITCHELL, DONTIE                    LOCATION: GRT MEAD GEN

```
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 05/13/00 08:30 AM  CO    S YUMOR              SING SING GN
        HEARING : 05/16/00 09:58 AM  LT    Q. MAGWOOD           SING SING GN
        APPEAL  : 05/23/00 AFFIRMED  CAPT  M. HAUBERT           SING SING GN
118.22 UNHYGIENIC ACT      107.10 INTERFERENCE
        20 D KEEPLOCK    RECREATION   PACKAGE     SERVICE DTES 05/13/00 06/02/00
        20 D COMMISSARY  PHONE                    SERVICE DTES 05/13/00 06/02/00
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 10/05/99 07:32 AM  CO    R.VLADYKA            GRT MEAD GEN
        HEARING : 10/08/99 07:38 AM  LT    GOSSELIN             GRT MEAD GEN
        APPEAL  : 10/14/99 AFFIRMED  DSP   CARPENTER            GRT MEAD GEN
118.22 UNHYGIENIC ACT
        COUNSEL     /
--------------------------------------------------------------------------------
TIER 3  INCIDENT: 07/30/98 02:55 PM  CO    MCCLURE              GRT MEAD GEN
        HEARING : 08/04/98 08:00 AM  LT    M.GOSSELIN           GRT MEAD GEN
        APPEAL  : 09/25/98 AFFIRMED  DIR   SELSKY               CENTRAL OFF
100.13 FIGHTING
        60 D KEEPLOCK    PACKAGE      COMMISSARY  SERVICE DTES 07/30/98 09/28/98
        60 D PHONE                                SERVICE DTES 07/30/98 09/28/98
--------------------------------------------------------------------------------
TIER 2  INCIDENT: 01/22/98 04:20 PM  CO    AZZOPARDI, F.        DWNSTATE REC
        HEARING : 01/28/98 11:42 AM  LT    J WOHLRAB            DWNSTATE REC
        APPEAL  : 02/02/98 AFFIRMED  CAPT  MALY                 DWNSTATE REC
107.11 HARASSMENT        106.10 DIRECT ORDER
        14 D KEEPLOCK    PACKAGE      COMMISSARY  SERVICE DTES 01/22/98 02/05/98
        14 D PHONE                                SERVICE DTES 01/22/98 02/05/98
--------------------------------------------------------------------------------
```

NOTE: ONLY COMPLETED HEARINGS ARE SHOWN

***SUCCESSFUL PRINT COMPLETION***